James E. Cecchi, Esq.
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Attorney for Plaintiffs and the Proposed Class*

[Additional Attorneys on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRICE MCMAHON, LISA BULTMAN, MICHAEL MCKARRY, DAVID WABAKKEN, MOHAMED HASSAN, CHRISTINA MERRILL, ERIC LEVINE, PATRICK & MARCIA DONAHUE, DEBBI BROWN, CAROL RADICE, TERRENCE BERRY, AMANDA GREEN, DAVID WILDHAGEN, KATY DOYLE, TASHIA CLENDANIEL, HOGAN POPKESS, KORY WHEELER, HARRY O'BOYLE, JOE RAMAGLI, ERIC KOVALIK, CHARLES HILLIER, LABRANDA SHELTON, ADAM & MALLORY MOORE, TINA GROVE, KEECH ARNSTEN, SCOTT CARTER, MIKE SHERROD, CHRISTI JOHNSON, MARY KOELZER AND MARK STEVENS, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v. | Case No.: 2:22-cv-01537 (EP) (JSA)<br><br>CONSOLIDATED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

VOLKSWAGEN AKTIENGESELLSCHAFT;
VOLKSWAGEN GROUP OF AMERICA,
INC.; AND VOLKSWAGEN GROUP OF
AMERICA CHATTANOOGA
OPERATIONS, LLC,

            Defendants.

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.    NATURE OF THIS ACTION

1.    Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased or leased a 2019-2023 Volkswagen Atlas and 2020-2023 Volkswagen Atlas Cross Sport vehicles (collectively the "Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendants Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VWGofA"), and Volkswagen Group of America Chattanooga Operations, LLC ("VWGofA Chattanooga"). Collectively, VWAG, VWGofA, and VWGofA Chattanooga are referred to as "Defendants" or "Volkswagen" or "VW."

2.    The defect at issue in this case involves the Vehicles' wiring harnesses, which repeatedly fail and cause many of the Vehicles' features to malfunction and act erratically (the "Defect").  For example, as a result of the Defect, the Vehicles' parking brake systems unexpectedly engage for no reason, windows randomly open

and close on their own, and the Vehicles display error messages and emit warning noises.  Also, the Defect may cause the Vehicles' airbags to fail to deploy properly. As documented by widespread consumer complaints, these malfunctions have plagued the Vehicles since their launch.

3.    The Defect poses a safety risk because when a Vehicle brakes unexpectedly, it poses a danger to not only its driver and passengers but also to others in traffic. Moreover, unexpected noises can cause the driver to become distracted. The Defect can also cause safety-related systems (including airbags) to fail.  And, when a vehicle's air bags do not deploy properly, this creates a major safety issue.

4.    Defendants have long known of the Vehicles' wiring harness problems from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendants, collected by the National Highway Transportation Safety Administration ("NHTSA"), and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources.  Yet Defendants failed to disclose and actively concealed the Vehicles' Defect from the public, and continue to manufacture, distribute, and sell the Vehicles without disclosing the Defect or that the replacement wire harnesses are subject to the same Defect.

5.    Under the Vehicles' New Vehicle Limited Warranty, Defendants are

2

required to "cover[] any repairs to correct a defect in [the] manufacturer's material or workmanship (i.e., mechanical defects)…." The Vehicles share substantially identical wiring harnesses and are defective in material or workmanship under normal use.

6.    Defendants have not found a solution to the Defect.  When Vehicle owners complain about the Defect and seek a repair they are often told parts are unavailable. Vehicle owners often have to wait months for replacement harnesses. Moreover, Defendants do not consistently provide loaner vehicles so Vehicle owners are often forced to choose whether to continue driving the dangerous Vehicles while waiting for replacement parts, or cease using their vehicle for months until replacement parts become available. Worse still, when replacement harnesses finally become available and Defendants attempt to repair the Vehicles, Defendants simply replace defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.

7.    On or about March 28, 2022, Volkswagen issued a recall for the Vehicles, stating that the "door wiring harness electrical contacts may corrode, disrupting the electrical connection and delaying the deployment of the driver or passenger front side air bag during a side impact crash."[1] According to the recall

---

[1] https://www.nhtsa.gov/vehicle/2021/VOLKSWAGEN/ATLAS/SUV/FWD#recals (last visited June 16, 2022).

3

notice, Volkswagen sent "interim notification letters" to Vehicle owners on May 10, 2022 informing them of the "safety risk" and promising to send a "second notice" once "the remedy becomes available."  In other words, Volkswagen has publicly admitted that it has no solution to the Defect.

8.    Plaintiffs bring this action for violation of relevant state consumer protection acts, for breach of express and implied warranties, and other related claims on behalf of a nationwide class and state classes comprised of Vehicle lessees and owners.  Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## II.    JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendants are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because VWGofA is incorporated in New Jersey, and Defendants have marketed, advertised, sold, and/or leased the Vehicles within this District through numerous dealers doing business in the District. Defendants' actions have caused

harm to thousands of members of the Class residing in New Jersey. VWGofA maintains the following offices and/or facilities in New Jersey: (1) the "VW/Audi/VCI Eastern Region" location in Woodcliff Lake, New Jersey; (2) the "VW/Audi Test Center" in Allendale, New Jersey; (3) the "Product Liaison Office" in Fort Lee, New Jersey; (4) and the "Parts/Region Distribution Center" in Cranbury, New Jersey.[2]  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

### III.    PARTIES

### <u>Lisa Bultman - Arizona</u>

11.    Plaintiff Lisa Bultman (for purposes of this Plaintiff's allegations, "Plaintiff") is an Arizona citizen and resident of Phoenix, Arizona.

12.    Plaintiff leased a 2021 VW Atlas in January 2021 from Earnhardt Volkswagen, an authorized Volkswagen dealership located in Gilbert, Arizona.

13.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of

---

[2]    *See Volkswagen Group of America Locations*, VOLKSWAGEN GROUP OF AMERICA, http://www.volkswagengroupofamerica.com/locations (last visited May 10, 2022).

lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

14.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose that the Vehicle possessed the Defect.

15.    Since leasing the Vehicle, Plaintiff has experienced problems with the wiring harness including distracting error messages, warning noises, the windows rolling down on their own, and the parking brake engaging while the Vehicle was in motion.

16.    On February 4, 2022, when attempting to use the remote start, the back windows rolled down and the vehicle wouldn't start.

17.    On February 6, 2022, each time Plaintiff applied the brakes, the Vehicle's parking brake engaged. On one such occasion when the parking brake engaged as a result of the Defect, Plaintiff was abruptly jerked forward, and the Vehicle came to an abrupt stop.

18.    Plaintiff's Vehicle repeatedly experienced this dangerous situation where the parking brake would automatically engage while driving for about 20 minutes. Because of the extremely dangerous nature of the Defect to herself and others on the road, Plaintiff took the Vehicle straight to Earnhardt Volkswagen and explained to the dealership employee what she experienced.

19.    The technician at Earnhardt Volkswagen told Plaintiff "it could be awhile" before you get your car back. Earnhardt Volkswagen arranged a Dodge Ram 1500 pickup truck as a rental vehicle for Plaintiff to drive while her Vehicle sat at the dealership. The Dodge Ram 1500 pickup truck's gas mileage per gallon was substantially lower than Plaintiff's Vehicle, and Plaintiff spent substantially more on gas than she otherwise would have.

20.    Plaintiff's Vehicle remained at Earnhardt Volkswagen for almost six weeks. Plaintiff picked up her Vehicle on March 18, 2022. According to the repair invoice, and upon information and belief, a new replacement wire harness subject to the same Defect was installed.

21.    Volkswagen never told Plaintiff about the Defect so Plaintiff leased her Defective Vehicle on the reasonable, but mistaken, belief that her Defective Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising

messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Defective Vehicle had the Defect. Plaintiff would not have leased the Defective Vehicle or would have paid less for it had she known about the Defect.

### Michael McKarry - California

22.    Plaintiff Michael McKarry (for purposes of this Plaintiff's allegations, "Plaintiff") is a California citizen and resident of Oceanside, California.

23.    Plaintiff purchased a 2021 VW Atlas on December 19, 2020, from Bob Baker Volkswagen, an authorized Volkswagen dealership located in Carlsbad, California.

24.    Unknown to Plaintiff at the time he purchased the Vehicle, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

25.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity

to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose that the Defect.

26.    Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, while driving his Vehicle, it is not unusual for the Vehicle's parking brake to engage as Plaintiff approached a red light or stop sign. Also, the parking brake in Plaintiff's Vehicle engaged when Plaintiff put the Vehicle in reverse. Often, prior to the parking brake engaging, the Vehicle's back windows would roll down on their own.

27.    Because of the Defect and because Plaintiff does not consider the Vehicle to be safe, Plaintiff delivered his vehicle to Volkswagen of Clear Lake in Houston, an authorized Volkswagen dealership, for diagnosis and repair in February 2022.

28.    While the dealership has provided loaner vehicles to Plaintiff, the loaners have been subpar, dirty, and inadequate. For example, the first loaner was a "tiny" Kia without a third row.

29.    Even though Plaintiff's Vehicle has been at the VW dealership for over three months now, the dealership told Plaintiff it cannot provide an estimated

repair date because there are no replacement wire harnesses available. In addition to communicating with the Volkswagen Dealership in Houston, Plaintiff contacted the California dealership where he originally purchased the Vehicle, Bob Baker Volkswagen, to see how long it would take to repair his Vehicle (if he had his Vehicle shipped to Bob Baker Volkswagen). Bob Baker Volkswagen told Plaintiff that it has twice as many Vehicles waiting for a replacement harness than the Volkswagen dealership in Houston.

30.     Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Defendants' broad advertising messaging that Volkswagen's vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

### David Wabakken - California

31.     Plaintiff David Wabakken (for purposes of this Plaintiff's allegations, "Plaintiff") is a California citizen and resident of Oak Hills, California.

32.     Mr. Wabakken purchased a 2019 Atlas in April 2020 from Ontario

Volkswagen, an authorized Volkswagen dealership located in Ontario, California.

33.    Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Defective Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

34.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

35.    Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, in July 2021 Plaintiff was nearly thrown through the windshield when the parking brake unexpectedly engaged. At the time, Plaintiff was driving slowly through an airport lot.

11

36.     Because he considered the Vehicle unsafe, Plaintiff took his Vehicle to the Ontario Volkswagen dealership. The dealership told Plaintiff that infrared lights at the airport may have set off Vehicle's sensors.

37.     Plaintiff's Vehicle continued to experience the Defect as the doors would lock and unlock on their own; the windows would roll down on their own; alerts and alarms on the dashboard would illuminate even though there was no apparent problem; and the parking brake continued to engage on its own. Because of the Defect, Plaintiff presented his Vehicle to the VW dealership for a second time in November 2021. After his Vehicle was at the dealership for over one month, the dealership replaced the wire harness with, upon information and belief, a similarly defective wire harness.

38.     In February 2022, Plaintiff began experiencing similar failures because of the Defect. For example, the windows rolled down on their own; the parking brake engaged on its own; the doors locked and unlocked on their own; and dashboard warning and alarms triggered even though there was no apparent problem.

39.     In February 2022, Plaintiff presented his Vehicle to Ontario Volkswagen for a third time because of the Defect. When he dropped off his Vehicle, the dealership did not provide Plaintiff with an estimated repair date for his Vehicle.

40.     Plaintiff's Vehicle remained at Ontario Volkswagen for over three months until April 26, 2022 when the dealership completed an attempted repair by

installing a replacement wire harness. Upon information and belief, the replacement wire harness is subject to the same Defect. Indeed, the dealership alerted Plaintiff when he picked up his Vehicle that he may have to return to the dealership once Defendants issue the formal recall notice.

41.    Volkswagen never told Plaintiff about the Defect, so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

**Mohammed Hassan - Colorado**

42.    Plaintiff Mohamed Hassan (for purposes of this Plaintiff's allegations, "Plaintiff") is a Colorado citizen and resident of Denver, Colorado.

43.    On or about July 14, 2020, he leased a new 2020 Volkswagen Atlas from O'Meara Volkswagen, an authorized Volkswagen dealership located in Thornton, Colorado.

44.    Unknown to Plaintiff at the time the Vehicle was leased, it was

13

equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

45.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

46.    Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, Plaintiff has experienced distracting error messages and warning noises. Plaintiff has delivered and presented his vehicle to an authorized Volkswagen dealership for diagnosis and repair of the Defect. The Volkswagen technician told Plaintiff the Vehicle probably needed to be recalibrated and wanted to charge him $800 to calibrate it. Plaintiff did not believe the

14

technician's explanation as to why the Vehicle needed to be recalibrated and declined the calibration.

47.    Plaintiff first learned about the Defect sometime in April 2022. Plaintiff asked the Volkswagen dealership personnel about the Defect and the dealership acknowledged that they were aware of the Defect. The Volkswagen dealership told Plaintiff they do not know when the recall repair will be available, and Plaintiff is concerned about driving his Vehicle due to the dangers resulting from the Defect. The Vehicle is currently parked while Plaintiff waits for a fix, and Plaintiff is paying extra money to park the Vehicle inside because he does not want to risk the windows just randomly going down while it is raining or risk theft.

48.    Volkswagen never told Plaintiff about the Defect so Plaintiff leased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had he known about the Defect.

### Christina Merrill - Georgia

49.    Plaintiff Christina Merrill (for purposes of this Plaintiff's allegations,

"Plaintiff") is a Georgia citizen and resident of Savannah, Georgia.

50.    Plaintiff purchased her 2019 VW Atlas in October 2019 from Auto Nation in Savannah, Georgia.

51.    Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

52.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

53.    Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, on or about March 22, 2022, the warning lights

on the Vehicle's dashboard and several Vehicle alarms went off for no apparent reason. This occurred when Plaintiff started her Vehicle. Then, in mid-April 2022, the Vehicle's parking brake unexpectedly "jerked on." This concerned Plaintiff because she has two children aged two and three, as she considers this to be a safety issue.

54.     As a result of experiencing the Defect, Plaintiff called the dealership to report the problems she experienced and to seek a prompt repair. The service technician with whom Plaintiff spoke was very familiar with these issues in the Vehicles. The technician told Plaintiff that there was a recall, that she should not continue to drive the Vehicle, and said she should bring her car into the dealership. In response, Plaintiff took her Vehicle into the dealership. When she dropped off the Vehicle, the dealership told Plaintiff the repair may take three months to complete and that they would not provide a loaner.

55.     Because she needed a car to transport herself and her family, Plaintiff called Volkswagen customer care to alert them to her experiences with the Defect and to seek a loaner vehicle. Volkswagen customer care told Plaintiff that it was the dealership's decision as to whether or not to provide a loaner. In response, Plaintiff called the dealership again and spoke to the manager about her safety concerns with the Vehicle and her need for a loaner vehicle. The manager finally agreed to provide Plaintiff with a loaner vehicle.

56.    Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had she known about the Defect.

## Eric Levine - Illinois

57.    Plaintiff, Mr. Levine (for purposes of this Plaintiff's allegations, "Plaintiff") is an Illinois citizen and resident of Lake Bluff, Illinois.

58.    Plaintiff purchased a 2021 VW Atlas SE in September of 2020 from Libertyville Volkswagen, an authorized Volkswagen dealership located in Libertyville, Illinois.

59.    Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived

18

Plaintiff of the benefit of the bargain.

60.     Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose Defect.

61.     Since purchasing the Vehicle, Plaintiff has experienced repeated problems related to the Defect. For example, in early October 2021 alert lights became illuminated on the Vehicle's dashboard for no apparent reason. Then, for the next six months, the parking brake repeatedly engaged on its own, resulting in abrupt and unexpected stops, and the windows would repeatedly roll down on their own.

62.     Plaintiff called Libertyville Volkswagen to report these issues and to seek a repair. The dealership told Plaintiff that the necessary replacement part was on order, but it would take a few weeks to get it in. When he asked service for a loaner vehicle, he was told there weren't any available. After calling Libertyville Volkswagen several more times in February 2022, a dealership employee told him the dealership had no control over when the necessary part would be received and

suggested that Plaintiff contact Volkswagen customer care. This same dealership employee provided Plaintiff with the phone number for Volkswagen customer care. Plaintiff called Volkswagen customer care and expressed his concerns about his Vehicle and the need for an immediate repair. A few days later, Plaintiff received a call from Libertyville Volkswagen stating the replacement part had arrived. Plaintiff took the Vehicle to Libertyville Volkswagen as soon as he could.

63.     In March 2022, Libertyville Volkswagen replaced the defective wire harness with, upon information and belief, an equally defective wire harness.

64.     Volkswagen customer care closed his file but followed up with an offer for a free oil change. Mr. Levine refused the offer on principle.

65.     Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

**Patrick and Marcia Donahue - Illinois**

20

66.     Plaintiffs Patrick and Marcia Donahue, (for purposes of this Plaintiffs' allegations, "Plaintiffs") are Colorado citizens and residents of Windsor, Colorado.

67.     Plaintiffs purchased a 2020 VW Atlas SEL from Gurnee Volkswagen, an authorized Volkswagen dealership located in Gurnee, Illinois on April 1, 2020.

68.     Unknown to Plaintiffs at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiffs to pay more at the time of purchase than Plaintiffs would have paid had the truth been disclosed and deprived Plaintiffs of the benefit of the bargain.

69.     Plaintiffs use the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiffs relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiffs and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen

failed to disclose the Defect.

70.    Since purchasing the Vehicle, Plaintiffs have experienced problems related to the Defect. For example, Plaintiffs each experienced situations while driving the Vehicle where windows went down on their own. The issue with the Vehicle's windows was so prevalent that it seemed to occur nearly every time Plaintiffs drove the Vehicle. Plaintiffs also noticed that an error warning on the dashboard would light up when the windows malfunctioned.

71.    The parking brake also engaged unexpectedly while driving the Vehicle. Sometimes this would be followed by various Vehicle alarms going off. During one occasion when the Vehicle's parking brake engaged abruptly, Marcia was nearly involved in an accident as the Vehicle swerved out of control.

72.    Plaintiffs' Vehicle is currently at the dealership because Plaintiffs no longer feel it is safe to drive. While the dealership did provide a loaner vehicle, the loaner is too small as it does not have an adequate third row for seating and cannot accommodate their family of seven. A vehicle with a full third row is a necessity and is one of the reasons they purchased the Vehicle.

73.    Volkswagen never told Plaintiffs about the Defect so Plaintiffs purchased their Vehicle on the reasonable, but mistaken, belief that their Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiffs specifically shopped for a Volkswagen vehicle

because they believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiffs contained any disclosure that the Vehicle had the Defect. Plaintiffs would not have purchased the Vehicle or would have paid less for it had they known about the Defect.

### Deborah Brown - Louisiana

74.      Plaintiff Deborah Brown (for purposes of this Plaintiff's allegations, "Plaintiff") is a Louisiana citizen and resident of Covington, Louisiana.

75.      On October 15, 2020, Plaintiff leased a 2021 Atlas SE from Volkswagen of Mandeville, an authorized Volkswagen dealership located in Mandeville, Louisiana.

76.      Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

77.      Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding

23

the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose that the Defect.

78.    Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, in February 2022, the front driver's side window in Plaintiff's Vehicle rolled down on its own. Plaintiff believes at the same time the air bag warning light on the Vehicle's dashboard went on.

79.    On March 28, 2022, Plaintiff contacted Walker Volkswagen in Metairie, Louisiana and she also contacted Volkswagen customer care to alert them to her concerns about her Vehicle described above and to seek a repair. Plaintiff spoke with a technician at the dealership about getting a loaner but the dealership representative told her none were available and none were available within 100 miles. When Plaintiff asked if she should still drive the vehicle, the dealership representative told her it was up to her but he agreed it was unsafe to drive. He then told plaintiff there were a lot of Vehicles sitting on the dealership's lot waiting to be repaired and that she could bring in her Vehicle, have it diagnosed, and if the diagnosis confirms it's the wire harness, a process could be started to request a loaner

through Volkswagen corporate. The dealership representative went on to tell Plaintiff that 9 out of 10 times Volkswagen corporate will not provide for a loaner.

80.     Plaintiff then called Volkswagen customer care and explained that she expected a loaner vehicle to be provided while her Vehicle awaited a repair. The representative at Volkswagen customer care denied Plaintiff's request stating that Volkswagen is not giving out loaners because they're going to fix the Vehicles once the part becomes available.

81.     Volkswagen never told Plaintiff about the Defect so Plaintiff leased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had she known about the Defect.

**Carol Radice - Maine**

82.     Plaintiff Carol Radice (for purposes of this Plaintiff's allegations, "Plaintiff") is a citizen of Maine and a resident of Newry, Maine.

83.     Plaintiff leased a 2020 VW Atlas Cross Max in December 2020 from Rutland Volkswagen, an authorized Volkswagen dealership located in Rutland,

Vermont.

84.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

85.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiffs and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

86.    Since leasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, in December 2021 and January 2022, the Vehicle's windows began going up and down on their own. This occurred both while driving the Vehicle and while the Vehicle was parked and was a daily occurrence. Also, the

Vehicle's parking brake would unexpectedly engage. On one occasion Plaintiff backed out of her driveway, put the car into drive, and the engine just revved. At first, Plaintiff thought she was stuck in snow but then noticed the parking brake was engaged. The parking brake occasionally engages on its own while Plaintiff is driving her Vehicle, causing her to lurch forward. This generally occurs once or twice per week. In addition, the sensors and alarms in Plaintiff's Vehicle would occasionally go off "like crazy" for no apparent reason.

87.    While travelling in February 2022, Plaintiff's Vehicle experienced so many problems she turned around and went home instead of continuing to her destination.

88.    Plaintiff has not driven the Vehicle since because she is afraid to do so. Plaintiff does not want to transport occupants in the Vehicle because she believes it is unsafe.

89.    Because of the Defect-related experiences described above, Plaintiff contacted Rutland Volkswagen, an authorized Volkswagen dealership, to alert them to the issues with her Vehicle and to seek a repair. Rutland Volkswagen told Plaintiff's husband about the Defect. When he asked for a loaner vehicle during the repair, the dealership told him that none were available and thousands of people were waiting for the part. The most recent estimate on when it might be available was "maybe early April."

90.     On March 28, 2022, Plaintiff called Volkswagen customer care but was told it could take up to four days to get a response. On April 1, 2022, Rutland Volkswagen and Volkswagen customer care alerted Plaintiff that the replacement part was available. In mid-April 2022, Rutland Volkswagen removed the defective wire harness, and, upon information and belief, installed an equally defective wire harness in her Vehicle.

91.     Volkswagen never told Plaintiff about the Defect so Plaintiff leased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had she known about the Defect.

## Terrence Berry - Maryland

92.     Plaintiff Terrence Berry (for purposes of this Plaintiff's allegations, "Plaintiff") is a citizen of Maryland and a resident of Baltimore, Maryland.

93.     Plaintiff purchased a 2021 Atlas in September 2021 from Sheehy Volkswagen, an authorized Volkswagen dealership located in Hagerstown, Maryland.

28

94.     Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

95.     Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose that the Defect.

96.     Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect. For example, in approximately February 2022, Plaintiff contacted Heritage Volkswagen located in Owingsmill, Maryland to seek assistance and a repair because his Vehicle's parking brake was engaging when the Vehicle slowed in preparation to stop (e.g., as he approached a red light). Heritage

Volkswagen told Plaintiff that the earliest appointment for this issue was two months in the future. Because of the delay caused by the shortage of replacement parts and because the replacement parts, upon information and belief are equally defective, Volkswagen and its authorized dealers have not been able to repair the Defect present in Plaintiff's Vehicle.

97.     Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

**Price McMahon - Massachusetts**

98.     Plaintiff Price McMahon (for purposes of this Plaintiff's allegations, "Plaintiff") is a Massachusetts citizen and resident of Wellesley, Massachusetts.

99.     Plaintiff leased a new Atlas on February 28, 2021 from Wellesley Volkswagen, an authorized Volkswagen dealership located in Wellesley, Massachusetts.

100.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

101.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

102.    Prior to purchasing the Vehicle, Plaintiff researched it online and was particularly interested in the Vehicle's third row seating because she frequently transports four children in car seats. Vehicle safety was another very important consideration for Plaintiff. Plaintiff ultimately bought the Atlas believing it would be a safe and reliable vehicle.

103.    At no point during her research and conversations with the dealership

was Plaintiff informed by Defendants or anyone else about any defect associated with the wiring harnesses. None of the representations received by Plaintiff contained any disclosure relating to any defect in the wiring harnesses. Had Defendants disclosed that the wiring harnesses in the Vehicle were defective, preventing the full use of the Vehicle and posing safety risks, Plaintiff would not have purchased it, or would have paid less for the Vehicle.

104.    Plaintiff began experiencing problems with the wiring harnesses shortly after leasing her vehicle. The parking brake would randomly engage while driving and warning messages would sporadically appear on the dashboard.

105.    When Plaintiff took the Vehicle to Wellesley Volkswagen to be repaired, she was told that replacement parts needed to repair the malfunctioning wiring harness were delayed. Plaintiff's Vehicle remained at Wellesley Volkswagen from approximately November 12, 2021 until the end of February 2022. During the interim, Plaintiff was provided several loaners that were substantially smaller and did not fit four car seats as needed by Plaintiff's family.

106.    Upon information and belief, when Wellesley Volkswagen removed the defective wire harness in February 2022, it installed an equally defective wire harness.

107.    Plaintiff has suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Defect including, but not limited to,

overpayment and diminished value of the Vehicle.

108.   Volkswagen never told Plaintiff about the Defect so Plaintiff leased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had she known about the Defect.

### Amanda Green – Missouri

109.   Plaintiff Amanda Green (for purposes of this Plaintiff's allegations, "Plaintiff") is a Missouri citizen and resident of Salisbury, Missouri.

110.   On or about July 1, 2021, she purchased a new 2021 Volkswagen Atlas from Machens Volkswagen, an authorized Volkswagen dealership located in Columbia, Missouri.

111.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of

purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

112.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

113.    Since purchasing the Vehicle, Plaintiff has experienced problems with the wiring harness. In April 2022, the windows in her Vehicle started rolling down on their own. Plaintiff's husband contacted the dealership and they told him the cause was likely the defective wiring harness but they would not be able to diagnose and repair the Vehicle for at least three weeks.

114.    On May 5, 2022, the Vehicle's windows rolled down and the parking brake engaged on its own while Plaintiff was backing up the Vehicle. Numerous warning lights and warning bells came on. Plaintiff had to turn the Vehicle off and back on again to get it moving. Plaintiff is concerned about driving the Vehicle due to the dangers resulting from the Defect. The Vehicle has been towed to the dealership where it will remain until the wiring harness can be repaired or replaced.

The windows, parking brake, warning lights and bells are all related to the Defect.

115.    Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that the Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had she known about the Defect.

### Christi Johnson - Missouri

116.   Plaintiff Christi Johnson (for purposes of this Plaintiff's allegations, "Plaintiff") is a Missouri citizen and resident of Blue Springs, Missouri.

117.   Plaintiff purchased a 2020 Atlas Cross Sport in April 2020 from Volkswagen of Lee's Summit, an authorized Volkswagen dealership located in Lee's Summit, Missouri.

118.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship.  Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the Defective Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

119.   Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

120.   Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect.  For example, in March 2022, after stopping at a red light, she started to accelerate when the dashboard warning lights came on. She stopped and restarted the car while wondering what had just happened.  About a week later, on or about March 31, 2022, she was pulling away from an ATM when the warning lights started to go off and on, the rear driver's side window rolled down and the driver's side front window would not go down.

121.   Plaintiff called Volkswagen of Lee's Summit and asked if the Vehicle was safe to drive.  She was told "yes… a lot of cars are doing it." The dealer told her

to bring the Vehicle in immediately. When she got to dealership, Plaintiff was told that there was a recall for the front door wiring harness, that there was no known fix for it, that all of the dealer's loaners are out, and that she would need a rental vehicle. Plaintiff asked if there was no known fix for the problem, what she was supposed to do to rectify the situation. Plaintiff was told to contact Volkswagen's customer care department to ask if Volkswagen would buy the Vehicle back or reduce her payments. The dealer placed Plaintiff in a rental vehicle from Enterprise since there no loaners were available. The rental vehicle, a MINI Cooper, was much to small for Plaintiff's needs.

122.   Plaintiff called Volkswagen customer care, who took her information and told her there was not a fix. Plaintiff asked Volkswagen to buy the Vehicle back and Volkswagen asked Plaintiff for her purchase agreement, registration, driver's license number, payment history, title, lender/lessor request form and repair orders, which Plaintiff provided.

123.   Volkswagen of Lee's Summit had Plaintiff's Atlas for approximately a month when Plaintiff received a call from the dealership informing her that her Vehicle had been fixed. Plaintiff picked up her car from the dealer on April 30, 2022 and returned the rental vehicle. However, within a week of picking up the Vehicle from the dealer, Plaintiff was driving on the highway at less than 35 mph when the emergency lights came on and the vehicle came to a slow halt.

124.   Plaintiff again called the dealership who told her to bring the vehicle back in. The dealer kept the Vehicle for two days and provided Plaintiff another small rental vehicle, this time a Buick SUV from Hertz.  When the dealer was unable to find an error code or otherwise identify the Vehicle's problem, it returned it to Plaintiff.   Plaintiff no longer drives the Vehicle because it is unsafe.  The Vehicle just sits in her garage.

125.  Volkswagen never told Plaintiff about the Defect, so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect.  Plaintiff would not have purchased the Vehicle or would have paid less for it had she known about the Defect

**Katy Doyle - Nebraska**

126.     Plaintiff Katy Doyle ((for purposes of this Plaintiff's allegations, "Plaintiff") is a Nebraska citizen and resident of Omaha, Nebraska.

127.     On April 23, 2021, Plaintiff purchased a 2021 VW Atlas from Baxter Volkswagen, an authorized Volkswagen dealership located in Omaha, Nebraska.

128.    Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

129.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiffs and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

130.    Since purchasing the Vehicle, Plaintiff has experienced problems with the wiring harness. For example, on January 3, 2022 Plaintiff was the Baxter Volkswagen waiting for an oil change when the Vehicle's driver side rear window rolled down on its own. A service advisor told Plaintiff it was "just a harness issue." When she asked if it would happen again, the service advisor said "no, the codes have been cleared and it is okay to drive." The service advisor also told Plaintiff that

no replacement parts are available and that the dealership anticipates receiving replacement wire harnesses in early February. Since the initial incident in January 2022, the windows have rolled down on their own several more times and the parking brake engaged on its own. When the parking brake engaged, the Vehicle abruptly stopped and warning lights lit up on the dashboard (including an airbag warning light) and warning sounds went off for no apparent reason. Plaintiff once again called Baxter Volkswagen to report the issues and to seek a repair. The representative at Baxter Volkswagen indicated that no replacement parts were available and that is ok to continue to drive the Vehicle to drive.

131.    On February 23, 2022 the issues described above happened 5-6 times. Each time the parking brake engaged as the Vehicle was slowing to stop. Plaintiff called Baxter Volkswagen to inquire as to whether a replacement wire harness had been received yet. The dealership told Plaintiff that no replacement wire harness had been received and that "others are worse off than you…some cars have been here since November 2021." Upset by this response, Defendants' inability to provide a replacement wire harness, and the unsafe nature of her Vehicle due to the Defect, Plaintiff demanded a replacement vehicle. Following Plaintiff's demand for a replacement vehicle, Baxter dealership arranged for a rental car for Plaintiff.

132.    Enterprise provided Plaintiff with a 2021 Atlas rental car. On February 27, 2022, while driving the 2021 Atlas rental car, the door lock failed, the

dashboard alerts lit up for no apparent reason and there was a beeping sound. The dashboard warnings read "door harness alert" and "cruise control alert." Plaintiff returned the 2021 Atlas rental car to Enterprise and was provided with a different make and model vehicle.

133.    Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

### Tashia Clendaniel - New Jersey

134.    Plaintiff Tashia Clendaniel (for purposes of this Plaintiff's allegations, "Plaintiff") is a New Jersey citizen and resident of Millville, New Jersey.

135.    On or about May 24, 2021, she purchased a Certified Pre-Owned 2020 Volkswagen Atlas from Volkswagen of Salem County, an authorized Volkswagen dealership located in Monroeville, New Jersey.

136.    Unknown to Plaintiff at the time the Vehicle was purchased, it was

equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

137.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

138.    Since purchasing the Vehicle, Plaintiff has experienced problems with the remote start due to the Defect. Plaintiff has been trying to get the Defect fixed since December 2021 and has brought the Vehicle to the Volkswagen dealership twice to have the wiring harness fixed. Each time she has been told that they do not have the correct parts. Plaintiff continues to call the Volkswagen dealership to see if the parts are available and the parts continue to be unavailable.

139.    Plaintiff is concerned about driving the Vehicle due to the dangers

resulting from the Defect.

140.    Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that the Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had she known about the Defect.

## Hogan Popkess – New York

141.    Plaintiff Hogan Popkess (for purposes of this Plaintiff's allegations, "Plaintiff") is a New York citizen and resident of Ulster Park, New York.

142.    On December 2, 2020, Plaintiff leased a 2021 Volkswagen Atlas from VW of Kingston, an authorized Volkswagen dealership located in Kingston, New York.

143.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and

43

leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

144.     Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

145.     Since leasing the Vehicle, Plaintiff has experienced problems with the wiring harness. For example, in early 2022, the front wire harness issue started with the instrument cluster located in the dashboard displaying errors.

146.     On March 31, 2022, Plaintiff called VW of Kingston to alert them to these issues and to seek a repair. The service technician told Plaintiff the Defect should not affect the driving, that he is aware of several similar complaints, that there is nothing the dealership can do at this point because no replacement parts are available, and Volkswagen may be issuing a recall.

147.     The next day, the instrument cluster displayed multiple warnings, the doors unlocked on their own, and the rear driver window went down on its own.

44

Plaintiff called the Volkswagen dealership to schedule service, and an appointment was scheduled for April 4, 2022.

148.    On April 2, 2022, while coming to a stop, the parking brake abruptly engaged. Once again, Plaintiff called the Volkswagen dealership about the Defect and to seek an immediate solution. The dealership representative told Plaintiff his Vehicle would likely sit until the April 4th appointment and that he might as well keep it.

149.    On April 4, 2022, Plaintiff took in his Vehicle to the dealership and the dealership confirmed the Defect. Because no replacement parts were available, the dealership would not repair the Vehicle and told Plaintiff that they had no idea when his Vehicle would be repaired.

150.    Volkswagen never told Plaintiff about the Defect so Plaintiff leased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had he known about the Defect.

**David Wildhagen – North Carolina**

45

151.    Plaintiff David Wildhagen (for purposes of this Plaintiff's allegations, "Plaintiff") is a North Carolina citizen and resident of Fayetteville, North Carolina.

152.    Mr. Wildhagen purchased a 2021 VW Atlas on August 1, 2021 from Valley Auto World Volkswagen, an authorized Volkswagen dealership located in Fayetteville, North Carolina.

153.    Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

154.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiffs and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

155.     Since purchasing the Vehicle, Plaintiff has experienced problems with the wiring harness. For example, around mid-March 2022, the Vehicle's windows started rolling down on their own, the parking brake indicator light started turning on, dashboard alerts started going off, and the airbag indicator light began coming on for no apparent reason. In response to these problems and to seek a repair, Plaintiff called Valley Auto World. Valley Auto World told Plaintiff that they were aware of the problem, that it is safe to drive the Vehicle, and that no replacement parts are available so there is nothing the dealership can do.

156.     The Vehicle is now mostly parked in Plaintiff's driveway, as Plaintiff avoids driving it because of the Defect.

157.     Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

**Kory Wheeler - Ohio**

47

158.    Plaintiff Kory Wheeler (for purposes of this Plaintiff's allegations, "Plaintiff") is an Ohio citizen and resident of Olmstead Falls, Ohio.

159.    Plaintiff leased a 2021 Volkswagen Atlas on June 8, 2021, from Ganley Volkswagen, a licensed Volkswagen dealership located in North Olmstead, Ohio.

160.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

161.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

162.    Since leasing the Vehicle, Plaintiff has experienced problems with

the wiring harness. For example, around the end of February 2022, the Vehicle's windows started rolling down and up randomly on their own. The Vehicle's doors would also lock and unlock on their own. Plaintiff also had a few instances where the parking brake engaged while driving.

163.    To alert the dealership of the Defect and to seek a repair, Plaintiff took his Vehicle to Ganley Volkswagen dealership on March 4, 2022. The service technician at the dealership told Plaintiff this would not be an easy fix and there are no replacement parts presently available. The service technician also told Plaintiff that another customer's Vehicle with the same issue has been sitting at the dealership for several months awaiting a repair.

164.    Because the Defect presents safety concerns, Plaintiff left his Vehicle at the Dealership and was provided with a loaner vehicle.

165.    Plaintiff's Vehicle remained at the dealership until April 29, 2022 when a replacement wire harness was installed. Upon information and belief, the replacement wire harness is similarly defective.

166.    Plaintiff also called Volkswagen customer care to alert Volkswagen to the Defect and his concern that no repair is available. Plaintiff also expressed his unhappiness that he continues to make payments on a car he cannot use, that the loaner is much more expensive to run (much lower gas mileage than the Atlas), and that his kids are scared to drive in the Atlas because of the Defect. In response,

Volkswagen customer care offered a token gift card which he rejected. Plaintiff also asked a Volkswagen customer care manager when a repair would be available; however, the Volkswagen manager said she could not even provide an estimate at this point.

167.    Volkswagen never told Plaintiff about the Defect so Plaintiff leased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had he known about the Defect.

### Keech Arnsten - Oregon

168.    Plaintiff Keech Arnsten (for purposes of this Plaintiff's allegations, "Plaintiff") is an Oregon citizen and resident of Hillsboro, OR.

169.    Plaintiff purchased a 2021 VW Atlas in March 2021 from Herzog-Meier, an authorized Volkswagen dealership located in Beaverton, Oregon.

170.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship.  Volkswagen's unfair,

unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

171.   Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose that the Vehicle possessed the Defect.

172.   Plaintiff has experienced multiple problems with her Vehicle related to the wiring harness since at least August 2021. During one such incident, Plaintiff was driving when the Vehicle's alerts started dinging and there was a message that the driver side door was open though it was not. Plaintiff pulled over and the driver-side rear window rolled down on its own. The alarm continued until Plaintiff turned the Vehicle off. Plaintiff was pregnant at the time and did not drive the Vehicle for several weeks because she did not feel it was safe. After Plaintiff delivered her baby, Plaintiff took the vehicle to Herzog-Meier to be repaired. The dealership held her

Vehicle for 2 weeks.  Initially, the dealer did not have a loaner available; however, two days later they provided her a loaner vehicle that was too small for Plaintiff's needs because it did not have a third row of seats.  The dealership replaced the wire harness with, upon information and belief, a similarly defective wire harness. Plaintiff prays that she will not be involved in an accident because she is not confident that the Vehicle's airbags will deploy as a result of the defective wire harness.  Because Plaintiff regularly transports her small children, safety is very important to Plaintiff.

## Joe Ramagli - Pennsylvania

173.   Plaintiff Joe Ramagli (for purposes of this Plaintiff's allegations, "Plaintiff") is a Pennsylvania citizen and resides in Levittown, Pennsylvania

174.   Plaintiff leased a 2020 Atlas Cross Sport in March 2021 from Piazza Volkswagen, an authorized Volkswagen dealership located in Langhorne, Pennsylvania.

175.   Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived

Plaintiff of the benefit of the bargain.

176.   Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

177.   Since leasing the Vehicle, Plaintiff has experienced problems with the wiring harness. For example, on March 30, 2022, Plaintiff was in the school line dropping off his kids when the Vehicle's windows started going up and down on their own. After he dropped of his child at school, Plaintiff started his Vehicle but it would not move. Once again, the windows went up and down on their own. When he finally was able to get the Vehicle to start to move, the parking brake engaged on its own and the Vehicle came to an abrupt stop. Plaintiff turned off the Vehicle, re-started it, but once again the parking brake automatically engaged and the windows went up and down on their own, and several dashboard alerts went off.

178.   In response to the Defect and to seek an immediate repair, Plaintiff called Piazza Volkswagen. The dealership told Plaintiff that the issue is related to the front door wire harness. When Plaintiff asked the service technician if his

Vehicle is safe to drive, the technician said "no, bring it in, we'll get you a rental." Plaintiff also asked the technician for an estimate to complete the repair, and the technician said no replacement parts are available so he could not provide an estimate. The technician then told Plaintiff that the dealership has had Vehicles sitting idle in its lot since December waiting for repair for this Defect.

179.   Because he considered his Vehicle unsafe, Plaintiff dropped off his Vehicle at the Piazza Volkswagen on March 30, 2022. On April 25, 2022, Plaintiff called the dealership for an update and was told they dealership still had no idea when his Vehicle would be repaired.

180.   On April 29, 2022, Plaintiff received a call from the dealership indicating that his Atlas had been repaired and was ready for pickup. Upon information and belief, the replacement wire harness installed in Plaintiff's Vehicle is equally defective as the original part that was replaced.

181.   Volkswagen never told Plaintiff about the Defect so Plaintiff leased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have

leased the Vehicle or would have paid less for it had he known about the Defect.

### Harry O'Boyle - Pennsylvania

182.   Plaintiff Harry O'Boyle (for purposes of this Plaintiff's allegations, "Plaintiff") is a Pennsylvania citizen and resident of Yardley, Pennsylvania.

183.   On or about February 5, 2021, Plaintiff leased a new 2020 Volkswagen Atlas from Piazza Volkswagen, an authorized Volkswagen dealership located in Langhorne, Pennsylvania.

184.   Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

185.   Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational

documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

186.   Since leasing the Vehicle, Plaintiff has experienced problems with the remote start due to the Defect. Also, the parking brake has engaged on its own, warning lights and alert/beeping noises intermittently come on while driving, and the windows roll down on their own. At traffic lights, the Vehicle's engine powers down and shuts off and will not automatically turn on when the accelerator pedal is pushed, forcing Plaintiff to place the Vehicle into park. This made Plaintiff feel like he was going to be hit in the rear every time the Vehicle shut off with traffic behind him. Plaintiff is concerned about driving the Vehicle due to the dangers resulting from the Defect.

187.  Plaintiff has delivered his vehicle to an authorized Volkswagen dealership for diagnosis and repair and the Volkswagen technician told Plaintiff the issues he is experiencing are due to the Defect. The Volkswagen technician told Plaintiff that the parts are currently unavailable and that the Vehicle will likely remain at the dealership for months to await repair.

188.   Volkswagen never told Plaintiff about the Defect so Plaintiff leased his Vehicle on the reasonable, but mistaken, belief that the Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed

Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had he known about the Defect.

### Eric Kovalik – South Carolina

189.  Plaintiff Eric Kovalik (for purposes of this Plaintiff's allegations, "Plaintiff") is a South Carolina citizen and resident of Bluffton, South Carolina.

190.  Plaintiff purchased a Volkswagen Atlas on May 2, 2021 from AutoNation Volkswagen Hilton Head, an authorized Volkswagen dealership located in Hilton Head, South Carolina.

191.  Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

192.  Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle. Volkswagen had the opportunity

to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

193.    Since purchasing the Vehicle, Plaintiff has experienced problems with the Vehicle due to the Defect. For example, the parking brake would repeatedly engage on its own, the windows would repeatedly roll down on their own, and the front driver side door would lock and unlock on its own. The first time Plaintiff and other drivers in Plaintiff's immediate family experienced the Defect was on September 24, 2021.

194.    On that day, the primary driver of the Vehicle could not get the Vehicle to move and there was a beeping noise. The primary driver of the Vehicle called the Volkswagen dealership to describe the problem and to seek an immediate repair. The dealership confirmed the problem was the front door wiring harness and told the primary driver no replacement parts were available. The dealership would not confirm that the Vehicle was safe to drive.

195.    Over the next few months, the Defect gradually presented more often as the parking brake would repeatedly engage on its own, usually when the Vehicle was placed into reverse. The primary driver would have to open and then shut the door in order to disengage the parking brake. On certain occasions, the primary

driver had to do this more than 50 times.

196.   The primary driver of the Vehicle called AutoNation Volkswagen in January 2022 because of the prevalence of the Defect when she drove the Vehicle. The dealership told her that they had a temporary fix to help the sensor which was to grease the door. Service performed this "fix" but after researching it, she learned it doesn't last. After the fix, she called the dealership because she was not comfortable driving the Vehicle since she has two children whom she routinely transports. When she asked the dealership employee if he thought it was safe to drive the Vehicle, he would not answer and simply said he could not guarantee the issue won't happen again…even with the "fix."

197.   Because of the Defect and Defendants' failure to timely repair it, Plaintiff and the primary driver ultimately sold the Vehicle back to Auto Nation Volkswagen dealership, resulting in a substantial loss.

198.   Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have

purchased the Vehicle or would have paid less for it had he known about the Defect.

## Charles Hillier - Tennessee

199.    Plaintiff Charles Hillier (for purposes of this Plaintiff's allegations, "Plaintiff") is a Tennessee citizen and resident of Franklin, Tennessee.

200.    Plaintiff leased a 2021 Volkswagen Atlas from Pugi Volkswagen, an authorized Volkswagen dealership located in Westmont, Illinois on March 26, 2021.

201.    Unknown to Plaintiff at the time the Vehicle was leased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of lease than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

202.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to leasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

203.   Since leasing the Vehicle, Plaintiff has experienced problems with the Vehicle due to the Defect. For example, the parking braked has engaged on its own causing the Vehicle to abruptly stop, the windows roll down on their own, dashboard light go off for no apparent reason, and the airbag warning light goes on. When the parking brake automatically engages, it is as though the brakes were slammed on and the Vehicle abruptly stops. In order to disengage the brake, Plaintiff restarts the Vehicle.

204.   Because of the Defect and to seek an immediate repair, Plaintiff took the Vehicle to Harper Volkswagen located in Knoxville, Tennessee in late November 2021. The service technician ran a diagnostic, indicated the issues were caused by the Defect, that the dealership sees this issue 7 to 10 times per week, that no replacement parts are available, no loaners are available, and that the Vehicle was safe to drive.

205.   In early December 2021, Plaintiff dropped his Vehicle off at Carlock Volkswagen, an authorized Volkswagen dealership located in Franklin, Tennessee. Plaintiff's Vehicle remained at this Volkswagen dealership for more than four months awaiting a repair. During this time period, the dealership provided a rental vehicle to Plaintiff. While the dealership installed a replacement wire harness, it did not fix the Defect so the Vehicle remained at the dealership.

206.   As time went by, Plaintiff called Carlock Volkswagen weekly to check

61

on the status of the repair. He also called Volkswagen customer care weekly.

207.   Then, on April 18, 2022, Plaintiff picked up the "repaired" Vehicle from the dealership. The dealership told Plaintiff that it was able to install an "old part" that "works." The dealership also told Plaintiff that the Vehicle was safe to drive.

208.   Volkswagen customer care eventually offered Plaintiff a $200 gift card. Plaintiff has not accepted the gift card.

209.   Volkswagen never told Plaintiff about the Defect so Plaintiff leased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have leased the Vehicle or would have paid less for it had he known about the Defect.

**Mike Sherrod - Tennessee**

210.   Plaintiff Mike Sherrod (for purposes of this Plaintiff's allegations, "Plaintiff") is a Tennessee citizen and resident of Waverly, Tennessee.

211.   In July 2020, Mr. Sherrod purchased a new 2021 VW Atlas, Vehicle Identification Number 1V2KR2CA9MC505679 (hereafter the "Sherrod Vehicle")

from an authorized VW dealership in Tennessee.

212.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

213.   Plaintiff uses the Vehicle for personal, family, work, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

214.   Since purchasing the Vehicle, Plaintiff has experienced problems with the Vehicle due to the Defect. For example, in or around November or December 2021, Plaintiff's Vehicle first began exhibiting the symptoms of the Defect as the Vehicle's windows began opening and closing on their own and the Vehicle's instrument cluster displayed several error messages. On several occasions while

Plaintiff was driving the Vehicle, the Vehicle's emergency brake engaged on its own, slowing the Vehicle down. Around the same time, the Vehicle's windows opened and closed on their own and the Vehicle's dash displayed error messages. To clear the error messages, Plaintiff had to pull over and turn off the Vehicle and then turn it back on. Also, during these episodes the Vehicle's remote starter did not work.

215. In December 2021, Mr. Sherrod brought his Vehicle to Volkswagen of North Nashville in Madison, Tennessee and complained that his Vehicle was experiencing the above symptoms, and sought a repair. In response, the dealer advised Mr. Sherrod that the Defect was a known issue and that the Vehicle's door wire harness needed to be replaced. The dealer also told Plaintiff that no replacement parts were available and that he was aware that hundreds of other Vehicles were also waiting for replacement door wire harnesses to address the Defect. The dealer further advised Mr. Sherrod that it would call him when it received replacement wire harnesses. The dealer did not provide Plaintiff with a replacement or loaner vehicle.

216. Several months after Plaintiff sought a repair from the dealer, the Vehicle remained unrepaired and continued to experience the Defect.

217. Plaintiff, through his counsel, sent a letter to Volkswagen advising that Plaintiff's Vehicle suffers from the Defect and has not been repaired within a reasonable period of time.

218.   Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

## Labranda Shelton – Texas

219.   Plaintiff Labranda Shelton (for purposes of this Plaintiff's allegations, "Plaintiff") is a Texas citizen and resident of Burkburnett, Texas.

220.   Plaintiff purchased a 2021 Volkswagen Atlas in April 2021 from Herb Easley Volkswagen, an authorized Volkswagen dealership located in Wichita Falls, Texas.

221.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived

Plaintiff of the benefit of the bargain.

222.   Plaintiff uses the Vehicle for personal, family, work, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

223.   Since purchasing the Vehicle, Plaintiff has experienced problems with the Vehicle due to the Defect. For example, on February 24, 2022, Plaintiff was traveling in Lubbock, Texas and one of her tires was going flat. So, she headed back to the hotel where she was staying and was driving very slowly at 15 mph. During this drive, her Vehicle abruptly and unexpectedly stopped because the parking brake engaged on its own. This occurred in the middle of the road and created a very dangerous situation. At the same time, the Vehicle's windows rolled down on their own and dashboard alerts went off. Plaintiff turned the car off and restarted the Vehicle. However, within 30 seconds, the parking brake automatically engaged again, the windows went down, and dashboard alerts went off. Once again, Plaintiff restarted her Vehicle so she could make it back to the hotel. Unfortunately, this same process of starting the Vehicle, the parking brake engaging, the windows rolling

down, and the alarms going off continued non-stop until she travelled the one block distance to her hotel. Plaintiff estimates that it took her 25 minutes to drive her Vehicle one block because of the Defect.

224.  Once back to her hotel, Plaintiff called Volkswagen of America customer care to arrange to have her Vehicle towed to Gene Messer Volkswagen in Lubeck, Texas. The technician at the Volkswagen dealership explained to Plaintiff that this is a common problem and there was nothing the dealership could do because there are no replacement parts available. The technician told Plaintiff that there was an Atlas on the dealership's lot for the past two months waiting to be repaired.

225.  Plaintiff had her Vehicle towed 300 miles back to Wichita Falls, Texas. Volkswagen customer care refused to cover the $750 towing charge; however, the Herb Easley Volkswagen dealership agreed to tow Plaintiff's Vehicle back to its dealership for no charge. And, because Volkswagen customer care also refused to cover the cost of a rental vehicle, Plaintiff's employer paid for a rental car so Plaintiff could safely drive back to Wichita Falls.

226.  Plaintiff's Vehicle has remained at Herb Easley Volkswagen awaiting a repair since late February 2022. Plaintiff has called Volkswagen customer care to request an approximate repair date. The dealership initially told Plaintiff that her Vehicle would be repaired in 6 to 8 weeks; however, more recently Volkswagen customer care simply said that it was unable to provide an estimated repair date.

227.   Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had she known about the Defect.

### Adam & Mallory Moore - Utah

228.   Plaintiffs Adam and Mallory Moore (for purposes of this Plaintiffs' allegations, "Plaintiffs") are Utah citizens and residents of Salt Lake City, Utah.

229.   In March 2020, Plaintiffs purchased a 2019 Volkswagen Atlas from Murdock Volkswagen, an authorized Volkswagen dealership located in Logan, Utah.

230.   Unknown to Plaintiffs at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiffs to pay more at the time of purchase than Plaintiffs would have paid had the truth been disclosed and deprived

Plaintiffs of the benefit of the bargain.

231.    Plaintiffs use the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiffs relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiffs and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

232.    Since purchasing the Vehicle, Plaintiffs have experienced problems with the Vehicle due to the Defect. For example, a few weeks after the purchase, the airbag warning light went on. In response, Plaintiffs took the Vehicle Volkswagen Southtowne for an immediate diagnosis and repair. The dealership service department reset the alarm. The same airbag alarm issued occurred two more times and the service department at Volkswagen Southtowne reset the alarm.

233.    The third time Plaintiffs took the Vehicle to the dealership for the air bag alarm issue, the airbag exploded during the service. The service department technician told Plaintiff that the Vehicle's wire harness and airbag needed to be replaced. The airbag repair took one month to complete.

234.    A few weeks after the airbag repair was completed, a replacement wire harness was installed in the Vehicle. Upon information and belief, the replacement

wire harness installed in Plaintiffs' Vehicle was also defective.

235.   Because of all the problems they encountered with their Vehicle, Volkswagen agreed to replace for free the 2019 Atlas with a new 2021 Volkswagen Atlas SE R-Line. In March 2021, Plaintiffs exchanged their 2019 Atlas for the new 2021 Atlas.

236.   During the last week of March 2022, Plaintiffs' 2021 VW Atlas began exhibiting problems associated with the Defect. For example, the engine malfunctioning light lit up for no apparent reason. Plaintiffs called Volkswagen Southtowne to alert the dealership to their concern and to seek a repair. The dealership told Plaintiffs not to worry about the alarm. Still concerned, Plaintiffs took their 2021 Atlas in for service at another authorized Volkswagen dealership, Strong Volkswagen, because they were close to taking the Vehicle on a long trip to California. A diagnostic test run by Strong Volkswagen determined the wire harness was failing. When Plaintiffs asked the service advisor if he would drive the Vehicle, the advisor answered "no, I'd ground it but there are people still driving it." Plaintiffs then requested an estimate as to when their Vehicle would be repaired. The service advisor could not give Plaintiffs an estimate because there were no replacement parts available. The service advisor also told Plaintiffs that the wire harnesses are made in the Ukraine.

237.   Plaintiffs' Vehicle remains parked at the dealership, awaiting repair.

238.   Volkswagen never told Plaintiffs about the Defect so Plaintiffs purchased their Vehicle on the reasonable, but mistaken, belief that their Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiffs specifically shopped for a Volkswagen vehicle because they believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiffs contained any disclosure that the Vehicle had the Defect. Plaintiffs would not have purchased the Vehicle or would have paid less for it had they known about the Defect.

## Tina Grove – Virginia

239.   Plaintiff Tina Grove (for purposes of this Plaintiff's allegations, "Plaintiff") is a Virginia citizen and resident of Elkton, Virginia.

240.   On or about October 29, 2020, she purchased a new 2020 Volkswagen Atlas from CMA's Valley Volkswagen, an authorized Volkswagen dealership located in Staunton, Virginia.

241.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of

71

purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

242.    Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

243.    Plaintiff started experiencing problems with her Vehicle within the first 500 miles when the electric module that controls the collision light went out. The electric module in the center of the windshield controls the ability of the Vehicle to communicate with the "my car" application so the Vehicle had no remote start, no remote lock, no speed limit coverages, no miles driven, etc… She brought it to the attention of the dealership, and they told her the module was bad and that they would order her a new one.

244.    Since then, Plaintiff has experienced multiple problems with the Vehicle's remote start and the remote start would not work at all. Now, if the remote start odes work, Plaintiff has to restart the Vehicle before she can drive it. Plaintiff recently visited the NHTSA website and pulled the open recalls for her vehicle and

the wiring harness recall is there. Plaintiff has done her research and is very concerned about driving the Vehicle due to the dangers resulting from the Defect.

245.   Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that the Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had she known about the Defect.

### Mary Koelzer - Washington

246.   Plaintiff Mary Koelzer (for purposes of this Plaintiff's allegations, "Plaintiff") is a Washington citizen and resident of Naches, Washington.

247.   On November 23, 2019, Plaintiff purchased a 2019 Volkswagen Atlas from Steve Hahn Volkswagen, an authorized Volkswagen dealership located in Yakima, Washington.

248.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and

leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

249.   Plaintiff uses the Vehicle for personal, family, work, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

250.   Since purchasing the Vehicle, Plaintiff has experienced problems with the Vehicle due to the Defect. For example, on or about January 31, 2022, Plaintiff's Vehicle began displaying numerous error messages on the Vehicle's instrument cluster and then the Vehicle applied the emergency brakes on its own while Plaintiff drove her children home from school at approximately 30-35 miles per hour, resulting in the Vehicle coming to a complete stop.   In addition, the Vehicle's windows rolled open and closed on their own.

251.   On January 31, 2022, Plaintiff had her Vehicle towed to Steve Hahn Volkswagen and then complained to the dealership about the Defect and sought a repair. The dealership advised Plaintiff that her Vehicle's door wiring harness

needed to be replaced however the dealership did not have parts available. The dealer further claimed that the Vehicle was purportedly safe to drive in its unrepaired state. Plaintiff's Vehicle remained at the dealership from January 31, 2022 until late April 30, 2022. For the first two months that the Vehicle remained at the dealership, the dealership failed to provide Plaintiff with a rental vehicle.

252.   On April 30, 2022, a replacement wire harness was installed in the Plaintiff's Vehicle. Upon information and belief, the replacement wire harness installed in Plaintiff's Vehicle was also defective.

253.   Volkswagen never told Plaintiff about the Defect so Plaintiff purchased her Vehicle on the reasonable, but mistaken, belief that her Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because she believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

### Mark Stevens - West Virginia

254.   Plaintiff Mark Stevens (for purposes of this Plaintiff's allegations, "Plaintiff") is a Kentucky citizen and resident of Greenup, Kentucky.

255.   On July 23, 2021, Plaintiff purchased a 2021 Volkswagen Atlas from

Moses Volkswagen of Huntington, an authorized Volkswagen dealership located in Huntington, West Virginia.

256.   Unknown to Plaintiff at the time the Vehicle was purchased, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship. Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

257.   Plaintiff uses the Vehicle for personal, family, work, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the Vehicle. Volkswagen had the opportunity to disclose the Defect through its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose the Defect.

258.   Since purchasing the Vehicle, Plaintiff has experienced problems with the Vehicle due to the Defect. For example, on or about February 26, 2022, while Plaintiff drove his Vehicle in a parking garage, the Vehicle's emergency brakes applied on its own and the Vehicle suddenly displayed several error messages on the

Vehicle's instrument cluster.

259.   On or about February 28, 2022, Plaintiff had his Vehicle towed to Moses Volkswagen of Huntington and then he complained to the dealership about the Defect and sought a repair.   On February 29, 2022, the dealership advised Plaintiff that his Vehicle's door wiring harness needed to be replaced however the dealership did not have parts available and did not know when parts would become available.   Plaintiff's Vehicle remained at the dealership from February 28, 2022 until late April 2022.   The Volkswagen dealership failed to provide Plaintiff with a rental vehicle during the entirety of the time the vehicle remained at the dealership and instead only provided Plaintiff with a rental vehicle on a limited basis, at times leaving Plaintiff without alternative transportation.

260.   In late April 2022, a replacement wire harness was installed in the Plaintiff's Vehicle. Upon information and belief, the replacement wire harness installed in Plaintiff's Vehicle was also defective.

261.   Volkswagen never told Plaintiff about the Defect so Plaintiff purchased his Vehicle on the reasonable, but mistaken, belief that his Vehicle would be reliable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for a Volkswagen vehicle because he believed Volkswagen's broad advertising messaging that its vehicles were safe and reliable. None of the advertisements reviewed or representations received by Plaintiff

contained any disclosure that the Vehicle had the Defect. Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect.

## Scott Carter - Wisconsin

262.   Plaintiff Scott Carter (for purposes of this Plaintiff's allegations, "Plaintiff") is a Wisconsin citizen and resident of Madison, Wisconsin.

263.   Plaintiff purchased a 2020 VW Atlas Cross Sport on November 22, 2021, from Zimbrick Volkswagen, an authorized Volkswagen dealership located in Middleton, Wisconsin.

264.   Unknown to Plaintiff at the time he purchased the Vehicle, it was equipped with a defective wiring harness that did not function safely, as advertised, or as intended by its manufacture, material, or workmanship.  Volkswagen's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Vehicle with the Defect has caused Plaintiff to pay more at the time of purchase than Plaintiff would have paid had the truth been disclosed and deprived Plaintiff of the benefit of the bargain.

265.   Plaintiff uses the Vehicle for personal, family, and/or household uses. Prior to purchasing the Vehicle, Plaintiff relied on Volkswagen's advertising regarding the safety and reliability of the vehicle.  Volkswagen had the opportunity to disclose the Defect through, among other things, its advertising, in owner's manuals, in correspondence sent to Plaintiff and Class members, through

representations by Volkswagen dealerships, through vehicle brochures and other informational documents, or on Volkswagen's website. However, Volkswagen failed to disclose that the Defect.

266.   Since purchasing the Vehicle, Plaintiff has experienced problems related to the Defect.  His first issue was on Sunday, December 19, 2021 when Plaintiff started the Vehicle and received various error messages and alarms went off.  This happened multiple times over the next few months. Then, beginning on or about April 23, 2022, Plaintiff's parking brake would periodically engage whenever the Vehicle came to a stop (traffic lights, stop signs, etc.).  When this happened, the Vehicle's windows would also go down on their own.

267.   Plaintiff called his dealer on or about April 23, 2022 and was told that he needed a replacement wire harness replacement, and that the dealership only had one left in stock.  When Plaintiff dropped the Vehicle off at the dealer to have the replacement part installed, the dealer told him that the fix was likely only to be temporary fix and that problems would likely arise again.  The dealership replaced the wire harness with, upon information and belief, a similarly defective wire harness.

## Defendants

268.   Defendant VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is one of the largest automobile

manufacturers in the world and is in the business of designing, developing, testing, manufacturing, and selling automobiles. VWAG is the parent corporation of VWGofA.

269.    VWAG is the public company of the Volkswagen brand and has a primary listing on the Frankfurt Stock Exchange, where it is a constituent of the Euro Stoxx 50 stock market index, and a secondary listings on the Luxembourg Stock Exchange and SIX Swiss Exchange. It has been traded in the United States via American depositary receipts since 1988, currently on the OTC Marketplace. VWAG directs, operates, and controls the actions of its subsidiaries in order to both protect its brand and protect shareholder interests.

270.    VWAG is also responsible for the design and testing of Volkswagen vehicles, and specifically the Atlas, prior to production. Accordingly, certain knowledge of the Defect both from pre- and post-production testing data is in the sole possession of VWAG and its employees.

271.    Defendant VWGofA is a New Jersey corporation doing business throughout the United States. VWGofA's corporate headquarters is located in Herndon, Virginia. VWGofA is a wholly-owned U.S. subsidiary of VWAG, and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing and sale of VW automobiles nationwide.

272.    At all relevant times, VWGofA acted as an authorized agent,

representative, servant, employee and/or alter ego of VWAG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of VW vehicles in the United States, including substantial activities that occurred within this jurisdiction.

273.   WFGofA is also principally responsible for all sales, marketing and distribution of the VW Atlas in the United States. WFGofA directs the activities of dealerships, coordinates with NHTSA in conducting recalls, and reports back to VWAG all information concerning the operations of the company. The information underlying the decision to conduct the recall was compiled by WFGofA and reported to VWAG.

274.   Defendant VWGofA Chattanooga Operations, LLC was founded on December 29, 2008 after the Supervisory Board of VWAG decided in favor of Chattanooga as the location for a Volkswagen plant in North America.  In July 2014, the Supervisory Board of VWAG decided to locate the production of the VW Atlas, developed especially for the US market, at the Chattanooga plant.  At all relevant times, VWGofA Chattanooga manufactured the Vehicles.

275.   The plant includes all the main stations of the entire production process, including body shop, paint shop, assembly unit, technical center, training academy, and a supplier park with multiple companies on-site. As parts for the VW Atlas are

manufactured by WFGofA Chattanooga, the plant will be intimately involved in the implementation of a fix for the Vehicles. Further any fix for the Wiring Harness will be implemented by WFGofA Chattanooga in future iterations of the VW Atlas.

276.   At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Vehicles under the VW brand name throughout the United States. Defendants and/or their agents designed, manufactured, and/or installed the wire harnesses that are the subject of this litigation in the Vehicles.  Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance Schedules, advertisements, other promotional materials relating to the Vehicles, and all materials that were available at the point of sale.

277.   At all relevant times, Defendants were engaged in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships.

278.   In this Complaint, when reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

279.   Defendants sell the Vehicles in part via communications that it

authorized its dealers to make about vehicles, including the Vehicles discussed herein. This includes authorizing dealers to distribute brochures and other marketing and promotional material. Defendants, through its authorized dealers, have and had the opportunity to disclose all material facts relating to the Defect in the Vehicles.

280. Authorized dealers are Defendants' agents, such that an opportunity to receive information from an authorized dealership is an opportunity to receive information directly from Defendants. This agency relationship is established by the fact that, among other things: Defendants' logo is displayed at authorized dealerships; Defendants issue technical bulletins and service instructions to dealerships detailing potential vehicle problems, and also relies on them to repair vehicles and to perform recalls; Defendants distribute various advertising and promotional material to its dealerships, including brochures, booklets, and pamphlets; and under the terms of its express warranty, Defendants require their customers to return to their authorized dealerships to perform warranty repairs. Furthermore, Defendants' relationship with their dealerships is governed by a dealership agreement that imposes a number of reciprocal obligations on both the Defendants and the dealerships.

## IV.    FACTUAL ALLEGATIONS

A. **The Defect**

281. The Vehicles suffer from a dangerous manufacturing defect that causes

the Vehicles' door wiring harnesses to fail and the Vehicle's systems to malfunction.

282.   Because the Vehicles' wiring harnesses are responsible for a wide variety of vehicle functions, the defect causes a wide range of problems for the Vehicles.   For instance, the Vehicles' airbags may fail to deploy.  The defect can also cause the Vehicles' brakes to lock up while the Vehicle is in motion, thereby posing a danger to the driver and other motorists.  The defect is also known to cause the windows to go up and down on their own, as well as error messages and warning noises. These problems pose a safety risk because when the system malfunctions, unexpected motions and sounds can cause the driver to become distracted.

**B.    Defendants Knew of the Defect Before Plaintiffs Purchased or Leased their Vehicles**

283.   Defendants have long known since prior to the Class period or should have known of the Vehicles' wiring harness problems from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendants, collected by NHTSA, and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources.   Yet, Defendants failed to disclose and actively concealed the Vehicles' Defect from the public, and continued to manufacture, distribute, and sell the Vehicles.  Defendants continue to fail to disclose and actively conceals this defect from consumers prior to purchase or lease.

### 1.    Pre-Release Design, Manufacturing, and Testing Data

284.   It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of its vehicles.  Defendants did so for the Vehicles and tested the operation of the wiring harnesses prior to selling the Vehicles.  Given the immediacy and frequency of consumer complaints about the Defect, it is apparent that Defendants knew about the defect before the Vehicles were sold or leased.

285.   During vehicle development, Defendants necessarily would have gained comprehensive and exclusive knowledge about the Defect.  Such knowledge would necessarily including the forces and stresses the system faces in normal use and the cumulative wear on the system caused by use, age, and environmental factors.  This design, engineering, and testing data is unavailable to Plaintiffs without discovery, but upon information and belief, analysis of this data would have revealed that the wiring harnesses were insufficient for their intended use and would malfunction frequently.

### 2.    Warranty Claims Data

286.   Defendants also knew or should have known about the Defect based on the large number of warranty repairs made immediately upon the Vehicles' launch.

287.   Upon information and belief, Defendants regularly compile and analyze detailed warranty service information regarding repairs performed under warranty at its network of dealerships.  Indeed, Defendants require dealers to

maintain detailed and meticulous records for any warranty repairs performed and routinely refuses to pay for warranty repairs made where the nature and cause of the malfunction is insufficiently described.

288.    Upon information and belief, these dealer service records and warranty data reflect an abnormally large spike in wiring harness failures immediately following the launch of the Vehicles.

289.    As documented by widespread consumer complaints, this defect has plagued the Vehicles since their launch.    Consumers began posting furious complaints on the internet shortly after the Vehicles first went on sale:

- NHTSA Complaint No. 11246080, June 19, 2019 (2019 Atlas): **THE CAR IS 6 MONTHS OLD. WE HAVE 5 DOCUMENTED CASES OF THE VEHICLE STOPPING/BRAKING ON IT'S OWN FOR NO REASON.** THE DEALER AND VW CORPORATE DO NOT HAVE A FIX AND SUGGESTED WE KEEP DRIVING IT TO GET MORE DOCUMENTED OCCURRENCES. THE VEHICLE POSES AN EXTREME SAFETY RISK AT THIS TIME DUE TO FAULTY BRAKING ASSIST MECHANISMS. 2 OF THE 5 OCCURRENCES INVOLVED IT THROWING THE PARKING BRAKE ON BY ITSELF AND THE OTHER 3 WERE DRASTIC SLOW DOWNS WITH NOTHING AROUND. ALL INCIDENTS REPORTS ARE ATTACHED AND ARE EXACTLY WHAT WAS TURNED INTO THE DEALER AND VW CORPORATE

- NHTSA Complaint No. 11235116, July 26, 2019 (2019 Atlas): THE REAR WINDOW VEHICLE HAS A FAULTY FRONT FACING CAMERA THAT HAS OR HAD A DATA ISSUE THAT CAUSES THE VEHICLE TO IMMEDIATELY STOP WITHOUT WARNING AND THE PARKING BRAKE TO ENGAGE. I TOOK THE VEHICLE TO TOM WOOD

VOLKSWAGEN WHERE THEY CONFIRMED THE ISSUE, AND SAID IT HAD HAPPENED SOME PLACE ELSE AS WELL. THIS WILL EASILY CAUSE REAR IMPACT CRASHES BECAUSE THE VEHICLE ABRUPTLY STOPS IN THE MIDDLE OF THE ROAD WITHOUT WARNING.

- NHTSA Complaint No. 11253281, September 4, 2019 (2019 Atlas): EMERGENCY BRAKE ACTIVATED WHEN THE VEHICLE WAS IN MOTION AND TURNING TOWARDS AN OPEN PARKING SPACE. NOTHING WAS IN FRONT OF THE VEHICLE AT THE TIME OF THE EMERGENCY BRAKE DEPLOYING. THIS LEFT THE VEHICLE STUCK IN THE MIDDLE OF PARKING LANE AND COULD HAVE BEEN HIT BY CROSS TRAFFIC.

- NHTSA Complaint No. 11361207, September 24, 2019 (2019 Atlas): MULTIPLE TIMES THE SUV WILL AUTOMATICALLY BREAK WITH THE PARKING BREAK. IT HAS HAPPENED WILL TRYING TO TAKE OFF FROM A LIGHT. AND WHILE DRIVING. CITY STREET

- NHTSA Complaint No. 11406294, February 4, 2021 (2019 Atlas): THE REAR WINDOW ROLLS DOWN BY ITSELF WITH NOBODY TOUCHING ANY OF THE BUTTONS. THE LIGHT POPS UP ON THE DASH AND SAYS FAULTY ELECTRICAL. THE VEHICLE WILL SUDDENLY STOP IN THE MIDDLE OF DRIVING. THE EMERGENCY BREAK APPLIES. THE EMERGENCY BRAKE LIGHT COMES ON. CHECK ENGINE LIGHT ILLUMINATES. UNABLE TO SAFELY DRIVE AS THE VEHICLE JUST STOPS WITHOUT WARNING. VEHICLE IN MOTION ON THE STREET AND ON THE HIGHWAY OCCURRED SEVERAL TIMES

290.    Since then, countless Vehicle owners have explained online that they had taken their Vehicles to their dealers in response to the wiring harness problems:

- NHTSA Complaint No. 11451669, February 12, 2022 (2019 Atlas): On Jan. 12th 2022 my wife and I were riding in our 2019 Volks Wagon Atlas in route to a doctors appointment and was

slowing for a red light when a warning sounded the drivers side back door window lowered, multiple warning light came on and the most dangerous part was the electric e brake activated causing the vehicle to come to an immediate stop. We were lucky there wasn't any traffic behind us. The vehicle was taken to the Volks Wagon of Reading Pennsylvania, and the service tech stated the vehicle was not safe to drive, and that that they have multiple vehicles with the same problem. We were further informed that the drivers door wiring harness failed and the part is backed ordered. I have been to the volks wagon atlas message board and found this problem is through out the United States if not world wide. Most of the complaints are how scared everyone was when the car stopped in traffic without warning. Volks Wagon is aware of this problem but have not taken the initiative to inform Atlas owners that this problem exist.

291.   The complete warranty repair data regarding the wiring harness repeated failures also put Defendants on notice of the defect.

### 3. Complaints Made Directly to Defendants

292.   Defendants also knew or should have known of the Defect based on the numerous complaints received directly from customers.   The large number of complaints, and the consistency of their descriptions of the system failures, alerted Defendants of the defect.

293.   Only Defendants have access to the full universe of complaints it received regarding the wiring harnesses.   However, upon information and belief, many Vehicle owners who experienced the defect present in the wiring harnesses complained to Defendants.   Customer complaints posted online reflect that Defendants received many such customer complaints directly from Vehicle owners:

88

- NHTSA Complaint No. 11448507, January 23, 2022 (2021 Atlas): "On January 8, 2022 I was driving on a main road about 30 to 35 mph when the vehicle suddenly shook violently and the engine shut off. There was loud beeping and the computer system lit up saying Error: Engine at the same time the emergency brake was activated. There was also a message about a Door Error. Luckily there were no cars around me at the time. I put the car in park and started it again. I was fairly close to home but this happened 3 more times, one time when I was pulling out on a road and traffic was coming toward me. I finally got the car home and since it was the weekend parked it. Monday morning **I contacted VW Road Assistance and they towed it to the dealership for repairs. This is a very serious and dangerous problem with the 2021 VW Atlas. If you were traveling on a major highway going 70 mph and your engine just shut down you could be seriously injured or killed**. Please look into this serious defect in the 2021 VW Atlas."

- NHTSA Complaint No. 11452328, February 16, 2022 (2021 Atlas): "At random times during driving the fault electronic parking brake with turn on and abruptly stop the vehicle making it jerk forward. It will trigger the windows to roll down, and errors will pop up stating lane assist is unavailable with beeping noise. **This puts my family at risk because I was completely scared when the parking brake automatically came on while exiting the highway and an 18-wheeler truck was behind me with my daughter in the car. I had to completely turn my vehicle off and back on to keep going**. When I took my car in on February 1,2022 the Service Manager said that there were multiple vehicles in their possession with the issue. He said it would take a month to get it fixed. **After speaker to a regional supervisor for Volkswagen they did not have a ETA for getting the parts needed to perform the repair, yet I am still paying a mthly payment and insurance on a vehicle I own that's not in my possession**. I have screenshots from my CarNet app with the warning issues that I shared with the manufacturer. There seems to be no sense of urgency to get this repaired or provide a vehicle that is comparable to fit my family size while waiting on the parts for repair."

89

294.   As the above excerpts demonstrate, Vehicle owners have complained to Defendants regarding repeated system failures, and the large number of complaints should have alerted Defendants to the Defect.

### 4.    Complaints Collected by NHTSA

295.   Vehicle manufacturers are required by federal law to maintain close contact with the NHTSA regarding potential safety defects.  By law, manufacturers are required to report information regarding customer complaints and warranty claims to the NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects.  *See generally* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

296.   Automakers have an affirmative legal duty to disclose emerging safety-related defects to the NHTSA under the Early Warning Report requirements.

297.   Vehicle manufacturers, including VW, monitor NHTSA databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects.  Defects that undermine the effectiveness of their Vehicles' safety systems are such safety-related defects. Accordingly, Defendants were aware of the many complaints about wiring harness failures.

298.   A sampling of the complaints posted on the NHTSA database include the following:

- NHTSA Complaint No. 11235116, July 26, 2019
  VEHICLE HAS A FAULTY FRONT FACING CAMERA THAT

HAS OR HAD A DATA ISSUE THAT CAUSES THE VEHICLE TO IMMEDIATELY STOP WITHOUT WARNING AND THE PARKING BRAKE TO ENGAGE. I TOOK THE VEHICLE TO TOM WOOD VOLKSWAGEN WHERE THEY CONFIRMED THE ISSUE, AND SAID IT HAD HAPPENED SOME PLACE ELSE AS WELL. THIS WILL EASILY CAUSE REAR IMPACT CRASHES BECAUSE THE VEHICLE ABRUPTLY STOPS IN THE MIDDLE OF THE ROAD WITHOUT WARNING.

- NHTSA Complaint No. 11246080, August 23, 2019
  THE CAR IS 6 MONTHS OLD. WE HAVE 5 DOCUMENTED CASES OF THE VEHICLE STOPPING/BRAKING ON IT'S OWN FOR NO REASON. THE DEALER AND VW CORPORATE DO NOT HAVE A FIX AND SUGGESTED WE KEEP DRIVING IT TO GET MORE DOCUMENTED OCCURRENCES. THE VEHICLE POSES AN EXTREME SAFETY RISK AT THIS TIME DUE TO FAULTY BRAKING ASSIST MECHANISMS. 2 OF THE 5 OCCURRENCES INVOLVED IT THROWING THE PARKING BRAKE ON BY ITSELF AND THE OTHER 3 WERE DRASTIC SLOW DOWNS WITH NOTHING AROUND. ALL INCIDENTS REPORTS ARE ATTACHED AND ARE EXACTLY WHAT WAS TURNED INTO THE DEALER AND VW CORPORATE.

- NHTSA Complaint No. 11253281, September 4, 2019
  EMERGENCY BRAKE ACTIVATED WHEN THE VEHICLE WAS IN MOTION AND TURNING TOWARDS AN OPEN PARKING SPACE. NOTHING WAS IN FRONT OF THE VEHICLE AT THE TIME OF THE EMERGENCY BRAKE DEPLOYING. THIS LEFT THE VEHICLE STUCK IN THE MIDDLE OF PARKING LANE AND COULD HAVE BEEN HIT BY CROSS TRAFFIC.

- NHTSA Complaint No. 11361207, September 25, 2020
  MULTIPLE TIMES THE SUV WILL AUTOMATICALLY BREAK WITH THE PARKING BREAK. IT HAS HAPPENED WILL TRYING TO TAKE OFF FROM A LIGHT. AND WHILE DRIVING. CITY STREET

- NHTSA Complaint No. 11459018, March 30, 2022
  "My car is showing an airbag error sign off an on and the emergency brake came on during a right turn and nearly caused

91

an accident."

- NHTSA Complaint No. 11386994, January 7, 2021 (2019 Atlas): "THE REAR WINDOW ROLLS DOWN BY ITSELF WITH NOBODY TOUCHING ANY OF THE BUTTONS. THE LIGHT POPS UP ON THE DASH AND SAYS FAULTY ELECTRICAL. THE VEHICLE WAS IN MOTION, IN THE CITY. THE VEHICLE WILL SUDDENLY ATTEMPT TO STOP IN THE MIDDLE OF A DRIVE/MIDDLE OF THE ROAD. ALMOST AS IF THE EMERGENCY BREAK HAS BEEN PULLED, ONLY NOBODY HAS TOUCHED IT. THE EMERGENCY BRAKE LIGHT DOES COME ON. AGAIN, IN MOTION, ON THE HIGHWAY (HAS HAPPENED A FEW TIMES). NOW, THE REMOTE START DOES NOT WORK."

- NHTSA Complaint No. 11463110, April 16, 2022 2020 VW Atlas Cross Sport. "While traveling down the highway (medium speed) the vehicle abruptly threw itself into Park, and E-braked. Thankfully escaped a collision but the outcome could have been much worse. My safety and safety of others was put at risk. And the general trauma from this scary incident has lasted weeks. The abrupt braking continued to happen at low speeds / cruising speed until I could pull over. (The car is not simply braking, it is throwing itself into Park and E-Brake goes on). Also, windows roll up and down without cause, all types of warning lights and errors flash on the dashboard. Upon the dealership's service center's scan of my car's computer, they found it occurred four times. The dealership found the wiring harness was corroded, and they think the car is sensing that a door is open, causing the vehicle to switch to Park and abruptly E-Brake. The vehicle is unsafe to drive but both VW and the dealership have denied me a loaner, and have denied my requests for compensation so I can rent a temporary car - this malfunction has left me with no vehicle for weeks, zero means of transportation, and no future fix in sight."

- NHTSA Complaint No. 11449235, January 28, 2021: "The below are known issues dating back to at least 2020 Atlas models, but this first appeared in our vehicle mid- November 2021; we purchased the car new June 2021. The driver door

contact switch has failed. There are annoyances - the widows randomly roll down, lots of dinging, warning lights, etc. - **but the safety issue is that the emergency brake will come on sometimes when you brake. We have a child and cannot risk suddenly being stopped on a highway. Because of this, the car is undriveable. VW estimates the part will be available in 2023, so there are people driving around with this safety issue because they have no second car and people who are paying a loan on a car they cannot drive**. These issues have been replicated by the dealer. The case has been escalated to VW and there is no sense of urgency. See here for reports of others with the same experiences: https://www.vwatlasforum.com/threads/error-driver-door-contact-switch.6359/"

- NHTSA ID No. 11458685, March 28, 2022
  "The emergency brake just comes on when you're driving, the windows will roll down on their own. The dash beeps at you like the vehicle will blow up. We were advised back in January that it was not safe to drive our vehicle. It has been sitting at the dealership not being fixed. A recall just recently came out for the vehicle, however we have been unable to drive the vehicle for almost 3 months. We still have to make payments on the vehicle and Volkswagen doesn't want to do anything to help with anything. We were informed they would not provide a loaner car and a rental car we had to pay for on our own. This is completely unacceptable. The company needs to be responsible for this and I know we are not the only ones dealing with this. We will never buy another Volkswagen just because of their poor customer support. They truly dont care about their customers and the inconvenience this has caused."

- NHTSA Complaint No. 11443499, December 12, 2021 (2021 Atlas): "Within seconds of starting the vehicle, error codes started appearing on the dashboard and beeping noise stating to park the car and not drive. The back window will roll down on its on and the parking break will engage if it wasn't engaged already. I would turn off the car and it would go away But after a few minutes the car would start beeping and all kinds of lights and error code started appearing again. After getting this error

message and the constant beeping, the emergency brake turns on and the window from behind driver's door lowers like 5 inches from top. At this point, I cannot lower window and I cannot turn off emergency brake. The code started appearing about a week prior to December 8 which was the final straw. It got to a point that while driving, if I took the foot of the gas pedal, the emergency break will engage automatically as I was going 10-15 miles per hr. **Everytime I slowed down and was coming to a stop the car will engage the emergency break.** I had to turn off the car and back on in order to keep going. This almost caused me to be hit multiple times until I was able to get to a safe location and away from the main road. I've read many others complaint similar and I think this should be a recall. It is a safety hazard when the emergency break engages once you slow down and foot is off the break. This particular car was fixed on Nov.5 for a recall related to coupling rods. I was told that the issue now is called a 'driver front door harness' fault which the wires think I'm opening the door while driving so it engages the emergency break. Vehicle is currently at dealership and has been since Dec. 8 with no estimated time of repair due to waiting on parts.vehicle has been in my possession since Jan. 9, 2021

- NHTSA Complaint No. 11461660, April 21, 2022
  "2 - radio randomly displayed "Loading...." 3/5/22 - message displayed about driver door contact switch 3/12/22 - message displayed saying "Fault: Electronic parking brake". Another message was displayed saying "Attention: The engine is running". About 8 hours later, I was approaching a red light, when I put on the brake to slow down the parking brake self engaged causing me to come to a sudden stop. The car behind me almost rear-ended me. Twenty minutes later I tried to roll down the driver's window. It would not roll down, then the back driver's window started rolling down, then the front driver's window rolled down, then both windows was going up and down."

- NHTSA Complaint No. 11452328, February 16, 2022 (2021 Atlas): "At random times during driving the fault electronic parking brake with turn on and abruptly stop the vehicle making it jerk forward. It will trigger the windows to roll down, and

errors will pop up stating lane assist is unavailable with beeping noise. **This puts my family at risk because I was completely scared when the parking brake automatically came on while exiting the highway and an 18-wheeler truck was behind me with my daughter in the car. I had to completely turn my vehicle off and back on to keep going**. When I took my car in on February 1,2022 the Service Manager said that there were multiple vehicles in their possession with the issue. He said it would take a month to get it fixed. After speaker to a regional supervisor for Volkswagen they did not have a ETA for getting the parts needed to perform the repair, yet I am still paying a mthly payment and insurance on a vehicle I own that's not in my possession. I have screenshots from my CarNet app with the warning issues that I shared with the manufacturer. There seems to be no sense of urgency to get this repaired or provide a vehicle that is comparable to fit my family size while waiting on the parts for repair."

- NHTSA Complaint No. 11460757, April 14, 2022 (2021 Atlas) "The remedy to my recall is not being performed within a reasonable time. I was in the road with my one year old and I was scared to get on the highway I was afraid someone would rear end us as the vehicle stops and turns on the check engine light and a warning light on my dash. I was driving and when I was coming to a stop the vehicle stops on it on and doesn't give the person behind me enough time to break. I would honestly see if there is something that can been done as o don't feel safe in my vehicle but I can't afford to rent a car in the mean time it is my only transportation my son has a doctors appt @ 130 today and I'm afraid for his life and to drive there. I would really appreciate any help that you can offer."

- NHTSA Complaint No. 11455355, March 5, 2022 (2019 Atlas): "In Jan 2022, the air bag system error light lit up at start-up and remained lit. A first-available dealer appointment was made for 1/28, two weeks away. During those two weeks, the car started to issue a burst of random alerts during cold startup - driver door contact switch failure, cruise control (ACC) failure, start/stop system failure, and the rear driver side window would roll down several inches. Shutting off and restarting the car solved these

95

alerts. The car was inspected on Jan 28; the dealer confirmed a faulty wiring harness in the driver side door. They also confirmed the random alerts were the same cause. The dealer stated that the driver side air bag was nonfunctional, but the rest of the air bag system was OK. A replacement part was ordered with an estimated delivery of 2-3 weeks. As such, we chose to keep driving the car. Over the ensuing weeks, the random alert sequence got more frequent and started to show an electronic parking brake alert and engage the parking brake at startup. It then began happening on later starts when the car was fully warmed and would resume after the car was shut off and restarted. Finally, the alerts started to happen while moving, and instead of just a single burst, became a continuing sequence. The alerts are a rapid- fire volley of warning dings/dongs and accompanying messages in front of the driver. At the same time, the rear driver-side window is moving and the door contact switch is clicking randomly in the driver's left ear. It is a startling volley, which combined with the other weird sounds, is a disorienting and panic-inducing 360- degree assault on the senses. After no word from the dealer. I called on Mar 4 and was told the part was on a nationwide backorde, with no ETA. **I did some research and found numerous reports of the problem getting worse over time and the parking brake engaging while moving. As our experience matches the trend, I feel the car is no longer safe and have parked it until it is repaired.”**

- NHTSA Complaint No. 11442273, December 1, 2021 (2021 Atlas): “Door Sensor causing car to throw various codes. Windows rolling down by themselves, parking brake engaging by itself. VW knows about the problem and should be a recall. **Parts is on back order with time frame.”**


- NHTSA Complaint No. 11459763, April 5, 2022
“My emergency brake engaged while I was slowly entering an intersection. Almost caused an accident - cars behind me had to slam on their brakes. I believe this issue is part of recall 97GF which only lists air bags as a result of faulty wiring in door harness. The e brakes engaging while driving needs to be added as another safety risk - it was a frightening experience for me and

96

my kids."

- NHTSA Complaint No. 11462998, May 2, 2022
  "Since purchasing this car, i have had problems with the parking
  brake automatically turning on when driving and at every stop;
  the car doors in the front do not lock/unlock; causing a concern
  for emergency with two kids in the car. The sunroof malfunctions
  along with the windows working on their own, going up and
  down and the sunroof not closing. The electrical front panels
  malfunction and cause the break system to start on its own, the
  screens turn black and am unable to use the front power screen.
  The doors lock and unlock by themselves from the inside and
  outside, not able to use the buttons on the doors to lock/unlock.
  The windows constantly open and close by themselves, again
  causing safety harm for the children in the car. When the car
  comes to a stop sign and brakes, it will either shut off or the
  parking/emergency brake will engage automatically. I have
  called 2 branches of dealerships through vw and since its a
  recalled car with no remedy, they will not let me schedule
  appointments to fix as they have no loaners available long term.
  I am very scared driving this car with two small children and the
  airbags recalls, brake problems and electrical malfunctioning.
  The VW customer care did not help me at all with the claim, and
  more concerns are happening weekly. With no remedy for the
  recall, vw dealerships have given me no trade in options or ability
  to put into the service department; they took name and number
  and said they would call when remedy is available."

- NHTSA Complaint No. 11448453, January 22, 2022 (2020
  Atlas): "In the beginning of November 2021 with 7680 miles an
  alarm stating Error: Driver door contact switch Fault: Electronic
  parking brake Attention: Engine is running. Error: Start Stop The
  check engine light/EPC lights were on. Windows do not open or
  open about an inch by themselves. This issue occurs most times
  when starting the vehicle. VW was made aware and checked the
  vehicle stating the driver side door harness needs to be replaced
  but there is shipping delays. Over the next few months when
  operating the vehicle under speeds of approximatley 10 to 5
  miles an hour the emergenancy parking break activates and slows
  or completley stops the vehicle while driving. This is a safety

97

issue as a vehicle that suddenly stops while in traffic regardless of speed can be rear ended or cause an accident. VW has claimed that the door harness is at fault and that the parking break activating is because of a faulty door harness. **It has been over 2 months and the door harness has still not been replaced.** I have spoke to mechanics regarding this issue and they stated a parking break activating while the car is in motion is not related to a faulty door harness. I wish to have this complaint investigated and to have my car issue recalled so VW is forced to fix this issue. I have 3 small children who regularly ride in this vehicle. A emergency parking break activiating while the vehicle is in motion is unacceptable. Thank you."

- NHTSA Complaint No. 11460462, April 11, 2022 (2021 Atlas) "Although this is not the first issue with my VW 2021 Atlas, it will be my last. As I was driving down a two lane highway to my daughter's softball practice, the emergency break turned on and my vehicle completely jolted to a stop. By the grace of God, no one was behind us. Prior to this recent incident, the windows started to roll up and down on their own and the "Fault Parking Break" alert will appear on my dash. This occurs randomly, day or night, sunny or rainy, cold or hot. The vehicle has been to the dealership for this issue, but the alert continues. I purchased this vehicle March of 2021, issues did not occur until December and it has gone down hill quickly. Right now, this vehicle is deemed "undrivable" and will be at the dealership. This vehicle is also under the new recall where the airbags do not deploy. There is no fix for this"

- NHTSA Complaint No. 11448985, January 26, 2022: "After 3 months of owning this brand new car, the parking system started to act up. My parking sensors would beep for no reason, windows would roll down and my parking brake would come on when I was driving. I took the car to the dealership and they did an electrical update. Two months later the same issue happened again, as well as my engine light came on because my coolant was low. Again I took it to the dealership where I was told a door harness sensor needed to be replaced and my head gasket needed to be replaced as well. **My car has been in the shop for almost two months as the part is on back order.** Now there is also a

recall for the air conditioner. This is the worst experience with a new car I have ever had. I have initiated the process of trying to get Volkswagen to buy it back. When I spoke to the service manager he told me he has 9 other Atlas's in the shop for the same reason. Customer care has been no help. I will never buy another Volkswagen again."

- NHTSA Complaint No. 11451440, February 10, 2022 (2021 Atlas): "I have a faulty Door harness that causes the vehicle to think they the door is open, when it is not. Because the car thinks the door is open, the E brake engages while driving and a loud beeping ensues. Several sensors also start flashing like check engine, start/stop system failure, check oil, etc. **the part is back ordered with no ETA** and VW don't do a recall because they don't want to be on the hook for all of these cars. A quick Google search will show you that this is a widespread safety issue that is being ignored"

- NHTSA Complaint No. 11452036, February 15, 2022 (2021 Atlas): Starting in November, a series of alarms would go off on the dashboard on the engine, lane assist, collision warnings, etc. As the problem progressed, the windows would go down automatically, and in the most severe instances, the car would engage the emergency park brake while coming to a stop!!! This happened more and more frequently to the point the car became undrivable as you awaited the car engaging the emergency parking brake while coming to a stop!!!! **The car has been at the dealership since 11/22/21 as the door control wiring harness is on backorder**. Someone will get hurt if this goes unrepaired."

- NHTSA Complaint No. 11453528, February 22, 2022 (2021 Atlas): "The component that failed is the Driver Contact Door Switch and the electronic parking brake. My safety and my children's safety and the people behind me are put at risk of an accident if my parking break comes on while driving. **I took it to the dealer on December 27,2021 and they said that it is the driver door wiring harness it controls everything in the car. They said they would order a new harness but it is on back**

**order. I called dealer on Monday Feb 21,2022 and they still don't have the part**, I explained to them that as I was driving the windows automatically rolled down and I got the message contact door switch and parking break faults. They told me to deactivate the start stop system. I explained to them that it was deactivated and I got an oh well. I am worried about driving the vehicle and also teaching my son how to drive on a learners permit which we have put on hold until the problem is solved."

- NHTSA Complaint No. 11453853, February 24, 2022 (2021 Atlas): "Due to a malfunctioning driver door wire harness, multiple errors occur, including a electric parking brake issue. This causes the vehicles parking brake to engage while in coming to a stop but still in motion. This does cause the vehicles abruptly come to a stop. Additionally the wire harness malfunction has caused an issue with the driver side door locking function and driver side windows. Often times the driver side door does not lock when in drive and in motion, as well as trying to lock using the key fob and in park. The driver side windows randomly lower 3-4 inches, when driving as well. I am especially concerned with the parking brake, there have been a few occasions where I have almost been hit from the rear due to the abrupt stop. **I have taken the car in to the dealership and have been told the part is not available and they have multiple vehicles waiting over two months for the part**.

- NHTSA Complaint No. 11454546, February 28, 2022 (2021 Atlas): "According to my local dealership, the microchip in the driver door is malfunctioning. My car incorrectly detects that the driver door is open and puts the parking brake on while the car is running or in drive. Alerts like, 'error: driver door contact switch' pop up. 'Cruise control not available' has also popped up.These alerts did not begin to pop up until the parking brake started being triggered on February 9th when the car was 4.5 months old with 5,000 miles. The driver side window as well as the window behind it will also roll down at times when this happens. To get my car to release the parking brake, I have to turn the car off and open and close the driver door. On average, I have to repeat this process 5 times before the car will detect that the door is closed and disengage the parking brake. My car has incorrectly alerted

me that the driver door was open while I was driving down the highway. **According to the dealership, the part that needs to be fixed is on backorder nationwide and I won't be able to get my car fixed until July. They are also out of loaners because so many people are having this issue. My safety as well as the safety of others in cars around me is at risk as the car will put the parking brake on thinking that the driver side door is open**."

- NHTSA Complaint No. 11455931, March 9, 2022 (2019 Atlas): "Last Saturday, several warning lights appeared on the dashboard, including 'ACC Not Available', 'Error: Driver Door Contact Switch', and 'Fault: Electronic Parking Brake'. While in traffic I slowed to around 15 mph and the emergency brake activated, stopping the car abruptly. This same scenario of slowing and the emergency brake activating happened twice more while driving home. Vehicle was taken to the dealership who advised we were the 16th Atlas that has experienced these problems. **We were told it would be 3-4 months before the parts to fix the vehicle were available.**"

- NHTSA Complaint No. 11449356, January 29, 2022 (2019 Atlas): "My car had an airbag alert show up on Thursday, January 27th. It said Error: Airbag. I contacted the dealership was able to get my car into Glenwood Springs Volkswagen service center on Friday, January 28th. At 4:30 pm I was told there was an issue with the airbag system. According to the Volkswagen employee, this is a known issue and they are surprised Volkswagen has not opened a recall. The service report states: Connected scan tool and found fault B101715 crash sensor for side air bag, drivers side open circuit/short circuit to B+ (passive). They recommended to replace drivers door harness. I was informed the necessary replacement parts were back ordered and would not be replaced for at least 1 month. I believe the earliest date to expect the fix is March 5th. **The local service center has 2 loaner cars that are currently loaned out due to this issue. They cannot provide me a loaner car**. **I called VW care and they are unable to escalate this issue until Thursday, February 3rd. They informed me it was not an active recall and not part of my warranty for them to have to provide me**

**a safe car to drive**.”

- NHTSA Complaint No. 11449937, February 2, 2022 (2021 Atlas): “Driver door wiring harness is faulty and needs replaced. At random times during driving all alerts will go off in car triggering the windows to roll down, the parking brake to engage while the vehicle is moving, turning off adaptive cruise, lane keep assist and many other safety features while using them. I fear for the safety of the passengers in my car and those around me as I am unable to know when the brake will engage. **The dealer has confirmed the need for replacement but does not have the parts to replace. They will not provide a loaner and have no estimate of when parts will be available for repair**. The issue is ongoing and random.”

- NHTSA Complaint No. 11451379, February 10, 2022 (2021 Atlas): “Emergency Brake engages while driving. It has happened multiple times at speeds of 25-70mph. When this happened the warning lights and beeping would start, saying "Fault Electronic Brake", Error: Driver Door Contact Switch”, "Warning, engine is running" windows in the back would also automatically start rolling down and up. It has nearly caused us to get into two high speed accidents with our children in the car with us. **Vehicle is currently at dealership along with others with the same problem, has been there for over 3 weeks as they attempt to get a harness in for it. They are telling people because they are out of loaners that they have to continue to drive the vehicle. THEY are not safe to be on the road at this point**.”

- NHTSA Complaint No. 11452157, February 15, 2022 (2021 Atlas): “There were multiple incidents where the windows would roll down and the error came on state "Driver Side Contact Error", once where the driver side door would not open, I had to crawl out the passenger side, and multiple times when the parking brake would not disengage. All of these issues have been said to be the drivers side harness kit, no rhyme or reason and lights and errors would go off after each incident. The main safety concern caused be this is when i was driving down a hill coming to a red light, i was reducing speed but was not stopped

and the parking brake engaged on its own. I came to a dead stop in the middle of the road, luckily no cars behind me and on a clear road, the dash lit up with multiple errors but all disappeared before i a could write them all down. The dealership where my car current is has stated there is a parts bulletin out on this part causing all these issues with the door harness kit, but no recall. **They also could not guarantee that my parking brake would not engage again while the car was in drive, but did not want to offer me a rental car because Volkswagen doesn't consider it a 'Safety issue'**. I know there are 5 other vehicles at the dealership with the same issue as mine (as of January 10th). This is happening in brand new cars, my car is a 2021 and have not even owned it a year."

- NHTSA Complaint No. 11453080, February 20, 2022 (2021 Atlas): "The driver door contact switch and door harness is faulty, which triggers several errors while driving. The lane keep assist and departure warning does not work when this is happening. Additionally, when braking, the car has several alarms that chime repeatedly, including low coolant, driver door contact switch, electronic parking brake failure, hill start assist, and dynamic cornering lights. The car beeps nonstop while the brakes are applied and the car is at a complete stop. The parking brake also engages when the brakes are applied, making it very unsafe to drive. When I called the dealership to schedule an inspection, they reported that they don't need to inspect the car because they know exactly which part is causing the problem, and ordered me the part. **However the part is on back order, so I've had to drive the car in this condition, as they will not put me in a rental.** The dealership has Informed me there is nothing else they can do, and Volkswagen customer care will not respond to my requests to discuss."

299.    As the preceding complaints demonstrate, Vehicle owners have lodged many complaints with the NHTSA about repeated wiring harness failures which alerted or should have alerted Defendants to the defect.

**5.    Customer Complaints on Internet Forums**

103

300.     In addition to the complaints lodged directly with Defendants, Dealers, and the NHTSA, many Vehicle owners posted complaints regarding repeated wiring harness failures on public online internet forums, which Defendants — like most manufacturers — regularly monitors.  For instance, throughout August 2020, multiple Vehicle owners posted:

- Yesterday I was driving with my family in our 2019 Atlas SEL Premium R-Line when the emergency brake system engaged out of nowhere. I have been having issues for a while with the perimeter sensors alerting when there are no reason to but this is a first, an extremely dangerous first!! I was traveling straight approximately 30 mph with no other vehicles or obstacles around when an alarm sounded and the dash lit up red as the vehicle braked to a screeching halt which lasted a few seconds. I was shocked at what happened and if a vehicle was behind me we were sure to get hit. Additionally if we were on a highway or just traveling at a higher speed on a congested NYC roadway things would have been tragic. I am concerned with my wife driving this vehicle. As I mentioned earlier I have had issues with the perimeter sensors alerting for no reason in the past. In the winter the sensors freeze easily while driving and it causes alert and I have to shut off the lane stay alert. But these issues happen during normal conditions also. Now I am extremely concerned with this braking issue. Has anyone else experienced this and if so what can be done to correct this? Thanks in advance.

- You have to work this through a dealer is the answer. Definately a glitch in the system. I occasionally get the parking sensor to go off when there isn't anything that should set them off but only when travelling slowly. I've never had an issue with the front collision assist. The winter issue is just a fact of life with this kind of thing and I think it's even called out in the manual (icing up etc.). Best to have the dealer look at it, check for errors, and document it. Good luck!

- I've had similar issues... never at high speed but the emergency

104

braking has engaged many times when traveling below 10mph. Its quite annoying and could be dangerous. I too have frequent sensor problems where the car thinks someone is approaching (from various sides). I'm documenting how and when this happens before I take it in to the dealer.

https://www.vwatlasforum.com/threads/sudden-emergency-braking-engaged-while-driving.6013/

301.    On March 15, 2021, another Class Vehicle owner wrote on a VW Atlas-enthusiast website, "I recently started receiving this error for no reason, just within 15 seconds within starting the vehicle while being parked at my driveway or even being stopped at a red light. After getting this error message and the constant beeping, the emergency brake turns on and the window from behind driver's door lowers like 5 inches from top. At this point, I cannot lower window and I cannot turn off emergency brake. So in order to reset, I have to turn off the engine then open behind driver door(where the window is lowered) and when closing it back I turn on engine. This makes the error go away, everything goes back to normal. So ODD but so annoying too. This has happened 3 times in the last 2 weeks. Don't know what triggers this. Anyone with similar issue? https://www.vwatlasforum.com/threads/error-driver-door-contact-switch.6359/ (last visited March 15, 2022).

302.    In response, another Vehicle owner responded on March 30, 2021 that they were having the same issue, the defect "became more frequent until it was happening all the time," and their dealer advised the issue was a faulty wiring

harness, and that as of March 2021 their dealer already had " several other vehicles currently waiting for a replacement part and have repaired several others with the same problem": "I am having the exact same problem with my 2020 Atlas SE that has only 5k on the odometer. You are not alone with this issue as the service department at my dealership informs me that they have several other vehicles currently waiting for a replacement part and have repaired several others with the same problem. They inform me that the cause is a faulty wiring harness from engine compartment to the driver's door. Unfortunately, I fear that your issue will get worse before it gets better. Mine started out as an intermittent problem then became more frequent until it was happening all the time. I took a video of the alerts popping up on the dash to show the service department. My Atlas has now been at the dealership since Feb 23rd with no end in sight due to a nationwide lack of the specific part. I spoke with the service manager and she suggested I call VW Customer Care to try to light a fire into the situation. They are assigning me an advocate. I have been given a new Tiguan to drive but that is not the car that I leased and am currently paying for. I am hoping that VW will make this right and if I don't have my car back repaired in the near future, that they swap out my leased Atlas for a new one. I am also going to make an official report complaint on the NHTSA website." *Id.*

303.    Over the following year, Vehicles owners published more than 120 additional posts stating that they too were experiencing the Defect and were not

provided with replacement parts. In addition to those Vehicle owners who never received a replacement wiring harness, one owner complained on March 3, 2022 that their vehicle continues to suffer from the defect post-repair: "My 2019 Atlas has been in 4 times to replace this same issue. Literally one year ago (feb 2021) They replaced my drivers side wiring harness and had my car for 30 days just to get a part! Everything was great during that year period, but now i'm getting the same exact error. I'm beyond annoyed at this point and i'm very worried about the safety of me and my kids. I may be moving away from VW after this issue." https://www.vwatlasforum.com/threads/error-driver-door-contact-switch.6359/page-6 (last visited March 15, 2022).

### 6. Acknowledgement of the Problem by Defendants' Representatives, Dealers, and Technicians

304.    Defendants' knowledge of the Defect is also shown the fact that Defendants' representatives, dealers, and technicians have admitted to Vehicle owners that repeated wiring harness failure is a well-known and pervasive problem with the Vehicles.  The following is a representative sample of customer complaints reflecting Defendants' knowledge of the defect:

- NHTSA Complaint No. 11451669, February 12, 2022 (2019 Atlas): "On Jan. 12th 2022 my wife and I were riding in our 2019 Volks Wagon Atlas in route to a doctors appointment and was slowing for a red light when a warning sounded the drivers side back door window lowered, multiple warning light came on and the most dangerous part was the electric e brake activated causing the vehicle to come to an immediate stop. We were lucky

there wasn't any traffic behind us. **The vehicle was taken to the Volks Wagon of Reading Pennsylvania, and the service tech stated the vehicle was not safe to drive, and that that they have multiple vehicles with the same problem**. We were further informed that the drivers door wiring harness failed and the part is backed ordered. I have been to the volks wagon atlas message board and found this problem is through out the United States if not world wide. **Most of the complaints are how scared everyone was when the car stopped in traffic without warning**. Volks Wagon is aware of this problem but have not taken the initiative to inform Atlas owners that this problem exist."

- NHTSA Complaint No. 11445277, December 28, 2021 (2021 Atlas): "Check engine light came on, windows were going down 1/8 of the way on their own, parking brake goes on automatically while engine is on while driving and pressing on brake, cannot utilize any controls on driver door. **Dealer checked and it is the door harness that is on backorder. I was told 41 customers ahead of me waiting for same part in Northeast USA**. Car is not safe to drive due to parking brake automatically engaging. VW of America notified and my case was escalated and I have initiated the PA Lemon Law Arbitration process. Issues first appeared 11/8/21. I have been given a smaller loaner vehicle from dealer on 11/9/21 and am still using that."

- NHTSA Complaint No. 11447177, January 12, 2022 (2021 Atlas): "Purchased the car in April 2021. After 230 miles of driving remote start stopped working. VW service center diagnosed faulty soldering on fuel pump and replaced it. In December 2021 both passenger side windows started opening on their own while in park and driving. Shortly started getting error message from proximity sensors, adaptive cruise control and finally brakes with service engine message. Brought to VW service center and got diagnosed with faulty door harness. **Service technician informed me that they had 20+ cars with similar issue and shortage of parts**. Ultimately I was told vehicle is not safe to drive, due to car identifying door as open and shutting off engine mid-driving. Harness replaced, not the trunk is opening in park and windows are still opening by

themselves. Sent the vehicle to service center by tow truck, applied for lemon law replacement and VW corporate. This should be heading to recall to prevent driving accidents. VW corporate is very hard to contact and follow-up is very poor. Other vehicle issues: Low coolant level, faulty door lock on passenger door."

305.    Additionally, the large number and consistency of Vehicle owner complaints describing the Defect as a safety risk demonstrates that the Vehicle owners consider the defect to be material to a reasonable consumer.

306.    Defendants' New Vehicle Limited Warranty requires it to "cover[] any repairs to correct a defect in [the] manufacturer's material or workmanship (i.e., mechanical defects)….".    But as countless consumers have reported, Defendants have been unable to repair these defects despite being given numerous opportunities.  In violation of this express warranty, and as evidenced by the many complaints and repeat wiring harness failures, Defendants merely replace a defective part with another defective part.

- NHTSA Complaint No. 11447177, January 12, 2022 (2021 Atlas): "Purchased the car in April 2021. After 230 miles of driving remote start stopped working. VW service center diagnosed faulty soldering on fuel pump and replaced it. In December 2021 both passenger side windows started opening on their own while in park and driving. Shortly started getting error message from proximity sensors, adaptive cruise control and finally brakes with service engine message. Brought to VW service center and got diagnosed with faulty door harness. Service technician informed me that they had 20+ cars with similar issue and shortage of parts. Ultimately I was told vehicle is not safe to drive, due to car identifying door as open and shutting off engine mid-driving. **Harness replaced, not the trunk is opening in park and windows are still opening by themselves.** Sent the vehicle to service

center by tow truck, applied for lemon law replacement and VW corporate. This should be heading to recall to prevent driving accidents. VW corporate is very hard to contact and follow-up is very poor. Other vehicle issues: Low coolant level, faulty door lock on passenger door."

- NHTSA Complaint No. 11455103, March 3, 2022 (2019 Atlas): "When the car is turned on the Adaptive cruise control is not available, the error code fault is 'driver door contact switch', fault code 'electronic parking brake' appears, the rear drivers side window rolls down about 6 inches, the car beeps and alerts 'the engine is running'. When at a complete stop, the beeping and alert with 'the engine is running' appears and the parking brake appears to turn back on as well. **My car had this issue in Feb 2021 and a part was replaced, but now the problem is back again**. This has been confirmed by the dealership and VW customer care that is a very known issue with Atlas. Unfortunately electronical issues are a huge concern because everything is connected. This is the primary car for me and my children. I have huge concerns of safety with my children riding in the car when it has such serious electrical issue."

- NHTSA Complaint No. 11455650, March 8, 2022 (2019 Atlas): "The driver door wiring harness started lowering windows randomly.**.it was replaced 3/1/22 and now it is bringing up two info driver door contact switch and electronic parking brake..online it is saying this is a safety issue."**

307.    Due to the permanent nature of the common defect in the Vehicles which cause them to fail, even after repeated "repairs," Plaintiffs and the members of the Class have incurred and will continue to incur significant expenses.  All Vehicles suffer from the same defect.

308.    Additionally, because the Vehicle systems may fail at any time, thereby startling the driver and putting the passengers' safety at risk, the defect makes these Vehicles unfit for the use for which they were intended in that they

cannot be relied upon as a safe and reliable means of transport.

## C. Defendants' Warranties and Response to the Defect

309.    Defendants issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that Defendants will "cover[] any repairs to correct a defect in [the] manufacturer's material or workmanship (i.e., mechanical defects)...."

310.    However, Defendants knew, or at least should have known, of the defects at the time of sale or lease of the Vehicles.  Plaintiffs and Class members, however, had no such knowledge.  The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

311.    Despite having more than adequate opportunity to successfully remedy the defect(s) in the Vehicles, Defendants have failed to do so, and in many instances have instead merely replaced defective components with defective components

312.    On November 12, 2021, VW issued a "Technical Tip" No. 97-21-02TT, entitled "Fault code U019900 or U020000 along with Various Warnings." The Technical Tip applies to 2019-2022 Atlas, Atlas Cross Sport, Golf, Golf Wagon, Jetta, Tiguan and Taos VW vehicles. It states "Various warning lights may illuminate, the windows may operate erratically, and several communication faults

are stored," and explained that "A poor connection in/at the door wiring harness may cause fault code U019900 or U020000 to be stored along with many other faults. This may also cause unwanted activation of certain vehicle systems, such as the windows opening/closing by themselves."

313.    Technical Tip No. 97-21-02TT advises VW dealers to attempt a repair by checking certain wire harness connections and then ultimately replacing the defective wiring harness: "Check the wiring harness at the driver side A-pillar connection, both the door and body harness sides, for any pins that have poor terminal tension or pins that are backing out of their housing. While doing these checks, be sure to pay close attention to the Comfort CAN High and Low circuits. If there are any pin issues noted, replace the affected pins and retest. If there are not any pin fit issues, it is recommended to replace the affected door harness and retest."

314.    On January 14, 2022, Defendants issued a revised version of its Technical Tip No. 97- 21-02TT, which expanded the number of fault codes at issue with the Defect. It applies to "Fault code U019900, U020000, B101729, B101715, B103611, B103629 along with Various Warnings."

315.    However, the proposed repair set forth in Technical Tip No. 97-21-02TT is inadequate because (1) Defendants do not have replacement wiring harnesses available and thus when Class Vehicle owners complain to VW and seek a repair they are told they need to wait months or longer for a replacement part; (2)

Vehicle owners are often denied loaner vehicles or are provided inadequate loaner vehicles; and (3) those Vehicles owners who eventually were given a replacement wiring harness report that the repair attempt does not fix the problem.

316.    On March 11, 2022, Defendants finally formally notified the NHTSA that is will be issuing a safety recall on the Vehicles, affecting approximately 222,892 Vehicles.[3]  The recall report attributes the defect to "micromovement" of the wiring harnesses, which can damage the wire terminal surfaces, and cause airbags to deploy later than designed.[4]  "Other symptoms of a sporadic interruption of the affected electrical connection can be: inadvertent rolling down windows, inadvertent park brake engagement at low speeds (below approx. 3km/h or 1.8mph), warning regarding faulty door sensor."[5]

317.    As reported by Defendants to the NHTSA, on June 20, 2022 "owner notification" letters were allegedly mailed to owners of the Vehicles. On June 21, 2022 a "Repair Available" instruction was issued to Defendants' network of dealers.[6] Around this same time, Defendants provided an updated "Corrective Action" to the NHTSA:

> To identify and correct this defect, authorized Volkswagen dealers will check both front doors to determine if diagnostic trouble (fault) code(s)

---

[3] *See* https://static.nhtsa.gov/odi/rcl/2022/RCAK-22V152-8339.pdf

[4] *See* https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V152-3153.pdf

[5] *Id*.

[6] https://static.nhtsa.gov/odi/rcl/2022/RCMN-22V152-6425.pdf (last visited August 4, 2022).

specific to the affected wiring harness are present. If the fault code(s) are present for a front door, the affected wiring harness will be replaced in that door. Harnesses will be modified with a zip tie to secure them, and a stabilizing compound will be applied to the terminal ends of the affected wiring harness connectors.

If fault codes are not found, the existing wiring harness will be modified with a zip tie to secure it and a stabilizing compound will be applied to the terminal ends of the affected wiring harness connector(s).[7]

318.    Prior to the recall, Defendants concealed the fact that the Vehicles contain the defective wiring harnesses.    Despite its knowledge of this defect, Defendants continued to sell Vehicles that contained the defective wiring harnesses. Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

## V.    CHOICE OF LAW ALLEGATIONS

319.    Because this Complaint is brought in New Jersey, New Jersey's choice of law regime governs the state law allegations in this Complaint.

320.    Because Defendant VWGofA is a New Jersey corporation and because the Defendants maintain several offices and facilities in New Jersey, New Jersey has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state.  Application of New Jersey law to Defendants and the claims of all Class members would not be

---

[7] https://static.nhtsa.gov/odi/rcl/2022/RCRIT-22V152-7264.pdf (last visited August 4, 2022).

arbitrary or unfair.

321.    Plaintiffs plead claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims. Alternatively, Plaintiffs pleads state law class claims as indicated below. This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VI.    CLASS ACTION ALLEGATIONS

322.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

323.    Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

> All persons and entities nationwide that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle (the "Nationwide Class")

> All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Arizona (the "Arizona Class")

> All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle  in the State of California (the "California Class")

> All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle  in the State of Colorado (the "Colorado Class")

> All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport

vehicle  in the State of Georgia (the "Georgia Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle  in the State of Illinois (the "Illinois Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle  in the State of Louisiana (the "Louisiana Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Massachusetts (the "Massachusetts Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Maine (the "Maine Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Maryland (the "Maryland Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Missouri (the "Missouri Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of North Carolina (the "North Carolina Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Nebraska (the "Nebraska Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of New Jersey (the "New Jersey Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport

vehicle in the State of New York (the "New York Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Ohio (the "Ohio Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Oregon (the "Oregon Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Pennsylvania (the "Pennsylvania Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of South Carolina (the "South Carolina Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Tennessee (the "Tennessee Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Texas (the "Texas Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Utah (the "Utah Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Virginia (the "Virginia Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Washington (the "Washington Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport

vehicle in the State of West Virginia (the "West Virginia Class")

All persons and entities that purchased or leased a 2019-2023 Volkswagen Atlas or a 2020-2023 Volkswagen Atlas Cross Sport vehicle in the State of Wisconsin (the "Wisconsin Class")

324.    Excluded from the Class are: (1) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

325.    Plaintiffs seek only damages and injunctive relief on behalf of herself and the Class members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

326.    While the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants and governmental officials.  Upon information and belief, Defendants have sold and leased over 222,000 Vehicles nationwide during the relevant time period, all of which have the defective wiring harnesses at issue.  Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

327.    Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a)    whether each Vehicle was sold or leased with defective wiring harnesses;

(b)    whether Defendants' express warranty covers the Defect;

(c)    whether Defendants breached express warranties made to the Class members;

(d)    whether Defendants breached implied warranties made to the Class members;

(e)    whether Defendants replaced defective parts with defective parts;

(f)    whether Defendants knew about the defect and, if so, how long Defendants have known about the Defect;

(g)    whether Defendants concealed the Defect;

(h)    whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(i)    whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value and deprivation of the benefit of the bargain; and

(j)       whether the Class members are entitled to injunctive relief.

328.    Plaintiffs' claims are typical of the claims of Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a Vehicle with the same defective wiring harnesses.

329.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members. Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class members will be fairly and adequately protected.

330.    A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or

contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class members. This defect is common to all Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

331.    A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VII.   LEGAL CLAIMS

### COUNT ONE
### BREACH OF IMPLIED WARRANTY—
### MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. §§ 2301, *et seq.*)

332.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

333.    Plaintiffs bring this claim on behalf of the Nationwide Class.

334.    The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301.

335.     Plaintiffs and members of the Nationwide Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

336.     Defendants are "suppliers" of consumer products to consumers and "warrantors" within the meaning of 15 U.S.C. § 2301.

337.     15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under CAFA.

338.     Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

339.     Defendants made written and implied warranties regarding the Vehicles to Plaintiffs and Class members within the meaning of 15 U.S.C. § 2301. Defendants provided Plaintiffs and other Nationwide Class members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

340.     Defendants breached the implied warranty of merchantability because the Vehicles were not fit for the ordinary purpose for which such goods are used.  As described throughout the First Amended Complaint, the Vehicles contain defects which render them unsafe, inconvenient, and imperfect such that Plaintiffs

and Nationwide Class members would not have purchased the Vehicles had they known of the defects.

341.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

342.    Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

343.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Nationwide Class members in connection with the commencement and prosecution of this action.

344.    Further, Plaintiffs and the Nationwide Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendants' violation of its written and/or implied warranties.

**COUNT TWO**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A. § 56:8-1, ET SEQ.)**

345.     Plaintiff Tashia Clendaniel ("Plaintiff" for purposes of the Nationwide Class Counts and the New Jersey Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

346.     This claim is brought by Plaintiffs on behalf of the Nationwide Class against VWGofA and on behalf of the New Jersey Class against VWAG and VWGofA Chattanooga.

347.     Plaintiff and Class members are "persons" under the New Jersey Consumer Fraud Act ("CFA").

348.     At all relevant times material hereto, Defendants conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

349.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

350.     Defendants' practices violated the CFA for, inter alia, one or more of the following reasons:

(a)  Defendants concealed from Plaintiff and the Class the material fact that the wiring harnesses in the Vehicles were defective.

(b)  Defendants engaged in unconscionable commercial practices in failing to disclose material information discussed above about the Vehicles.

351.     Defendants consciously omitted or failed to disclose material facts

from Plaintiff and the Class with respect to the Defect.

352.    Defendants' unconscionable conduct described herein included the omission and concealment of material facts concerning the Defect.

353.    Defendants intended that Plaintiff and the Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the Class would purchase and/or lease Vehicles.

354.    Had Defendants disclosed all material information regarding the Defect to Plaintiff and the Class, they would not have purchased and/or leased the Vehicles, or would have paid less.

355.    The foregoing acts, omissions and practices proximately caused Plaintiff and the Class to suffer an ascertainable loss in the form of, inter alia, diminution of value, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

356.    In the course of its business, Defendants concealed the defects in the Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with the intent that others rely upon such concealment, in connection with the sale of the Vehicles.

357.    Defendants knew that the wiring harnesses in the Vehicles were

defective, would fail without warning, and were not suitable for their intended use. Defendants were previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities. Defendants nevertheless failed to warn Plaintiffs and the other Class members about these defects despite having a duty to do so.

358.    By failing to disclose and by actively concealing the defects in Plaintiff's and the other Class members' Vehicles, which it marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the CFA.

359.    In the course of Defendants' business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff's and the other Class members' Vehicles.

360.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class members, about the true safety and reliability of their vehicles.

361.    Defendants intentionally and knowingly misrepresented material facts regarding the Vehicles with the intent to mislead Plaintiff and the Class members.

362.    Defendants knew or should have known that its conduct violated the

126

CFA.

363.    As alleged above, Defendants made material statements about the safety and reliability of the Vehicles and the Volkswagen brand that were either false or misleading.

364.    Defendants owed Plaintiff a duty to disclose the true safety and reliability of the Vehicles, because Defendants:

(a)  Possessed exclusive knowledge about the defects in the Vehicles;

(b)  Intentionally concealed the foregoing from Plaintiff and the Class members; and/or

(c)  Made incomplete representations about the safety and reliability of the Vehicles.

365.    Because Defendants fraudulently concealed the defects in the Vehicles, Vehicle owners were deprived of the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they were free from defects.  Had Vehicle owners been aware of the defects in their vehicles, they would either not have bought their Vehicles or would have paid less for them.

366.    Vehicle owners were also harmed by Defendants' unfair and deceptive trade practices since their Vehicles were worth less as the result of Defendants' concealment of, and failure to remedy, the defects.  This diminished

value is directly attributed to Defendants' dishonesty and omissions with respect to the quality and safety of the Vehicles.

367.    Defendants' concealment of the defects in the Vehicles was material to Plaintiff and the Class members.

368.    Plaintiff suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose the defects in their vehicles.

369.    As a direct and proximate result of Defendants' violations of the CFA, Plaintiff has suffered injury-in-fact and/or actual damage, as alleged above.

370.    Plaintiff seeks punitive damages against Defendants because Defendants' conduct was egregious and unconscionable.  Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members.

371.    Because Defendants' unconscionable conduct caused injury to Plaintiff and Class members, Plaintiff and the Class members seek recovery of actual damages including diminution of value, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

**COUNT THREE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.J. STAT. ANN. § 12-314)**

372.    Plaintiff incorporates by reference all preceding allegations as though

fully set forth herein.

373.    Plaintiff brings this claim on behalf of the Nationwide Class against VWGofA and on behalf of the New Jersey Class against VWAG and VWGofA Chattanooga.

374.    Defendants were merchants with respect to motor vehicles.

375.    A warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff and Class members purchased or leased their Vehicles from Defendants.

376.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are defective in that the defects in the Vehicles' wiring harnesses render them unsafe, inconvenient, and imperfect such that Plaintiffs and the Class members would not have purchased or leased the Vehicles had they known of the defects.

377.    Defendants knew about the Defects at the time of purchase, allowing them to cure their breach of warranty if they chose.

378.    Defendants were provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

379.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT FOUR
## VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
## (ARIZ. REV. STAT. § 44-1521 ET SEQ.)

380.    Plaintiff Lisa Bultman ("Plaintiff" for purposes of all Arizona Class counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

381.    Plaintiff brings this claim on behalf of the Arizona Class.

382.    The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A). VW concealed and failed to disclose the Defect. VW had an ongoing duty to Plaintiff and the Arizona Class to refrain from unfair and deceptive practices under the Arizona CFA in the course of its business

383. VW is a "person" within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(6). Each Vehicle at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

384. VW's conduct, as set forth above, occurred in the conduct of trade or commerce. In the course of its business, VW concealed and suppressed material facts concerning the Vehicles.

385. The facts concealed and omitted by VW from Plaintiff and the other Arizona Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the class vehicles or pay a lower price. Had Plaintiff and the other Arizona Class members known of the true facts at the time they purchased or leased their Vehicles, they would not have purchased or leased those Vehicles, or would have paid substantially less for the Vehicles than they did.

386. Pursuant to the Arizona CFA, Plaintiff seeks monetary relief against VW in an amount to be determined at trial. Plaintiff also seeks punitive damages because VW engaged in aggravated and outrageous conduct with an evil mind.

387. Plaintiff also seeks an order enjoining VW's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT FIVE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (ARIZ. REV. STAT. § 47-2314)

388.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

389.     Plaintiff brings this Count on behalf of the Arizona Class.

390.     VW is and was at all relevant times a merchant with respect to motor vehicles under Ariz. Rev. Stat. § 47-2014.

391.     A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Ariz. Rev. Stat. § 47-2314. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Class Vehicles contain a Defect that renders the Vehicles unsafe to drive and VW has no repair available.

392.     VW was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and the Class.

393.     As a direct and proximate result of VW's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**COUNT SIX
VIOLATIONS OF THE CALIFORNIA CONSUMER
LEGAL REMEDIES ACT
(CAL. CIV. CODE § 1750, ET SEQ.)**

394.    Plaintiffs Michael McKarry and David Wabaken ("Plaintiffs" for purposes of all California Class counts) incorporate by reference all paragraphs as though fully set forth herein.

395.    Plaintiffs bring this claim on behalf of the California Class.

396.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

397.    The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

398.    Plaintiffs and the other California Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other California Class members, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

399.    As alleged herein, Defendants made misleading omissions concerning the benefits, performance, and safety of the class Vehicles, including the wiring harness defect.

400.    In purchasing or leasing the class Vehicles, Plaintiffs and the other California Class members were deceived by Defendants' failure to disclose its knowledge of the defect in its wiring harnesses.

401.    Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA

133

provisions:

a.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

b.    Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

c.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

d.    Cal Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

402.    Defendants intentionally and knowingly omitted material facts regarding the Vehicles, specifically regarding the wiring harness defect, with an intent to mislead Plaintiffs and the other California Class members.

403.    In purchasing or leasing the Vehicles, Plaintiffs and the other California Class members were deceived by Defendants' failure to disclose its knowledge of the defect in its wiring harnesses.

404.    Plaintiffs and the other California Class members had no way of knowing Defendants' representations were false, misleading, and incomplete or knowing the true nature of the wiring harnesses. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect with its wiring harnesses.

405.    Plaintiffs and the other California Class members did not, and could not, unravel Defendants' deception on their own.

406.    Defendants knew or should have known its conduct violated the CLRA.

407.    Defendants owed Plaintiffs and the other California Class members a duty to disclose the truth about its faulty wiring harness because the defect created a safety hazard and Defendants:

a.     Possessed exclusive knowledge of the defect in the wiring harnesses;

b.     Intentionally concealed the foregoing from Plaintiff and the other California Class members; and/or

c.     Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the wiring harnesses were defective

408.    Defendants had a duty to disclose that the wiring harnesses in the Vehicles were fundamentally flawed as described herein, because the defect created a safety hazard, and Plaintiffs and the other California Class members relied on Defendants' material omissions regarding the features of the Vehicles and wiring harnesses.

409.    Defendants' conduct proximately caused injuries to Plaintiffs and the other California Class members who purchased or leased the Vehicles and suffered

harm as alleged herein.

410.    Plaintiffs and the other California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff and the other California Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

411.    Defendants' violations cause continuing injuries to Plaintiffs and the other California Class members. Defendants' unlawful acts and practices complained of herein affect the public interest.

412.    Defendants knew of the defective wiring harnesses, and that the Vehicles were materially compromised by such defects.

413.    The facts concealed and omitted by Defendants from Plaintiffs and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a Vehicle or pay a lower price. Had Plaintiffs and the other California Class members known about the defective nature of the Vehicles, they would not have purchased or leased the Vehicles or would not have paid the prices they paid.

414.    Plaintiffs' and the other California Class members' injuries were proximately caused by Defendants' unlawful and deceptive business practices.

415.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks an order

enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the defect in the wiring harnesses.

416.    Plaintiff sent out a notice letter on April 22, 2022.

417.    Because Defendants failed to rectify its conduct within 30 days, Plaintiff requests the following forms of relief pursuant to Cal. Civ. Code § 1782 of the CLRA: Actual damages; Restitution of money to Plaintiff and the California Class members, and the general public; Punitive damages; An additional award of up to $5,000 to any Class member who is a "senior citizen"; Attorneys' fees and costs; and Other relief that this Court deems proper.

## COUNT SEVEN
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, ET SEQ.)

418.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

419.    Plaintiffs bring this claim on behalf of the California Class.

420.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

421.    Defendants' conduct, as described herein, was and is in violation of the UCL.

137

422.    Defendants' conduct violates the UCL in at least the following ways: By failing to disclose that the wiring harnesses in the Vehicles were defective; By selling and leasing Vehicles that suffer from such defects without fixing the defect pursuant to the warranty; By knowingly and intentionally concealing from Plaintiffs and the other California Class members that the wiring harnesses were defective; By marketing Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the defect related to the wiring harnesses; and By violating other California laws, including California consumer protection laws.

423.    Defendants intentionally and knowingly omitted material facts regarding the Vehicles with intent to mislead Plaintiffs and the other California Class members.

424.    In purchasing or leasing the Vehicles, Plaintiffs and the other California Class members were deceived by Defendants' failure to disclose the defect related to the wiring harnesses.

425.    Plaintiffs and the other California Class members reasonably relied upon Defendants' false misrepresentations and omissions. They had no way of knowing that Defendants' representations were false, misleading, and incomplete. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect with its wiring harnesses. Plaintiffs and the other California Class members did not, and could not, unravel Defendants' deception on

138

their own.

426.     Defendants knew or should have known that its conduct violated the UCL.

427.     Defendants owed Plaintiffs and the other California Class members a duty to disclose the truth about its wiring harnesses because the defect created a safety hazard and Defendants: Possessed exclusive knowledge of the defect in the wiring harnesses; Intentionally concealed the foregoing from Plaintiffs and the other California Class members; and/or made incomplete representations by failing to warn the public or to publicly admit that the wiring harnesses were defective.

428.     Defendants had a duty to disclose that the wiring harnesses in the Vehicles were fundamentally flawed as described herein, because Plaintiffs and the other California Class members relied on Defendants' material and incomplete representations and omissions.

429.     Defendants' conduct proximately caused injuries to Plaintiffs and the other California Class members that purchased or leased the Vehicles and suffered harm as alleged herein.

430.     Plaintiffs and the other California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other California Class members incurred costs, including overpaying for their Vehicles that have suffered a

diminution in value.

431.    Defendants' violations cause continuing injuries to Plaintiffs and the other California Class members. Defendants' unlawful acts and practices complained of herein affect the public interest.

432.    Defendants' omissions alleged herein caused Plaintiffs and the other California Class members to make their purchases of their Vehicles. Absent those omissions, Plaintiffs and the other California Class members would not have purchased or leased the Vehicles, would not have purchased or leased the Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain defective wiring harnesses that failed to live up to industry standards.

433.    Accordingly, Plaintiffs and the other California Class members have suffered an injury-in-fact, including lost money or property, as a result of Defendants' omissions.

434.    Plaintiffs requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and California Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

**COUNT EIGHT**
**FRAUD BY CONCEALMENT**

**(BASED ON CALIFORNIA LAW)**

435.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

436.    Plaintiffs bring this claim on behalf of the California Class.

437.    Defendants intentionally concealed that its Vehicles' wiring harnesses are defective.

438.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles they were selling had no significant defects, that they contained functional safety features, were reliable, and would perform and operate properly.

439.    Defendants knew about the defect in the wiring harness when these representations were made.

440.    The Vehicles purchased by Plaintiffs and the other California Class members contained defective wiring harnesses.

441.    Defendants had a duty to disclose that the wiring harnesses contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiffs and the other California Class members relied on Defendants' material representations.

442.    As alleged herein, at all relevant times, Defendants have held out the

Vehicles to be free from defects such as the defect related to the wiring harnesses. Defendants touted and continue to tout the many benefits and advantages of the Vehicles, but nonetheless failed to disclose important facts related to the defect. This made Defendants' other disclosures about the Vehicles deceptive.

443.    The truth about the defective wiring harnesses was known only to Defendants; Plaintiffs and the other California Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

444.    Plaintiffs and the other California Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Vehicles' wiring harnesses.

445.    Defendants' false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

446.    Defendants had a duty to disclose the Defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts,

and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

447.    Defendants also had a duty to disclose because they made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that the wiring harnesses had a fundamental defect that would affect the safety, quality, and performance of the Vehicles.

448.    Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the wiring harnesses. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and Class members.

449.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiffs and Class members by concealing material information regarding the defect in the wiring harness.

450.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and

Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

451.    Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they leased or owned Vehicles that are diminished in value as a result of Defendants' concealment of the true quality of those Vehicles' wiring harnesses. Had Plaintiffs and Class members been aware of the defect in the wiring harnesses installed in the Vehicles, and the Company's disregard for the truth, Plaintiffs and Class members who purchased or leased a Vehicle would have paid less for it or would not have purchased it at all.

452.    The value of Plaintiffs' and Class members' Vehicles has diminished as a result of Defendants' fraudulent concealment of the defective wiring harnesses of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

453.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

454.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Defendants made to them, in order to

enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT NINE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

455.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

456.    Plaintiffs bring this claim on behalf of the California Class.

457.    Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2104.

458.    A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

459.    Defendants marketed the Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase the Vehicles.

460.    Plaintiffs and the other California Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the

Vehicles.

461.    Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

462.    Because of the defect in the wiring harnesses, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

463.    Defendants knew about the defect in the wiring harnesses, allowing Defendants to cure their breach of its warranty if they chose.

464.    Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

465.    Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the other California Class members. Among other things, Plaintiffs and the other California Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other California Class members, and Defendants knew of the Defect at the time of sale.

466.    Plaintiffs and the other California Class members have complied with

all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

467.    Accordingly, Defendants are liable to Plaintiffs and the other California Class members for damages in an amount to be proven at trial.

**COUNT TEN**
**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**
**(COLO. REV. STAT. § 6-1-101 et seq.)**

468.    Plaintiff Mohammed Hassan ("Plaintiff" for purposes of all Colorado Class claims) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

469.    This claim is brought on behalf of the Colorado Class.

470.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-1-105(1)(b), (e). Deceptive practices prohibited by the CCPA include "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to

147

disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

471.    Volkswagen is a "person" under Colo. Rev. Stat. § 6-1-102(6).

472.    Plaintiff and the Colorado Class members are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a).

473.    Volkswagen's conduct, as set forth above, occurred in the conduct of trade or commerce.

474.    In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

475.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

476.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not aware of this defect prior to purchase or lease.

477.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

478.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

479.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

480.    Volkswagen knew or should have known that its conduct violated this statute.

481.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth regarding the Defect because the defect affects the safety of the Vehicles and/or because Volkswagen: Possessed superior/exclusive knowledge of the design of the

149

Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or Intentionally concealed the Defect from Plaintiff and the Class.

482.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

483.    Plaintiff and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

484.    Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

485.    Because Volkswagen fraudulently concealed the Defect a raft of negative publicity resulted once the defects finally began to be disclosed.

486.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff seeks monetary relief

against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff and Class member.

487.    Plaintiff also seeks punitive damages because Volkswagen engaged in aggravated and outrageous conduct.

488.    Plaintiff also seeks an order enjoining Volkswagen's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the CCPA.

## COUNT ELEVEN
## BREACH OF IMPLIED WARRANTY
## (BASED ON COLORADO LAW)

489.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

490.    Plaintiff brings this claim on behalf of the Colorado Class.

491.    Volkswagen is and was at all relevant times a merchant with respect to motor vehicles.

492.    Under Colo. Rev. Stat. § 4-2-314, a warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased his Vehicle from Volkswagen.

493.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

151

used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harness rendering certain crucial safety and other functions inoperative such that Plaintiff and Class Members would not have purchased the Vehicles had they known of the defects.

494.    Volkswagen knew about the Defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

495.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

496.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Colorado Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT TWELVE
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## (GA. CODE ANN. § 10-1-390 ET SEQ.)

497.    Plaintiff Christina Merrill ("Plaintiff," for purposes of all Georgia Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

498.    Plaintiff brings this claim on behalf of the Georgia Class.

499.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

500.    Plaintiff and Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

501.    Defendants engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

502.    Defendants violated the Georgia FBPA by misrepresenting and concealing and failing to disclose the wiring harness defect. Defendants had an ongoing duty to Plaintiff and the Georgia Class to refrain from unfair and deceptive practices under the Georgia FBPA in the course of its business.

503.    Plaintiff and the Georgia Class suffered ascertainable loss and actual damages as a direct and proximate result of VW's concealments, misrepresentations, and/or failure to disclose material information.

504.    Plaintiff and the Georgia Class are entitled to recover damages and

exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a).

505.    On May 6, 2022, Plaintiff's counsel provided Defendants with a written demand for relief pursuant to Ga. Code Ann. § 10-1-399(b).

506.    Plaintiff also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per GA Code Ann. § 10-1-399

## COUNT THIRTEEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (GA. CODE. ANN. §§ 11-2-314 AND 11-2A-212)

507.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

508.    Plaintiff brings this claim on behalf of the Georgia Class.

509.    VW was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

510.    The Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

511.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

512.    These Vehicles, when sold and at all times thereafter, were not in

merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles contain a Defect that renders them unsafe and unfit such that Plaintiff and Georgia Class Members would not have purchased the Vehicles had they known of the defect.

513.    VW knew about the Defect at the time of Plaintiff's purchase, allowing it to cure its breach of warranty if it so chose.

514.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Georgia Class Members and from dealers and other repair facilities.

515.    As a direct and proximate result of VW's breach of the implied warranty of merchantability, Plaintiff and the other Georgia Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT FOURTEEN
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT
## (815 ILCS 505/1, ET SEQ. AND 720 ILCS 295/1A)

516.    Plaintiffs Eric Levine and Patrick and Marcia Donahue ("Plaintiffs" for purposes of all Illinois Class Counts) incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

517.    Plaintiffs bring this claim on behalf of the Illinois Class.

518.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

519.    Defendants are "persons" as that term is defined in 815 ILCS 505/1(c).

520.    Plaintiffs and Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

521.    VW violated the Illinois CFA by concealing and failing to disclose the Defect. VW had an ongoing duty to Plaintiffs and the Illinois Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of its business.

522.    Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of VW's concealments, misrepresentations, and/or failure to disclose material information.

523.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against Defendants in the amounts of actual damages as well as punitive damages

because Defendants acted with fraud and/or malice and/or was grossly negligent.

524.    Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, et seq.

## COUNT FIFTEEN
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (810 ILCS §§ 5/2-314 AND 5/2A-212)

525.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

526.    Plaintiffs bring this claim on behalf of the Illinois Class.

527.    VW was at all relevant times a "merchant" with respect to motor vehicles under 810 ILCS §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

528.    The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS §§ 5/2-105(1) and 5/2A-103(1)(h).

529.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 ILCS §§ 28-2-314 and 28-12-212.

530.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect renders them unsafe,

inconvenient, and imperfect such that Plaintiffs and the other Illinois Class members would not have purchased the Vehicles had they known of the defect.

531.    VW knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

532.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

533.    As a direct and proximate result of VW's breach of the implied warranty of merchantability, Plaintiffs and the other Illinois Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT SIXTEEN
## VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (La. Rev. Stat. § 51:1401 et seq.)

534.    Plaintiff Debbi Brown ("Plaintiff" for purposes of all Louisiana Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

535.    This claim is brought on behalf of the Louisiana Class.

536.    The Louisiana Unfair Trade Practices and Consumer Protection Law (Louisiana CPL) makes unlawful "deceptive acts or practices in the conduct of any

trade or commerce." La. Rev. Stat. § 51:1405(A). Volkswagen participated in misleading, false, or deceptive acts that violated the Louisiana CPL including failing to disclose the Defect.

537.   Volkswagen, Plaintiff, and the Class are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

538.   Plaintiff and the Class are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

539.   Volkswagen engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(9).

540.   In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or

omission of any material fact with the intent that a consumer rely on the same in connection therewith.

541.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

542.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not aware of this defect prior to purchase or lease.

543.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

544.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

545.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

546.    Volkswagen knew or should have known that its conduct violated this statute.

547.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth

regarding the Defect because the defect affects the safety of the vehicles and/or because Volkswagen: Possessed superior/exclusive knowledge of the design of the Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or Intentionally concealed the Defect from Plaintiff and the Class.

548.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their Vehicles would be defective and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

549.    Plaintiffs and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

550.    Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

551.    Vehicle owners were also harmed by Volkswagen's unfair and

deceptive trade practices since their vehicles were worth less as the result of Volkswagen's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

552.    Volkswagen's concealment of the Defect in Plaintiff's vehicle was material to Plaintiff.

553.    Plaintiff suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the Defect in her vehicle.

554.    As a direct and proximate result of Volkswagen's violations of the Louisiana CPL, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Volkswagen's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their vehicles.

555.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiff and the Class seek to recover actual damages in an amount to be determined at trial; treble damages for Volkswagen's knowing violations of the Louisiana CPL; an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

556.    Plaintiff and the Class also seek punitive damages because Volkswagen engaged in aggravated and outrageous conduct.

557.    A copy of this complaint will be mailed to the Attorney General of the State of Louisiana in accordance with La. Rev. Stat. § 51:1409.[8]

## COUNT SEVENTEEN
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (BASED ON LOUISIANA LAW)

558.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

559.    Plaintiff brings this claim on behalf of the Louisiana Class.

560.    Volkswagen manufactured and distributed Vehicles throughout the United States for sale to Plaintiff and Class Members.

561.    Volkswagen impliedly warranted to Plaintiff and the Class that their vehicles were free of defects and were merchantable and fit for their ordinary purpose.

562.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harness rendering certain crucial safety and other functions inoperative such that Plaintiff and Class Members would not have purchased the Vehicles had they known of the defects.

---

[8] Plaintiffs will also provide copies of this Complaint to the Attorneys General for the states of Illinois, Missouri, New Jersey, Texas and Utah.

563.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

564.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Louisiana Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT EIGHTEEN**
**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
**(5 M.R.S.A, § 205-A ET SEQ.)**

565.    Plaintiff Carol Radice ("Plaintiff" for purposes of all Maine Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

566.    Plaintiff brings this claim on behalf of the Maine Class.

567.    Defendants are "persons" as defined by 5 M.R.S.A. § 206(2).

568.    Defendants' conduct as alleged herein related was in the course of "trade and commerce" as defined by 5 M.R.S.A. § 206(3).

569.    Plaintiff and Maine Class members purchased goods and/or services for personal, family, and/or household purposes.

570.    Plaintiff sent a demand for relief on behalf of the Maine Class pursuant to 5 M.R.S.A. § 213(1-A) on April 22, 2022.

571.    By concealing and failing to disclose the Defect, VW violated the Maine Unfair Trade Practices Act ("Maine UTPA"). VW had an ongoing duty to Plaintiff and the other Maine Class members to refrain from unfair and deceptive practices under the Maine UTPA in the course of its business

572.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the reliability and safety of the Vehicles and wiring harnesses.

573.    Had Defendants disclosed to Plaintiff and Class members of the defective nature of the wiring harnesses, Plaintiff and the Maine Class members would not have purchased the Vehicles or would have paid less for them..

574.    Plaintiffs and the Maine Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

575.    As a direct and proximate result of Defendants' unfair and deceptive acts and conduct, Plaintiffs and Maine Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

576.    Plaintiffs and the Maine Class members seek all monetary and nonmonetary relief allowed by law, including damages or restitution, injunctive and other equitable relief, and attorneys' fees and costs.

## COUNT NINETEEN
## FRAUDULENT CONCEALMENT
## (BASED ON MAINE LAW)

577.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

578.    Plaintiff brings this claim on behalf of the Maine Class.

579.    Defendants intentionally concealed that the wiring harness is defective.

580.    Defendants further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles they were selling had no significant defects, that they had operable safety feature, were reliable, and would perform and operate properly.

581.    Defendants knew about the defect in the wiring harness when these representations were made.

582.    The Vehicles purchased or leased by Plaintiff and the other Maine Class members contained defective wiring harnesses.

583.    Defendants had a duty to disclose that the wiring harness contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the other Maine Class members relied on Defendants' material representations.

584. As alleged herein, at all relevant times, Defendants have held out the Vehicles to be free from defects such as the defect related to the wiring harnesses. Defendants touted and continue to tout the many benefits and advantages of the Vehicles, but nonetheless failed to disclose important facts related to the defect. This made Defendants' other disclosures about the Vehicles deceptive.

585. The truth about the defective wiring harnesses was known only to Defendants; Plaintiff and the other Maine Class members did not know of these facts and Defendants actively concealed these facts from Plaintiff and the other Maine Class members.

586. Plaintiff and the other Maine Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Maine Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and the other Maine Class members by concealing the true facts about the Vehicles' wiring harnesses.

587. Defendants' false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

588. Defendants had a duty to disclose the Defect and violations with

167

respect to the Vehicles because details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

589.    Defendants also had a duty to disclose because they made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that the wiring harnesses had a fundamental defect that would affect the safety, quality, and performance of the Vehicles.

590.    Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the wiring harnesses as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiff and the other Maine Class members.

591.    Defendants have still not made full and adequate disclosures, and continue to defraud Plaintiff and the other Maine Class members by concealing material information regarding the defect in the wiring harnesses.

592.    Plaintiff and the other Maine Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not

have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Maine Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

593.    Because of the concealment and/or suppression of facts, Plaintiff and the other Maine Class members sustained damage because they owned or leased Vehicles that are diminished in value as a result of Defendants' concealment of the true quality of those Vehicles' wiring harnesses. Had Plaintiff and the other Maine Class members been aware of the defect in the wiring harnesses installed in the Vehicles, and Defendants' disregard for the truth, Plaintiff and the other Maine Class members who purchased or leased a Vehicle would have paid less for it or would not have purchased or leased it at all.

594.    The value of Plaintiff's and the other Maine Class members' Vehicles has diminished as a result of Defendants' fraudulent concealment of the defective wiring harness of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

595.    Accordingly, Defendants are liable to Plaintiff and the other Maine Class members for damages in an amount to be proven at trial.

169

596.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Maine Class members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT TWENTY
## BREACH OF IMPLIED WARRANTY
## (11 M.R.S.A. § 2-314)

597.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

598.    Plaintiff brings this claim on behalf of the Maine Class.

599.    Plaintiff was at all relevant times a "buyer", as defined by 11 M.R.S.A. § 2-103.

600.    Defendants were at all relevant times "merchants", as defined 11 M.R.S.A. § 2-104.

601.    The Vehicles are and were at all relevant times "goods", 11 M.R.S.A. § 2-105.

602.    Defendants marketed the Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Maine Class members' decisions to purchase the Vehicles.

603.    Plaintiff and the other Maine Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles.

604.    Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

605.    Defendants impliedly warranted that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

606.    Because of the defect in the wiring harnesses, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

607.    Defendants knew about the defect in the wiring harnesses, allowing Defendants to cure their breach of warranty if they chose.

608.    Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

609.    Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the other

Maine Class members. Among other things, Plaintiff and the other Maine Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Maine Class members, and Defendants knew of the defect at the time of sale.

610.    Plaintiff and the other Maine Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

611.    Accordingly, Defendants are liable to Plaintiff and the other Maine Class members for damages in an amount to be proven at trial.

## COUNT TWENTY-ONE
## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
## (MD. CODE COM. LAW § 13-101, ET SEQ.)

612.    Plaintiff Terrence Berry ("Plaintiff" for purposes of all Maryland Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

613.    This claim is brought on behalf of the Maryland Class.

614.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or

lease of any consumer good. Md. Com. Law Code § 13-303. Volkswagen participated in misleading, false, or deceptive acts that violated the Maryland CPA. By systematically concealing the defects in the Class Vehicles, Volkswagen engaged in deceptive business practices prohibited by the Maryland CPA. These defects would be material to a reasonable consumer.

615.    Volkswagen and Plaintiffs are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

616.    Volkswagen's conduct, as set forth above, occurred in the conduct of trade or commerce.

617.    In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or

omission of any material fact with the intent that a consumer rely on the same in connection therewith.

618.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

619.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiff and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiff and other class members were not aware of this defect prior to purchase or lease.

620.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

621.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

622.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

623.    Volkswagen knew or should have known that its conduct violated this statute.

624.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth

174

regarding the Defect because the defect affects the safety of the vehicles and/or because Volkswagen: Possessed superior/exclusive knowledge of the design of the Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or Intentionally concealed the Defect from Plaintiff and the Class.

625.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

626.    Plaintiff and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

627.    Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

628.    Volkswagen Defective Vehicle owners were also harmed by

Volkswagen's unfair and deceptive trade practices since their vehicles were worth less as the result of Volkswagen's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

629.    Volkswagen's concealment of the defects in Plaintiff's vehicle was material to Plaintiff.

630.    Plaintiff suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the defects in his vehicle.

631.    As a direct and proximate result of Volkswagen's violations of the Maryland CPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Volkswagen's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their vehicles.

632.    Pursuant to Md. Code Com. Law § 13-408, Plaintiff seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT TWENTY-TWO
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Md. Code Com. Law § 2-314)

633.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

634.    Plaintiff bring this claim on behalf of the Maryland Class.

635.    Volkswagen was a merchant with respect to motor vehicles within the meaning of Md. Com. Law § 2-104(1).

636.    Under Md. Com. Law § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff and Class members purchased or leased their Class Vehicles from Volkswagen.

637.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harness rendering certain crucial safety and other functions inoperative such that Plaintiff and Class members would not have purchased the Vehicles had they known of the defects.

638.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

639.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Maryland Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT TWENTY-THREE**
**VIOLATIONS OF THE MASSACHUSETTS**

177

## CONSUMER PROTECTION ACT
## (MASS. GEN. LAWS CH. 93A)

640.    Plaintiff Price McMahon ("Plaintiff" for purposes of all Massachusetts Counts) incorporates by reference all preceding allegations as though fully set forth herein.

641.    Plaintiff brings this claim on behalf of the Massachusetts Class.

642.    The conduct of Defendants as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, including, but not limited to, Defendants' manufacture, and sale of Vehicles with the defective wiring harnesses, which Defendants failed to adequately investigate, disclose, and remedy, and its misrepresentations and omissions regarding the safety, reliability, and functionality of its Vehicles, which misrepresentations and omissions possessed the tendency to deceive.

643.    Defendants engage in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

644.    Therefore, Plaintiff seeks monetary and equitable relief under the Massachusetts Consumer Protection Act as a result of Defendants' unfair and deceptive acts and practices.   On April 22, 2022, and pursuant to Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiff sent notice and demand to Defendants of their violations of the Massachusetts Consumer Protection Act.

## COUNT TWENTY-FOUR
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MASS. GEN. LAWS CH. 106, § 2-314)

645.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

646.    Plaintiff brings this claim on behalf of the Massachusetts Class.

647.    Defendants are and were at all relevant times a merchant with respect to motor vehicles.

648.    A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

649.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harnesses rendering certain crucial safety and other functions inoperative.

650.    Defendants were provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

651.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be proven at trial.

## COUNT TWENTY-FIVE
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
## (MO. REV. STAT. § 407.010 ET SEQ.)

652. Plaintiff Amanda Green ("Plaintiff" for purposes of all Missouri Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

653. This claim is brought on behalf of the Missouri Class.

654. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

655. Volkswagen, Plaintiff, and Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

656. Volkswagen engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. REV. STAT. § 407.010(7).

657. In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate

180

without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

658.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

659.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and materially misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not aware of the Defect prior to purchase or lease.

660.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

661.    Volkswagen's methods of competition and unfair, deceptive acts were

likely to and did in fact deceive reasonable consumers.

662.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

663.    Volkswagen knew or should have known that its conduct violated this statute.

664.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth regarding the Defect because the defect affects the safety of the vehicles and/or because Volkswagen: possessed superior/exclusive knowledge of the design of the Vehicles; made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or intentionally concealed the Defect from Plaintiff and the Class.

665.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

666.    Plaintiffs and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for

their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

667.    Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

668.    Plaintiffs and members of the Class were also harmed by Volkswagen's unfair and deceptive trade practices since their Vehicles were worth less as the result of Volkswagen's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

669.    Volkswagen's concealment of the defects in Plaintiff's Vehicles was material to Plaintiff.

670.    Volkswagen violated the Missouri MPA by concealing and failing to disclose the Defect. Volkswagen had an ongoing duty to Plaintiff and the Missouri Class to refrain from unfair and deceptive practices under the Missouri MPA in the course of its business.

671.    Plaintiff and the Missouri Class suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the defects in her vehicle.

672.    As a direct and proximate result of Volkswagen's violations of the

183

Missouri MPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Volkswagen's misconduct, all Plaintiff and Class members incurred damages in at least the form of lost time required to repair their vehicles.

673.    Volkswagen is liable to Plaintiff and Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Volkswagen's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**COUNT TWENTY-SIX**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MO. REV. STAT. § 400.2-314)**

674.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

675.    Plaintiff brings this claim on behalf of the Missouri Class.

676.    Volkswagen was at all relevant times a "merchant" as defined by Mo. Rev. Stat. § 400.2-104 and a "seller" of motor vehicles under § 400.2-103(1)(d).

677.    The Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

678.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

679.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harness rendering certain crucial safety and other functions inoperative such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

680.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

681.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Missouri Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT TWENTY-SEVEN
## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
## (NEB. REV. STAT. § 59-1601 ET SEQ.)

682.    Plaintiff Katy Doyle ("Plaintiff" for purposes of all Nebraska Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

683.    This claim is brought by Plaintiff on behalf of the Nebraska Class.

185

684.    The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.

685.    VW, Plaintiff, and Nebraska Class members are "person[s]" under NEB. REV. STAT. § 59-1601(1).

686.    VW's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

687.    By concealing and failing to disclose the Defect, VW violated the Nebraska CPA. VW had an ongoing duty to Plaintiff and the other Nebraska Class members to refrain from unfair and deceptive practices under the Nebraska CPA in the course of its business.

688.    Plaintiff and the other Nebraska Class members suffered ascertainable loss and actual damages as a direct and proximate result of VW's concealments, misrepresentations, and/or failure to disclose material information concerning the Defect.

689.    Because VW's conduct caused injury to Plaintiff's property through violations of the Nebraska CPA, Plaintiff seeks recovery of actual damages as well as enhanced damages up to $1,000, an order enjoining VW's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

## COUNT TWENTY-EIGHT
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (BASED ON NEBRASKA LAW)

690.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

691.    Plaintiff brings this claim on behalf of the Nebraska Class.

692.    VW was at all relevant times a merchant with respect to motor vehicles.

693.    At the time that Defendants sold and distributed the Vehicles to Plaintiff and the Nebraska Class, the Vehicles were not merchantable because, among other reasons, they were dangerous, unsafe, and not fit for their ordinary purpose of functioning and operating due to the Defect.

694.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect renders them unsafe, inconvenient, and imperfect such that Plaintiff and the other Nebraska Class members would not have purchased the Vehicles had they known of the Defect.

695.    VW knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

696.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by, inter alia, customer complaints,

187

letters, emails and other communications from Class members and from dealers and other repair facilities.

697.    As a direct and proximate result of VW's breach of the implied warranty of merchantability, Plaintiff and the other Nebraska Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT TWENTY-NINE**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEBRASKA LAW)**

698.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

699.    Plaintiff brings this claim on behalf of the Nebraska Class.

700.    VW intentionally concealed the Defect.

701.    VW further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling had no significant defects, that the vehicles were safe, reliable, and would perform and operate properly.

702.    VW knew about the Defect when these representations were made.

703.    The Vehicles purchased by Plaintiff and the other Nebraska Class members contained the Defect.

188

704. VW had a duty to disclose that the Defect created a safety hazard and Plaintiff and the other Nebraska Class members relied on VW's material representations.

705. As alleged herein, at all relevant times, VW held out the Vehicles to be free from defects such as the Defect. VW touted and continues to tout the many benefits and advantages of the vehicles and their safety systems, but nonetheless failed to disclose important facts related to the Defect. This made VW's other disclosures about the vehicle deceptive.

706. The truth about the Defect was known only to VW; Plaintiff and the other Nebraska Class members did not know of these facts and VW actively concealed these facts from Plaintiff and the other Nebraska Class members.

707. Plaintiff and the other Nebraska Class members reasonably relied upon VW's deception. They had no way of knowing that VW's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Nebraska Class members did not, and could not, unravel VW's deception on their own. Rather, VW intended to deceive Plaintiff and Nebraska Class members.

708. VW's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles, such as their safety to drive.

709. VW had a duty to disclose the Defect with respect to the Vehicles

189

because details of the true facts were known and/or accessible only to VW, because VW had exclusive knowledge as to such facts, and because VW knew these facts were not known to or reasonably discoverable by Plaintiff or the other Nebraska Class members.

710.    VW also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that a Defect was a fundamental defect that would affect the safety, quality and performance of the Vehicles.

711.    VW's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiff and the other Nebraska Class members.

712.    VW has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Nebraska Class members by concealing material information regarding the Defect.

713.    Plaintiff and the other Nebraska Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased or paid as much for cars with a material defect, and/or

would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Nebraska Class members' actions were justified. VW was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the other Nebraska Class members.

714. Because of the concealment and/or suppression of facts, Plaintiff and the other Nebraska Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of VW's concealment of the true quality of those vehicles which contain a Defect. Had Plaintiff and the other Nebraska Class members been aware of the Defect, and VW's disregard for the truth, Plaintiff and the other Nebraska Class members who purchased a Vehicle would have paid less for them or would not have purchased them at all.

715. The value of Plaintiff's and the other Nebraska Class members' Vehicles has diminished as a result of VW's fraudulent concealment of the Defect, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

716. Accordingly, VW is liable to Plaintiff and the other Nebraska Class members for damages in an amount to be proven at trial.

717. VW's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Nebraska Class members' rights and the representations that VW made to

them, in order to enrich VW. VW's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT THIRTY
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
## (N.Y. GEN. BUS. LAW § 349)

718.    Plaintiff Hogan Popkess ("Plaintiff" for purposes of all New York Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

719.    Plaintiff brings this claim on behalf of the New York Class.

720.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

721.    By failing to release material facts about the defect, including, but not limited to, the Defect rendering the vehicles unsafe to drive, VW curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers. Moreover, VW has otherwise engaged in activities with a tendency or capacity to deceive. VW also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Vehicles.

722.    By failing to disclose and by actively concealing the Defect, by marketing its vehicles as safe, reliable and of high quality, and by presenting itself as a reputable manufacturer that valued safety and reliability and stood behind its vehicles after they were sold, VW engaged in deceptive business practices in violation of the New York Gen. Bus. Law § 349.

723.    In the course of VW's business, it willfully failed to disclose and actively concealed the Defect. VW compounded the deception by repeatedly asserting Vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety, and stood behind its vehicles once they are on the road.

724.    VW's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiff and the other New York Class members, about true reliability of Vehicles and the ability to use them safely, considering the Defect.

725.    VW intentionally and knowingly misrepresented material facts regarding the Vehicles with an intent to mislead Plaintiff and the other New York Class members, including without limitation by failing to disclose the defect in light of circumstances under which the omitted facts were necessary in order to correct

the assumptions, inferences or representations being made by VW about the reliability and safety of its Vehicles. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to New York Gen. Bus. Law § 349.

726.    Because VW knew or believed that its statements regarding the reliability and safety of its Vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of the defect, VW engaged in fraudulent misrepresentations pursuant to New York Gen. Bus. Law § 349.

727.    VW's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers. Such acts are unfair practices in violation of New York Gen. Bus. Law § 349.

728.    VW knew or should have known that its conduct violated New York Gen. Bus. Law § 349.

729.    As alleged above, VW made material statements about the reliability and safety of the Vehicles and the VW brand that were either false, misleading, and/or half-truths in violation of New York Gen. Bus. Law § 349.

730.    VW owed Plaintiff and the other New York Class members a duty to disclose the truth about its Defect because the defect created a safety hazard and VW: Possessed exclusive knowledge of the Defect; intentionally concealed the foregoing from Plaintiff and the other New York Class members; and/or made

incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit there was a Defect.

731.    VW's fraudulent concealment of the Defect and promotion of the vehicles' safety systems and its concealment of the true defective nature of the vehicles were material to Plaintiff and the other New York Class members.

732.    Plaintiff and the other New York Class members suffered ascertainable loss caused by VW's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased the Vehicles either would have paid less for their Vehicles or would not have purchased or leased them at all but for VW's violations of New York Gen. Bus. Law § 349.

733.    VW had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the New York Gen. Bus. Law § 349. All owners of Vehicles suffered ascertainable loss in the form of the diminished value of their Vehicles as a result of VW's deceptive and unfair acts and practices made in the course of VW's business.

734.    VW's violations present a continuing risk to Plaintiff and the other New York Class members as well as to the general public. VW's unlawful acts and practices complained of herein affect the public interest.

735.    As a direct and proximate result of VW's violations of New York Gen. Bus. Law § 349, Plaintiff and the other New York Class members have suffered

injury-in-fact and/or actual damage.

736.    VW is liable to Plaintiff and the other New York Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining VW's unfair and deceptive practices, and any other just and proper relief under New York Gen. Bus. Law § 349.

## COUNT THIRTY-ONE
## FRAUDULENT CONCEALMENT
## (BASED ON NEW YORK LAW)

737.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

738.    Plaintiff brings this claim on behalf of the New York Class.

739.    VW intentionally concealed the Defect.

740.    VW further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling did not have the Defect, that the vehicles were safe, reliable, and would perform and operate properly.

741.    VW knew about the Defect when these representations were made.

742.    The Vehicles purchased by Plaintiff and the other New York Class members contained the Defect.

743.    VW had a duty to disclose that the Defect created a safety hazard and

Plaintiff and the other New York Class members relied on VW's material representations.

744.    As alleged herein, at all relevant times, VW has held out the Vehicles to be free from the Defect. VW touted and continues to tout the many benefits and advantages of the vehicles and their safety systems, but nonetheless failed to disclose important facts related to the Defect. This made VW's other disclosures about the vehicle deceptive.

745.    The truth about the Defect was known only to VW; Plaintiff and the other New York Class members did not know of these facts and VW actively concealed these facts from Plaintiff and the other New York Class members.

746.    Plaintiff and the other New York Class members reasonably relied upon VW's deception. They had no way of knowing that VW's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other New York Class members did not, and could not, unravel VW's deception on their own. Rather, VW intended to deceive Plaintiff and New York Class members.

747.    VW's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles, such as their safety to drive.

748.    VW had a duty to disclose the Defect with respect to the Vehicles because details of the true facts were known and/or accessible only to VW, because

VW had exclusive knowledge as to such facts, and because VW knew these facts were not known to or reasonably discoverable by Plaintiff or the other New York Class members.

749.    VW also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that a Defect was a fundamental defect that would affect the safety, quality and performance of the Vehicles.

750.    VW's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiff and the other New York Class members.

751.    VW has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other New York Class members by concealing material information regarding the Defect.

752.    Plaintiff and the other New York Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased or paid as much for cars with a material defect, and/or would have taken other affirmative steps in light of the information concealed from

them. Plaintiff's and the other New York Class members' actions were justified. VW was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the other New York Class members.

753.    Because of the concealment and/or suppression of facts, Plaintiff and the other New York Class members sustained damage because they purchased or leased vehicles that are diminished in value as a result of VW's concealment of the true quality of those vehicles which contain a Defect. Had Plaintiff and the other New York Class members been aware of the Defect, and VW's disregard for the truth, Plaintiff and the other New York Class members who purchased a Vehicle would have paid less for them or would not have purchased them at all.

754.    The value of Plaintiff's and the other New York Class members' Vehicles has diminished as a result of VW's fraudulent concealment of the Defect, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

755.    Accordingly, VW is liable to Plaintiff and the other New York Class members for damages in an amount to be proven at trial.

756.    VW's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other New York Class members' rights and the representations that VW made to them, in order to enrich VW. VW's conduct warrants an assessment of punitive

damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT THIRTY-TWO
## BREACH OF IMPLIED WARRANTY
## (N.Y. U.C.C. LAW § 2-314)

757.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

758.    Plaintiff brings this claim on behalf of the New York Class.

759.    VW is and was at all relevant times a merchant with respect to motor vehicles.

760.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

761.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles contain a Defect rendering the Vehicles unsafe and prevent users from enjoying many of the Vehicles' features that Class members paid for.

762.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

763.    As a direct and proximate result of VW's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT THIRTY-THREE
## VIOLATION OF THE NORTH CAROLINA UNFAIR AND
## DECEPTIVE TRADE PRACTICES ACT
## (N.C. GEN. STAT. §75.1-1)

764.    Plaintiff David Wildhagen ("Plaintiff" for purposes of all North Carolina Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

765.    This claim is brought by Plaintiff on behalf of the North Carolina Class.

766.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1-1 ("UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Defendants' business acts and practices alleged herein violate the UDTPA.

767.    The purchase or lease of the Vehicles by Plaintiff and the North Carolina Class members as described herein constitute transactions in commerce within the meaning of UDTPA.

768.    VW violated the UDTPA by concealing and failing to disclose the Defect. VW had an ongoing duty to Plaintiff and the North Carolina Class members

to refrain from unfair and deceptive practices under the UDTPA in the course of its business.

769.    The practices of Defendants violate the UDTPA for, inter alia, one or more of the following reasons: Defendants represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have; Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, safety, quality and nature of the Vehicles; Defendants represented that goods or services were of a particular standard, quality, or grade, when they were of another; Defendants engaged in unconscionable commercial practices in failing to reveal material facts and information about the Vehicles, which did, or tended to, mislead Plaintiff and the North Carolina Class members about facts that could not reasonably be known by the consumer; Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner; Defendants caused Plaintiff and the North Carolina Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct; Defendants purported to disclaim or limit the implied warranty of merchantability without providing such disclaimer or limitation in a clear, truthful and conspicuous manner; Defendants failed to reveal material facts to Plaintiff and

the North Carolina Class members, the omission of which would tend to mislead or deceive consumers, including Plaintiff and the North Carolina Class members; Defendants made material representations and statements of fact to Plaintiff and the North Carolina Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were; Defendants intended that Plaintiff and the North Carolina Class members rely on their misrepresentations and omissions, so that they would purchase the Vehicles.

770.    Under all of these circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

771.    The conduct of Defendants were likely to mislead consumers and Defendants intended that Plaintiff and the North Carolina Class members rely on their misrepresentations.

772.    The conduct of Defendants offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

773.    The foregoing acts, omissions and practices proximately caused Plaintiff and the North Carolina Class members to suffer an ascertainable loss in the form of, inter alia, overpayment and diminution in value of the Vehicles, and

Plaintiff and the North Carolina Class members are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

774.    Plaintiff further seek an order enjoining Defendants' unfair or deceptive acts or practices.

### COUNT THRITY-FOUR
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C. GEN. STAT. § 25-2-314)

775.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

776.    Plaintiff brings this claim on behalf of the North Carolina Class.

777.    VW is a merchant in the sale and lease of the Vehicles to Plaintiff and the North Carolina Class members, pursuant to the N.C. Gen. Stat. § 25-2-314.

778.    By operation of law, VW provided Plaintiff and the North Carolina Class members an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for which they were sold.

779.    By the conduct described herein, VW has failed and refused to conform the Vehicles to the express warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

780.    The Vehicles were defective at the time they left the possession of VW.

781.    The Vehicles were not of merchantable quality as required under N.C.

Gen. Stat. § 25-2-314.

782.    By virtue of the conduct described herein, VW breached the implied warranty of merchantability.

783.    Plaintiff and the North Carolina Class members have been damaged as a result of VW's breach of the implied warranty.

784.    Plaintiff and the North Carolina Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of VW or by operation of law in light of VW's unconscionable conduct.

785.    Plaintiff and the North Carolina Class Members have provided timely notice to VW regarding the problems they experienced with the Vehicles and, notwithstanding such notice, VW has failed and refused to offer Plaintiff and the North Carolina Class members an effective remedy.

786.    In addition, VW has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defects associated with the Vehicles.

787.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that they contain a Defect rendering them unsafe, inconvenient, and imperfect such that Plaintiff and Class members

would not have purchased the Vehicles had they known of the defects.

788.    VW knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

789.    As a direct and proximate result of VW's breach of the implied warranty of merchantability, Plaintiff and the other North Carolina Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT THRITY-FIVE**
**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE §§ 1345.01, ET SEQ.)**

790.    Plaintiff Kory Wheeler ("Plaintiff," for purposes of all Ohio Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

791.    Plaintiff brings this claim on behalf of the Ohio Class.

792.    Plaintiff and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA"). Defendants are "suppliers" as defined by the OCSPA. Plaintiff's and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

793.    By failing to disclose and actively concealing the defects in the wiring harnesses in the Class Vehicles, Defendants engaged in deceptive business practices

prohibited by the OCSPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

794.    Defendants knew that the wiring harnesses in the Class Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

795.    Defendants owed Plaintiff a duty to disclose the defective nature of the wiring harnesses in the Class Vehicles, because Defendants: Possessed exclusive knowledge of the defects rendering the Class Vehicles unsafe and more unreliable than similar vehicles; Intentionally concealed the defects associated with the wiring harnesses; and/or made incomplete representations about the characteristics and performance of the Vehicles, while purposefully withholding material facts about the wiring harnesses from Plaintiffs that contradicted these representations.

796.    Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of Defendants' Vehicles.

797.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive,

and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following: Mason v. Mercedes Benz USA, LLC (OPIF #10002382); State ex rel. Betty D. Montgomery v. Defendants Motor Co. (OPIF #10002123); State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc. (OPIF #10002025); Bellinger v. Hewlett-Packard Co., No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077); Borror v. MarineMax of Ohio, No. OT-06-010, 2007 Oho App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388); State ex rel. Jim Petro v. Craftmatic Organization, Inc. (OPIF #10002347); Mark J. Craw Defendants, et al. v. Joseph Airport Toyota, Inc. (OPIF #10001586); State ex rel. William J. Brown v. Harold Lyons, et al. (OPIF #10000304); Brinkman v. Mazda Motor of America, Inc. (OPIF #10001427); Khouri v. Don Lewis (OPIF #100001995); Mosley v. Performance Mitsubishi aka Automanage (OPIF #10001326); Walls v. Harry Williams dba Butch's Auto Sales (OPIF #10001524); Brown v. Spears (OPIF #10000403); State ex rel. Brown v. Bud Fletcher Used Cars, Inc. (OPIF #10000228) (Ohio Ct. C.P. Apr. 27, 1982); State ex rel. Celebrezze v. Metro Toyota, Inc. (OPIF #10001194); and Shellhorn v. Kohler Chrysler-Plymouth, Inc., PIF Number:10001309.

798.    As a result of its violations of the OCSPA detailed above, Defendants

caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently own or lease a Class Vehicle that is defective. Defects associated with the wiring harness have caused the value of Class Vehicles to decrease.

799.    Plaintiff and the Class sustained damages as a result of Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

800.    Plaintiff also seeks court costs and attorneys' fees as a result of Defendants' violation of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT THIRTY-SIX
## BREACH OF IMPLIED WARRANTY IN TORT
## (BASED ON OHIO LAW)

801.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

802.    Plaintiff brings this claim on behalf of the Ohio Class.

803.    The Vehicles contained a defect, namely, a wiring harness that routinely fails, completely or partially, resulting in loss of crucial safety functions, as detailed herein more fully.

804.    The manufacturing, and/or assembly defect existed at the time these Vehicles containing the wiring harness left the hands of Defendants.

805.    Based upon the dangerous product defect and its certainty to occur, Defendants failed to meet the expectations of a reasonable consumer. The Vehicles

failed their ordinary, intended use because the wiring harness does not function (when it functions at all) as a reasonable consumer would expect. Moreover, it presents a serious danger to Plaintiff and the other Class members.

806.    The defect in the wiring harnesses in these Vehicles was the direct and proximate cause of economic damages to Plaintiff, as well as damages.

## COUNT THIRTY-SEVEN
## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
## (ORS 646.605 ET SEQ.)

807.    Plaintiff Keech Arnsten ("Plaintiff" for purposes of all Oregon Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

808.    This claim is brought by Plaintiff on behalf of the Oregon Class. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: representing that goods have characteristics uses, benefits, or qualities that they do not have; representing that goods are of a particular standard or quality if they are of another; advertising goods or services with intent not to provide them as advertised and certified; and engaging in any other unfair or deceptive conduct in trade or commerce. ORS 646.608(1).

809.    VW is a person within the meaning of ORS 646.605(4).

810.    Each Vehicle is a "good" obtained primarily for personal family or

household purposes within the meaning of ORS 646.605(6).

811.    By concealing and failing to disclose the Defect, VW violated the Oregon UTPA.  VW had an ongoing duty to Plaintiff and the other Oregon Class members to refrain from unfair and deceptive practices under the Oregon UTPA in the course of its business.

812.    Plaintiff and the other Oregon Class members suffered ascertainable loss and actual damages as a direct and proximate result of VW's concealments, misrepresentations, and/or failure to disclose material information concerning the Defect.

813.    Because VW's conduct caused injury to Plaintiff's and the Oregon Class members' property through violations of the Oregon UTPA, Plaintiff and the Class members are entitled to recover the greater of actual damages or $200 pursuant to ORS 646.638(1), punitive damages, an order enjoining VW's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

## COUNT THIRTY-EIGHT
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (ORS 72.3140)

814.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

815.    Plaintiff brings this claim on behalf of the Oregon Class.

816.    VW was at all relevant times a "merchant" with respect to motor vehicles under ORS 72.1040, and a "seller" of motor vehicles under ORS 72.1030.

817.    The Vehicles are and were at all relevant times "goods" within the meaning of ORS 72.1050.

818.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to ORS 72.3140.

819.    At the time that Defendants sold and distributed the Vehicles to Plaintiff and the Oregon Class, the Vehicles were not merchantable because, among other reasons, they were dangerous, unsafe, and not fit for their ordinary purpose of functioning and operating due to the Defect.

820.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect renders them unsafe, inconvenient, and imperfect such that Plaintiff and the other Oregon Class members would not have purchased the Vehicles had they known of the Defect.

821.    VW knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

822.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by, *inter alia*, customer complaints,

letters, emails and other communications from Class members and from dealers and other repair facilities.

823.    As a direct and proximate result of VW's breach of the implied warranty of merchantability, Plaintiff and the other Oregon Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT THIRTY-NINE**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION LAW**
**(73 PA. CONS. STAT. § 201-1 ET SEQ.)**

824.    Plaintiffs Harry O'Boyle and Joe Ramagli ("Plaintiffs" for purposes of all Pennsylvania Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

825.    This claim is brought on behalf of the Pennsylvania Class.

826.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised and certified; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 Pa. Cons.

213

Stat. § 201-2(4).

827.    Volkswagen, Plaintiffs, and Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

828.    Plaintiffs purchased a Defective Vehicle primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

829.    All of the acts complained of herein were perpetrated by Volkswagen in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

830.    In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in

214

connection therewith.

831.    In purchasing or leasing the Vehicles, Plaintiffs and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

832.    Plaintiffs and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not aware of this defect prior to purchase or lease.

833.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

834.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

835.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiffs and the Class.

836.    Volkswagen knew or should have known that its conduct violated this statute.

837.    Volkswagen owed Plaintiffs and the Class a duty to disclose the truth regarding the Defect because the defect affects the safety of the vehicles and/or

because Volkswagen: Possessed superior/exclusive knowledge of the design of the Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or intentionally concealed the Defect from Plaintiffs and the Class.

838.    Volkswagen's conduct proximately caused injuries to Plaintiffs and the other Class members. Plaintiffs and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

839.    Plaintiffs and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiffs and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

840.    Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

841.    Volkswagen Defective Vehicle owners were also harmed by Volkswagen's unfair and deceptive trade practices since their vehicles were worth

less as the result of Volkswagen's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

842. Volkswagen's concealment of the defects in Plaintiffs' vehicles was material to Plaintiffs.

843. Plaintiffs suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the defects in his vehicle.

844. As a direct and proximate result of Volkswagen's violations of the Pennsylvania CPL, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Volkswagen's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their vehicles.

845. Volkswagen is liable to Plaintiffs and the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a). Plaintiffs and the Class are also entitled to an award of punitive damages given that Volkswagen's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT FORTY
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314, 2A103, and 2A212)

846. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

847.    Plaintiffs bring this claim on behalf of the Pennsylvania Class.

848.    Volkswagen was a merchant at all relevant times with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "seller" and "lessors" of motor vehicles under §§ 2103(a) and 2A103(1)(p).

849.    The Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

850.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. § 2314.

851.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harness rendering certain crucial safety and other functions inoperative such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

852.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

853.    As a direct and proximate result of Volkswagen's breach of the

218

implied warranty of merchantability, Plaintiffs and the other Pennsylvania Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT FORTY-ONE
## VIOLATION OF THE SOUTH CAROLINA
## UNFAIR TRADE PRACTICES ACT
## (S.C. Code Ann. § 39-5-10 ET SEQ.)

854.    Plaintiff Eric Kovalic ("Plaintiff" for purposes of all South Carolina Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

855.    This claim is brought on behalf of the South Carolina Class.

856.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).

857.    Volkswagen is a "person" under S.C. Code Ann. § 39-5-10.

858.    Volkswagen's conduct, as set forth above, occurred in the conduct of trade or commerce.

859.    Volkswagen violated the South Carolina UTPA by concealing and failing to disclose the Defect. Volkswagen had an ongoing duty to Plaintiff and the South Carolina Class to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of its business.

860.    In the course of Volkswagen's business, Volkswagen willfully failed

to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

861.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

862.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not

aware of this defect prior to purchase or lease.

863.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

864.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

865.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

866.    Volkswagen knew or should have known that its conduct violated this statute.

867.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth regarding the Defect because the defect affects the safety of the vehicles and/or because Volkswagen: Possessed superior/exclusive knowledge of the design of the Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or intentionally concealed the Defect from Plaintiff and the Class.

868.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation

relating to the Vehicles.

869.    Plaintiffs and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

870.    Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

871.    Volkswagen Defective Vehicle owners were also harmed by Volkswagen's unfair and deceptive trade practices since their vehicles were worth less as the result of Volkswagen's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

872.    Volkswagen's concealment of the defects in Plaintiff's vehicles was material to Plaintiff.

873.    Plaintiff and the South Carolina Class suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the defects in his vehicle.

874.    Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiff and Class

members seek monetary relief to recover their economic losses. Because Defendants' actions were willful and knowing, Plaintiff's damages should be trebled.

875. Plaintiff also seeks punitive damages against Volkswagen because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff to cruel and unjust hardship as a result. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

876. Plaintiff further seeks an order enjoining Defendants' unfair or deceptive acts or practices.

**COUNT FORTY-TWO**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(S.C. CODE §§ 36-2-314 AND 36-2A-212)**

877. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

878. Plaintiff bring this claim on behalf of the South Carolina Class. 1087. Volkswagen was at all relevant times a merchant with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and a "seller" of motor vehicles under § 36-2-103(1)(d).

879. The Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

880. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2-314 and 36-2A-212.

881. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harness rendering certain crucial safety and other functions inoperative such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

882. Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

883. As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other South Carolina Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT FORTY-THREE
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977

**(TENN. CODE ANN. § 47-18-101, ET SEQ.)**

884.    Plaintiff Charles Hillier ("Plaintiff" for purposes of all Tennessee Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

885.    This claim is brought by Plaintiff on behalf of the Tennessee Class.

886.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

887.    Plaintiff and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code § 4-18-104.

888.    Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Tenn. Code § 47-18-103(9).

889.    Defendants' conduct, as set forth above, occurred in the conduct of trade or commerce.

890.    By concealing and failing to disclose the Defect, VW violated the Tennessee CPA. VW had an ongoing duty to Plaintiff and the other Tennessee Class members to refrain from unfair and deceptive practices under the Tennessee CPA in the course of its business.

891.    Plaintiff and the other Tennessee Class members suffered ascertainable loss and actual damages as a direct and proximate result of VW's

concealments, misrepresentations, and/or failure to disclose material information concerning the Defect.

892.    Pursuant to Tenn. Code §§ 47-18-109 and 47-18-109(a)(3), Plaintiff and the other Tennessee Class members seek an order enjoining Defendants' unfair, unlawful, or deceptive practices, declaratory relief, punitive damages, attorneys' fees, and any other just and proper remedy under the Tennessee CPA.

**COUNT FORTY-FOUR**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(TENN. CODE §§ 47-2-314 AND 47-2A-212)**

893.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

894.    Plaintiff brings this claim on behalf of the Tennessee Class.

895.    VW was at all relevant times a "merchant" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and a "seller" of motor vehicles under § 47-2-103(1)(d).

896.    The Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

897.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

898.    These Vehicles, when sold and at all times thereafter, were not in

merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect renders them unsafe, inconvenient, and imperfect such that Plaintiff and the other Tennessee Class members would not have purchased the Vehicles had they known of the defect.

899.    VW knew about the Defect at the time of purchase, allowing it to cure its breach of warranty if it chose.

900.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

901.    As a direct and proximate result of VW's breach of the implied warranty of merchantability, Plaintiff and the other Tennessee Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT FORTY-FIVE
## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT
## (TEX. BUS. & COM. CODE §§ 17.41, ET SEQ.)

902.    Plaintiff Labranda Shelton ("Plaintiff" for purposes of all Texas Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

903.    Plaintiff brings this Count on behalf of the Texas Class.

904.    Plaintiff and Defendants are each "persons" as defined by Tex. Bus. & Com. Code § 17.45(3). The Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1). Plaintiff and the other Texas Class members are "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4). Defendants have at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Vehicles in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

905.    The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41, et seq.

906.    By failing to disclose and actively concealing the defects in the wiring harnesses in the Vehicles, Defendants engaged in deceptive business practices prohibited by the DTPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

907.    Defendants knew that the wiring harnesses in the Vehicles were defectively manufactured, would fail without warning, and were not suitable for their intended use. Defendants nevertheless failed to warn Plaintiff and the Texas Class members about these defects despite having a duty to do so.

908.    Defendants owed Plaintiff a duty to disclose the defective nature of

the wiring harnesses in the Vehicles, because Defendants:

d.     Possessed exclusive knowledge of the defects rendering the Vehicles more dangerous and unreliable than similar vehicles;

e.     Intentionally concealed the defects associated with the wiring harnesses; and/or

f.     Made incomplete representations about the characteristics and performance of the Vehicles generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

909.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of the Vehicles.

910.    Defendants' intentional concealment of and failure to disclose the defective nature of the Vehicles to Plaintiff and the other Class members constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff and the other Class members, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff and the other Class members.

911.    Defendants are also liable under Tex. Bus. & Com. Code § 17.50(a)

because Defendants' breach of the implied warranty of merchantability set forth herein was a producing cause of economic damages sustained by Plaintiff and the other Class members.

912.     As a result of its violations of the DTPA detailed above, Defendants caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff. Plaintiff currently owns or leases, or within the class period has owned or leased, a Vehicle that is defective. Defects associated with the Vehicles' wiring harnesses have caused the value of the Vehicles to decrease.

913.     All procedural prerequisites, including notice, have been met. The giving of notice to Defendants is rendered impracticable pursuant to Tex. Bus. & Com. Code § 17.505(b) and unnecessary because Defendants have notice of the claims against it through the numerous complaints filed against it. On May 6, 2022, pursuant to Tex. Bus. & Com. Code § 17.505(a), Plaintiff, individually and on behalf of the other Class members, sent Defendants a written notice that advised Defendants in reasonable detail of Plaintiff and the Class' specific complaint in asserting the claim against Defendants. On August 5, 2022, pursuant to Tex. Bus. & Com. Code § 17.501, Plaintiff, individually and on behalf of the other Class members, sent the Texas Consumer Protection Division a copy of this Complaint.

914.     Plaintiff and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief as

provided under the DTPA.

915.     Plaintiff and the other Texas Class members should be awarded three times the amount of their economic damages because Defendants intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

**COUNT FORTY-SIX**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON TEXAS LAW)**

916.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

917.     Plaintiff brings this Count on behalf of the Texas Class.

918.     VW is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

919.     A warranty that the Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Tex. Bus. & Com. Code § 2.314. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used. Specifically, the Vehicles contain a Defect which renders the vehicles unsafe to drive and prevents users from enjoying many features of the Vehicles they purchased and/or leased and that they paid for; and the wiring harness system was not adequately tested.

920.     VW was provided notice of these issues by numerous complaints

against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

921.    As a direct and proximate result of VW's breach of the warranties of merchantability, Plaintiff and the other Texas Class members have been damaged in an amount to be proven at trial.

## COUNT FORTY-SEVEN
## VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
## (UTAH CODE ANN. § 13-11-1 ET SEQ.)

922.    Plaintiffs Adam and Mallory Moore ("Plaintiffs" for purposes of all Utah Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

923.    Plaintiffs bring this claim on behalf of the Utah Class.

924.    Defendants qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

925.    Plaintiffs and the Class Members are "persons" under Utah Code Ann. § 13-11-3.

926.    Sales of the Class Vehicles to Plaintiffs and the Class were "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3.

927.    The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-

4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code Ann. § 13-11-4.

928.    "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

929.    In the course of Defendants' business, it willingly failed to disclose and actively concealed the Class Vehicles' Defects. Accordingly, Defendants engaged in unfair and deceptive trade practices, in unfair methods of competition, unconscionable acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented and suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner.

233

930. Defendants' acts had capacity, tendency, or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with intent that Plaintiffs and other Class Members rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles. Defendants engaged in unfair and deceptive business practices in violation of the Utah CSPA.

931. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class Members were deceived by Defendants' failure to disclose the Defects.

932. Plaintiffs and Class Members reasonably relied upon Defendants' false misrepresentations. They had no way of knowing that Defendants' representations and omissions were false and gravely misleading.

933. As alleged herein, Defendants engaged in extremely sophisticated methods of deception. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own. Plaintiffs and Class Members were not aware of the defective wiring harnesses prior to purchase or lease.

934. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

935. The facts concealed and omitted by Defendants were material in that

234

a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiffs and other Class Members known of the Defects at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

936.    Defendants' unfair or deceptive acts or practices, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

937.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

938.    Defendants knew or should have known that its conduct violated the Utah CSPA.

939.    Defendants owed to Plaintiffs and the Class a duty to disclose the truth about the Defects because Defendants: Possessed exclusive knowledge of the defect in the wiring harnesses; Intentionally concealed the foregoing from Plaintiffs and the Class; and/or made incomplete representations regarding the Class Vehicles' wiring harnesses, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

940.    Due to Defendants' specific and superior knowledge regarding the Class Vehicles' defective wiring harnesses, its false representations regarding the

235

Class Vehicles' features, and Plaintiffs' and other Class Members' reliance on these material representations, Defendants had a duty to disclose to Plaintiffs and the Class Members that the wiring harnesses in their vehicles were defective.

941.    Having volunteered to provide information to Plaintiffs and Class Members, Defendants had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value and safety of the Class Vehicles purchased or leased by Plaintiffs and Class Members.

942.    Defendants made these false representations and omissions for the purpose of inducing Plaintiffs and other Class Members to purchase Class Vehicles, and to increase its revenue and profits.

943.    Defendants' conduct proximately caused injuries to Plaintiffs and the other Class Members.

944.    Plaintiffs and the other Class Members were injured and suffered ascertainable loss, injury in act, and/or actual damages as a proximate result of Defendants' conduct in that Plaintiffs and the other Class Members overpaid for their Class Vehicles, did not get the benefit of their bargain, their Class Vehicles have suffered a diminution in value, and their vehicles are equipped with a defective wiring harness. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

945.    Defendants' violations present a continuing risk to Plaintiffs as well as the other Class Members and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

946.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and Class Members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiffs and each Utah Class Member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

### COUNT FORTY-EIGHT
### BREACH OF IMPLIED WARRANTY
### (UTAH CODE ANN. § 70A-2-314)

947.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

948.    Plaintiffs bring this claim on behalf of the Utah Class.

949.    Defendants were merchants with respect to motor vehicles within the meaning of Utah Code Ann. § 70A-2-314.

950.    Under Utah Code Ann. § 70A-2-314, a warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs and Class members purchased or leased their Class Vehicle from Defendants.

951.    These Vehicles, when sold and at all times thereafter, were not in

merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect in the Vehicles' wiring harnesses render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class members would not have purchased the Vehicles had they known of the Defect.

952.    Defendants knew about the Defect at the time of purchase, allowing Defendants to cure their breach of warranty if they chose.

953.    Defendants were provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

954.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Utah Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT FORTY-NINE
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. §§ 59.1-196, et seq.)

955.    Plaintiff Tina Grove ("Plaintiff" for purposes of all Virginia Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

956.    This claim is brought on behalf of the Virginia Class.

957.    The Virginia Consumer Protection Act prohibits "(14) using any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A).

958.    Volkswagen is a "person" as defined by Va. Code Ann. § 59.1-198.

959.    The transactions between Plaintiff and the other Class members on one hand and Volkswagen on the other, leading to the purchase or lease of the Vehicles by Plaintiff and the other Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

960.    In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false

pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith. Accordingly, Volkswagen engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including engaging in conduct likely to deceive.

961.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

962.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not aware of this defect prior to purchase or lease.

963.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

964.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

965.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

966.    Volkswagen knew or should have known that its conduct violated this statute.

967.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth regarding the Defect because the defect affects the safety of the vehicles and/or because Volkswagen: Possessed superior/exclusive knowledge of the design of the Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or intentionally concealed the Defect from Plaintiff and the Class.

968.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

969.    Plaintiffs and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

970.    Volkswagen's violations present a continuing risk to Plaintiff as well

as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

971.    Volkswagen Defective Vehicle owners were also harmed by Volkswagen's unfair and deceptive trade practices since their vehicles were worth less as the result of Volkswagen's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

972.    Volkswagen's concealment of the Defect in Plaintiff's vehicles was material to Plaintiff.

973.    Volkswagen violated the Virginia Consumer Protection Act by concealing and failing to disclose the Defect. Volkswagen had an ongoing duty to Plaintiff and the Virginia Class to refrain from unfair and deceptive practices under the Virginia Consumer Protection in the course of its business.

974.    Plaintiff and the Virginia Class suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the Defect in their Vehicles.

975.    As a direct and proximate result of Volkswagen's violations of the Virginia Consumer Protection, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Volkswagen's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their

vehicles.

976.     Volkswagen actively and willfully concealed and/or suppressed the material facts regarding the defective and unreasonably dangerous nature of the Defect and the Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiff and the other Class members and to induce Plaintiff and the other Class members to purchase or lease Vehicles at a higher price, which did not match the Vehicles' true value. Plaintiff and the other Virginia Class members therefore seek treble damages.

**COUNT FIFTY**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(VA. CODE ANN. § 8.2-314)**

977.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

978.     Plaintiff brings this claim on behalf of the Virginia Class.

979.     Volkswagen is and was at all relevant times a merchant with respect to motor vehicles.

980.     A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant in the instant transactions.

981.     These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

243

used. Specifically, the Vehicles are defective in that the Defect in the Vehicles' wiring harness renders certain crucial safety and other functions inoperative such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the Defect.

982.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

983.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Virginia Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT FIFTY-ONE**
**VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT**
**(RCW 19.86)**

984.    Plaintiff Mary Koelzer ("Plaintiff" for purposes of all Washington Class Counts) incorporates by reference all preceding paragraphs as though fully set forth herein.

985.    This claim is brought on behalf of the Washington Class.

986.    The Washington Consumer Protection Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce are hereby declared unlawful." RCW 19.86.020

987.    Volkswagen is a "person" under RCW 19.86.010(1).

988.    The transactions between Plaintiff and the other Class members on one hand and Volkswagen on the other, leading to the purchase or lease of the Vehicles by Plaintiff and the other Class members, constitute "trade" and "commerce" as defined by RCW 19.86.010(2).

989.    In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in the Vehicles. Particularly in light of the representations in Volkswagen's Owner's Manual, and in its national advertising campaign touting the safety and reliability of the Vehicles, a reasonable American consumer would expect the Vehicles to operate without known safety hazards. Accordingly, Volkswagen engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Volkswagen's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith. Accordingly, Volkswagen engaged in acts and practices violating RCW 19.86.020, including engaging in conduct likely to deceive.

245

990.    In purchasing or leasing the Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the wiring harness in the Vehicles were defective and would fail without warning.

991.    Plaintiff and Class members reasonably relied upon Volkswagen's misrepresentations and had no way of knowing that said representations were false and gravely misleading. As alleged herein, Volkswagen engaged in sophisticated methods of deception. Plaintiffs and class members did not, and could not, unravel Volkswagen's deception on their own. Plaintiffs and other class members were not aware of this defect prior to purchase or lease.

992.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

993.    Volkswagen's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

994.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the Class.

995.    Volkswagen knew or should have known that its conduct violated this statute.

996.    Volkswagen owed Plaintiff and the Class a duty to disclose the truth regarding the Defect because the defect affects the safety of the vehicles and/or because Volkswagen: Possessed superior/exclusive knowledge of the design of the

Vehicles; Made incomplete representations regarding the safety and durability of the Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations; and/or intentionally concealed the Defect from Plaintiff and the Class.

997.    Volkswagen's conduct proximately caused injuries to Plaintiff and the other Class members. Plaintiff and class members are reasonable consumers who do not expect that the wiring harnesses installed in their vehicles would be defective, and fail without warning. This is a reasonable and objective consumer expectation relating to the Vehicles.

998.    Plaintiffs and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Volkswagen's conduct in that Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

999.    Volkswagen's violations present a continuing risk to Plaintiff as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

1000.    Volkswagen Defective Vehicle owners were also harmed by Volkswagen's unfair and deceptive trade practices since their vehicles were worth less as the result of Volkswagen's concealment of, and failure to remedy, the Defect.

This diminished value is directly attributed to Volkswagen's dishonesty and omissions with respect to the quality and safety of the Vehicles.

1001.    Volkswagen's concealment of the Defect in Plaintiff's vehicle was material to Plaintiff.

1002.    Volkswagen violated the Washington Consumer Protection Act by concealing and failing to disclose the Defect. Volkswagen had an ongoing duty to Plaintiff and the Washington Class to refrain from unfair and deceptive practices under the Washington Consumer Protection in the course of its business.

1003.    Plaintiff and the Washington Class suffered ascertainable loss caused by Volkswagen's omissions and its concealment of and failure to disclose the Defect in their Vehicles.

1004.    As a direct and proximate result of Volkswagen's violations of the Washington Consumer Protection, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Volkswagen's misconduct, all Plaintiffs incurred damages in at least the form of lost time required to repair their vehicles.

1005.    Volkswagen actively and willfully concealed and/or suppressed the material facts regarding the defective and unreasonably dangerous nature of the Defect and the Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiff and the other Class members and to induce Plaintiff and the other Class

members to purchase or lease Vehicles at a higher price, which did not match the Vehicles' true value. Plaintiff and the other Washington Class members therefore seek treble damages.

## COUNT FIFTY-TWO
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (RCW 62A.2-314)

1006.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1007.    Plaintiff brings this claim on behalf of the Washington Class.

1008.    Volkswagen is and was at all relevant times a merchant with respect to motor vehicles.

1009.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant in the instant transactions.

1010.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect in the Vehicles' wiring harness renders certain crucial safety and other functions inoperative such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the Defect.

1011.    Volkswagen was provided notice of these issues by numerous

complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

1012.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Washington Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT FIFTY-THREE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(W. VA. CODE ANN. § 46-2-314)[9]**

1013.    Plaintiff Mark Stevens ("Plaintiff" for purposes of all West Virginia Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

1014.    Plaintiff brings this claim on behalf of the West Virginia Class.

1015.    Volkswagen is and was at all relevant times a merchant with respect to motor vehicles.

1016.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant in

---

[9] Plaintiffs reserve their right to bring additional claims under the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. § 46a-6-101, *Et Seq.*) following the expiration of the 'Right to Cure' period under W. Va. Code Ann. § §46A-5-108(a).

the instant transactions.

1017.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the Defect in the Vehicles' wiring harness renders certain crucial safety and other functions inoperative such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the Defect.

1018.    Volkswagen was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

1019.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other West Virginia Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**COUNT FIFTY-FOUR**
**VIOLATIONS OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**(WIS. STAT. § 110.18)**

1020.    Plaintiff Scott Carter ("Plaintiff" for purposes of all Wisconsin Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

1021.    Plaintiff brings this claim on behalf of the Wisconsin Class.

1022.   VW is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

1023.   Plaintiff and Wisconsin Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

1024.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

1025.   By concealing and failing to disclose the Defect, VW violated the Wisconsin DTPA. VW had an ongoing duty to Plaintiff and the other Wisconsin Class members to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of its business.

1026.   Plaintiff and the other Wisconsin Class members suffered ascertainable loss and actual damages as a direct and proximate result of VW's concealments, misrepresentations, and/or failure to disclose material information concerning the Defect.

1027.   Because VW's conduct caused injury to Plaintiff's and the Wisconsin Class members' property through violations of the Wisconsin DTPA, Plaintiff and the Class members are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2), punitive damages, an order enjoining VW's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other

252

just and proper relief available under the Wisconsin DTPA.

## COUNT FIFTY-FIVE
## FRAUDULENT CONCEALMENT
## (BASED ON WISCONSIN LAW)

1028.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1029.    Plaintiff brings this claim on behalf of the Wisconsin Class.

1030.    VW intentionally concealed the Defect.

1031.    VW further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling did not have the Defect, that the vehicles were safe, reliable, and would perform and operate properly.

1032.    VW knew about the Defect when these representations were made.

1033.    The Vehicles purchased by Plaintiff and the other Wisconsin Class members contained the Defect.

1034.    VW had a duty to disclose that the Defect created a safety hazard and Plaintiff and the other Wisconsin Class members relied on VW's material representations.

1035.    As alleged herein, at all relevant times, VW has held out the Vehicles to be free from the Defect. VW touted and continues to tout the many benefits and

advantages of the vehicles and their safety systems, but nonetheless failed to disclose important facts related to the Defect. This made VW's other disclosures about the vehicle deceptive.

1036.   The truth about the Defect was known only to VW; Plaintiff and the other Wisconsin Class members did not know of these facts and VW actively concealed these facts from Plaintiff and the other Wisconsin Class members.

1037.   Plaintiff and the other Wisconsin Class members reasonably relied upon VW's deception. They had no way of knowing that VW's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Wisconsin Class members did not, and could not, unravel VW's deception on their own. Rather, VW intended to deceive Plaintiff and Wisconsin Class members.

1038.   VW's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles, such as their safety to drive.

1039.   VW had a duty to disclose the Defect with respect to the Vehicles because details of the true facts were known and/or accessible only to VW, because VW had exclusive knowledge as to such facts, and because VW knew these facts were not known to or reasonably discoverable by Plaintiff or the other Wisconsin Class members.

1040.   VW also had a duty to disclose because it made general affirmative

254

representations about the technological and safety innovations included with its Vehicles, without telling consumers that a Defect was a fundamental defect that would affect the safety, quality and performance of the Vehicles.

1041. VW's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiff and the other Wisconsin Class members.

1042. VW has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Wisconsin Class members by concealing material information regarding the Defect.

1043. Plaintiff and the other Wisconsin Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased or paid as much for cars with a material defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Wisconsin Class members' actions were justified. VW was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the other Wisconsin Class members.

1044. Because of the concealment and/or suppression of facts, Plaintiff and

the other Wisconsin Class members sustained damage because they purchased or leased vehicles that are diminished in value as a result of VW's concealment of the true quality of those vehicles which contain a Defect. Had Plaintiff and the other Wisconsin Class members been aware of the Defect, and VW's disregard for the truth, Plaintiff and the other Wisconsin Class members who purchased a Vehicle would have paid less for them or would not have purchased them at all.

1045.    The value of Plaintiff's and the other Wisconsin Class members' Vehicles has diminished as a result of VW's fraudulent concealment of the Defect, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

1046.    Accordingly, VW is liable to Plaintiff and the other Wisconsin Class members for damages in an amount to be proven at trial.

1047.    VW's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Wisconsin Class members' rights and the representations that VW made to them, in order to enrich VW. VW's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT FIFTY-SIX**
**BREACH OF IMPLIED WARRANTY**
**(WIS. STAT. § 402.314)**

256

1048.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1049.    Plaintiff brings this claim on behalf of the Wisconsin Class.

1050.    VW is and was at all relevant times a merchant with respect to motor vehicles.

1051.    A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1052.    The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles contain a Defect rendering the Vehicles unsafe and prevent users from enjoying many of the Vehicles' features that Class members paid for.

1053.    VW was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

1054.    As a direct and proximate result of VW's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendants as follows:

(A)    certifying the proposed Nationwide Class and State Sub-Classes;

(B)    appointing Plaintiffs and their counsel to represent the Classes;

(C)    ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(D)    awarding compensatory, punitive, exemplary, and other recoverable damages;

(E)    awarding reasonable attorneys' fees and expenses;

(F)    awarding pre-judgment and post-judgment interest; and

(G)    awarding such other and further relief this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: August 5, 2022

Respectfully submitted,

/s/ James E. Cecchi

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio  45242
Telephone: (513) 345-8291
Facsimile:  (513) 345-8294
jgoldenberg@gs-legal.com

James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

Sean K. Collins*
**LAW OFFICES OF SEAN K.
COLLINS**
184 High Street, Suite 503
Boston, MA 02110
Telephone: (855) 693-9256
Facsimile:  (617) 227-2843
sean@neinsurancelaw.com

Steve W. Berman*
Sean R. Matt*
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Sergei Lemberg+
**LEMBERG LAW**
43 Danbury Road,
Wilton, Connecticut 06897
Telephone: (203) 653-2250
slemberg@lemberglaw.com

*Counsel for Plaintiffs and the Proposed
Classes*

\* To be admitted *pro hac vice*
+ Admitted *pro hac vice*

259