<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PRICE MCMAHON, LISA BULTMAN, MICHAEL MCKARRY, DAVID WABAKKEN, MOHAMED HASSAN, CHRISTINA MERRILL, ERIC LEVINE, PATRICK & MARCIA DONAHUE, DEBBIE BROWN, CAROL RADICE, TERRENCE BERRY, AMANDA GREEN, DAVID WILDHAGEN, KATY DOYLE, TASHIA CLENDANIEL, HOGAN POPKESS, KORY WHEELER, HARRY O'BOYLE, JOE RAMAGLI, ERIC KOVALIK, CHARLES HILLIER, LABRANDA SHELTON, ADAM & MALLORY MOORE, TINA GROVE, KEECH ARNSTEN, SCOTT CARTER, MIKE SHERROD, CHRISTI JOHNSON, MARY KOELZER, AND MARK STEVENS, *Individually and on behalf of all others similarly situated*,<br><br>                                        Plaintiffs,<br><br>            v.<br><br>VOLKSWAGEN AKTIENGESELLSCHAFT, VOLKSWAGEN GROUP OF AMERICA, INC., AND VOLKSWAGEN GROUP OF AMERICA CHATANOOGA OPERATIONS, LLC,<br><br>                                        Defendants. | Case No. 22cv01537 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

This putative class action arises from an alleged defect in certain models and makes of Volkswagen vehicles.  Plaintiffs, consumers who either purchased or leased one such vehicle, sued three Defendants: Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen Aktiengesellschaft ("VWAG"), and Volkswagen Group of America Chattanooga Operations, LLC

("VWCOL").  *See* D.E. 26 (the Amended Consolidated Complaint, or "ACC").  Defendants separately move to dismiss the claims against them.  *See* D.E. 45 ("VWGoA Mot."), D.E. 54 ("VWAG Mot."), D.E. 58 ("VWCOL Mot.").  Plaintiffs oppose all three motions.  *See* D.E. 45 ("Opp'n to VWGoA"), D.E. 59 ("Opp'n to VWAG"), and D.E. 60 ("VWCOL Reply").  Defendants replied.  *See* D.E. 51 ("VWGoA Reply"), D.E. 61 ("VWAG Reply"), D.E. 66 ("VWCOL Reply").  The Court decides all three motions without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b).  For the reasons below, Defendants' motions will be **GRANTED in part** and **DENIED in part**.[1]

## I.    BACKGROUND[2]

This putative class action arises from an alleged front-door wiring harness defect ("Defect") present in model years 2019-2023 Volkswagen Atlas and 2020-2023 Volkswagen Atlas Cross Sport vehicles (collectively, "Vehicles") that Defendants collectively designed, manufactured, marketed, distributed, sold, warranted, and serviced. ACC ⁋ 1.  Defendants are: "(1) VWGoA, a NJ corporation with its principal place of business in Herndon, V[irginia]; (2) [VWAG], a German corporation with its principal place of business in Wolfsburg, Germany; and (3) [VWCOL], a T[ennessee] limited liability corporation having its principal place of business in Chattanooga, T[ennessee]."  VWGoA Mot. at 6.

Plaintiffs are consumers who either purchased or leased a Vehicle.  ACC ⁋ 8.  The Defect allegedly caused multiple issues throughout the Vehicles, such as "the parking brake systems unexpectedly engag[ing] for no reason, windows randomly open[ing] and clos[ing] on their own,

---

[1] All dismissals of Plaintiffs' claims are without prejudice.  This is the first complaint after two cases were consolidated and the Court will allow Plaintiffs an opportunity to cure any pleading deficiencies.

[2] This section derives mainly from the ACC. On a motion to dismiss, the Court takes all well-pled facts as true.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

. . . the Vehicles display[ing] error messages and emit[ting] warning noises[,] . . . [and] the Vehicles' airbags . . . fail[ing] to deploy properly." *Id.* ¶ 2. Plaintiffs state that (1) "[t]he Defect poses a safety risk because when a Vehicle brakes unexpectedly, it poses a danger to not only its driver and passengers but also to others in traffic"; (2) "unexpected noises can cause the driver to become distracted"; and (3) "[t]he Defect can also cause safety-related systems (including airbags) to fail . . . ." *Id.* ¶ 3.

Some Plaintiffs complained about the Defect to authorized Volkswagen dealerships and sought repair. *Id.* ¶ 6. "When owners complain about the Defect and seek a repair[,] they are often told parts are unavailable" and "often have to wait months for replacement harnesses." *Id.* Defendants also "do not consistently provide loaner vehicles[,]" causing owners to "choose whether to continue driving the dangerous Vehicles while waiting for replacement parts, or cease using their vehicle for months until replacement parts become available." *Id.* Further, "when replacement harnesses finally become available and Defendants attempt to repair the Vehicles, Defendants simply replace defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement." *Id.*

Plaintiffs also state that Defendants knew of the Defect prior to Plaintiffs purchasing or leasing their Vehicles, yet "failed to disclose and actively concealed" the Defect from the public. *Id.* ¶ 283. Allegedly, Defendants had "multiple sources" evidencing the Defect, such as "pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendants, collected by NHSTA, and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources." *Id.*

On March 18, 2022, Plaintiffs Sherrod (the named Plaintiff) and Fulbright filed the initial class action complaint, bringing claims on behalf of Tennessee, Texas, and nationwide classes.[3] D.E. 1 at 37.  The initial class action complaint only brought claims against VWGoA.  *See id.*  On July 19, 2022, this Court consolidated this case with a separate pending class action, brought by other plaintiffs against VWGoA, VWAG, and VWCOL, involving the same Defect.  D.E. 16.

VWGoA issued a recall for the Vehicles on March 28, 2022.  *Id.* ℙ 7.  This recall "publicly admitted" that there is "no solution to the Defect" because the recall states that VWGoA sent "interim notification letters" to Vehicle owners on May 10, 2022, "informing them of the safety risk and promising to send a second notification *once the remedy becomes available.*"  *Id.* (internal quotation marks omitted) (emphasis added).  Defendants state that on June 22, 2022, the remedy became available and notice was provided to consumers.  VWGoA Mot. at 1.  The remedy is administered "under the . . . supervision of the National Highway Traffic Safety Administration" (NHSTA), and Defendants allege that, as of the date of the motion, "nine of the Plaintiffs[4] . . . have already had the free recall repair remedy performed on their vehicles . . . ."  *Id.* at 2.  Plaintiffs, however, claim the recall is insufficient because Defendants continue to replace defective parts with defective parts.  ACC ℙ 6.

 On August 5, 2022, Plaintiffs filed the ACC, which asserted claims from 32 named Plaintiffs against VWGoA, VWAG, and VWCOL.  *See generally* ACC.  The ACC alleges 56

---

[3] Breach of Implied and Express Warranties Pursuant to the Manguson-Moss Warranty Act (Count One), Fraudulent Concealment (Count Two), Unjust Enrichment (Count Three), Violation of the Tennessee Consumer Protection Act (Count Four), Breach of the Implied Warranty of Merchantability Pursuant to Tennessee Law (Count Five), Breach of Express Warranty Pursuant to Tennessee Law (Count Six), Violation of the Texas Deceptive Practices Act (Count Seven), Breach of the Implied Warranty of Merchantability Pursuant to Texas Law (Count Eight), and Breach of Express Warranty Pursuant to Texas Law (Count Nine).  *See generally* D.E. 1.

[4] Plaintiffs Sherrod, McMahon, Carter, Stevens, Hassan, Levine, Brown, Ramagli, and Kovalik.

counts in federal and state law brought on behalf of the named Plaintiffs, unnamed individuals in the states the named Plaintiffs seek to represent, and a nationwide class. *See generally id.* These counts are: (1) Breach of Implied Warranty, Manguson-Moss Warranty Act (MMWA), § 15 U.S.C. 2301; (2) statutory and common law consumer fraud claims;[5] and (3) breach of implied warranty of merchantability claims.[6] *See* ACC.

On September 16, 2022, VWGoA moved to dismiss all Plaintiffs' claims against it under Federal Rules of Procedure 12(b)(1), (2), and (6). VWGoA Mot. On December 2, 2022, VWAG moved to dismiss all Plaintiffs' claims against it, adopting and expanding on VWGoA's arguments as applied to VWAG. VWAG Mot. Then, on December 20, 2022, VWCOL moved to dismiss all Plaintiffs' claims against it, and, like VWAG, adopted and expanded on VWGoA's arguments; additionally VWCOL moved for dismissal under Federal Rule of Procedure 12(b)(2) for lack of jurisdiction. VWCOL Mot.

Plaintiffs oppose all three motions to dismiss. *See* Opp'n to VWGoA, Opp'n to VWAG, and Opp'n to VWCOL. Defendants filed replies in each instance. *See* VWGoA Reply, VWAG Reply, and VWCOL Reply.

## II.    LEGAL STANDARDS

### A.  Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled

---

[5] Arizona, California, Colorado, Georgia, Illinois, Louisiana, Maine, Maryland, Massachusetts, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin.
[6] Same states as previous claim.

to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Fraud-based claims, however, are "'subject to heightened specificity requirements.'" *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 225 (D.N.J. 2020) (quoting *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005)). For these claims, Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[S]ome measure of substantiation" is required. *Ponzio*, 447 F. Supp. 3d at 225 (internal quotation marks omitted). "At a minimum, a plaintiff 'must allege who made a misrepresentation to whom and the general content of the misrepresentation.'" *Id.* at 226 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

### B. Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2)

A defendant can move to dismiss for lack of jurisdiction under Federal Rule of Procedure 12(b)(2). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided

6

under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cali., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). A defendant can move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Once this defense is raised, the plaintiffs must "prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Finegold v. General Motors Co.*, 2023 WL 2384460, at *2 (D.N.J. Mar. 6, 2023).

A court has general jurisdiction over a corporate defendant where it "is fairly regarded as at home[,]" which is generally a corporation's place of incorporation and principle place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb*, 582 U.S. at 262 (emphasis in original).

However, "[i]n order for a court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* (emphasis in original) (cleaned up). The Third Circuit uses a three-part test to determine if specific jurisdiction exists. First, the threshold requirement for specific jurisdiction is that the defendant must have purposefully directed [its] activities at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). This requires a defendant's "deliberate targeting of the forum." *Id.* "Unilateral activity of those who claim some relationship with a nonresident defendant is insufficient[,] . . . [a]nd contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* (cleaned up). "[R]andom, isolated, or fortuitous" contacts are insufficient. *Keeton v. Hustler Magazine, Inc.*, 464 U.S. 770, 774 (1984). If the first requirement is met, then a court may consider "[s]econd, [whether] the litigation . . .

arise[s] out of or relate[s] to at least one of those activities." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted). "And third, [only if] the prior two requirements are met, [then] a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Id.*

### C.  Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), may be raised at any time. *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *2 (D.N.J. Mar. 31, 2008).  Challenges to a court's subject matter jurisdiction are considered "factual attack[s]." *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (contrasting to a Rule 12(b)(6) challenge, which attacks the facial plausibility of a complaint).  "Because at issue in a factual 12(b)(1) motion is the trial court's . . . power to hear the case[,] . . . the trial court is free to weigh the evidence . . . [and] no presumptive truthfulness attaches to plaintiff's allegations . . . ." *Id.*

A motion to dismiss for lack of standing is "property brought pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1)." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (cleaned up).  "Article III governs constitutional standing and limits [federal courts'] jurisdiction to actual cases or controversies." *Neal v. Volvo Cars of North Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015) (internal quotation marks omitted).  A plaintiff can establish that their case presents a controversy, and, consequently, that they have standing, by demonstrating: (1) an injury in fact, (2) a sufficient causal connection between the injury claimed and the conduct complained of, and (3) a likelihood that a favorable decision would redress the party's complained-of injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

III.    **ANALYSIS**

A.  **Plaintiffs Marcia Donahue and Mallory Moore Withdraw Their Claims**

Defendants argue that Plaintiffs Marcia Donahue and Mallory Moore lack standing to assert their claims.  VWGoA Mot. at 9-10.  These Plaintiffs have withdrawn their claims (Donahue: Counts 1, 14, and 15; Moore: Counts 1, 47, 48).  Opp'n to VWGoA at 1 n.1.  As such, the Court will not discuss these Plaintiffs' claims further.[7]

B.  **The Court Cannot Currently Exercise Jurisdiction Over VWCOL and Jurisdictional Discovery is Warranted**

VWCOL argues that the Court cannot exercise jurisdiction over it.  *See* VWCOL Mot. at 9; Fed. R. Civ. P. 12(b)(2).  Because Plaintiffs concede this Court cannot exercise general jurisdiction over VWCOL, the Court only considers whether specific jurisdiction exists.  *See* Opp'n to VWCOL at 1 (conceding).

1.  *Plaintiffs Do Not Demonstrate that VWCOL Purposefully Directed Its Activities at New Jersey*

VWCOL argues it did not purposefully direct activities at New Jersey.  First, it notes that it is a Tennessee corporation with its principal place of business in Chattanooga, Tennessee. VWCOL Mot. at 9.  VWCOL also argues it "does not, and did not, market, advertise, distribute, issue any warranties for, service, or repair the subject vehicles, or any vehicles for that matter, and conducted no such activities in the State of New Jersey."  *Id.* at 9-10 (citations omitted).  Further, VWCOL argues it "did not, and does not, (i) sell, transfer, lease or deliver any vehicles, including the subject vehicles, in or into the State of New Jersey, (ii) maintain any offices, facilities or places of business in New Jersey, (iii) have any employees in New Jersey, (iv) conduct any business

---

[7] Future references to Plaintiff Donahue and Plaintiff Moore refer to the spouses of M. Donahue and M. Moore, who bring the same claims, respectively.  *See* ACC.

9

operations in New Jersey, (v) own, lease, occupy or maintain any real property in New Jersey, [or] (vi) maintain any bank accounts, personal property, or pay taxes, in New Jersey." *Id.* at 10 (citations omitted). "Furthermore, VWCOL did not and does not have any dealerships at all, let alone any located in New Jersey, and has never sold or delivered vehicles to any dealerships in or outside New Jersey[,] . . . been registered to do business in New Jersey, [or] ha[ve any] registered agents in New Jersey." *Id.* (citations omitted).

Plaintiffs respond that VWCOL is subject to specific jurisdiction in New Jersey because "VWCOL, contracting with and acting through its New Jersey-based distributor, [Wallenius Wilhelmsen Logistics Americas LLC ("WWL"),] made purposeful and considerable efforts to ensure that Defendants' vehicles [were] distributed in a way that deliberately targeted New Jersey." Opp'n to VWCOL at 14. Plaintiffs also claim that WWL (1) prepares the vehicles manufactured by VWCOL for distribution and shipment to dealerships in New Jersey and other states and (2) checks vehicles for compliance with local regulations. *Id.* And, according to Plaintiffs, "[o]ther courts also exercise jurisdiction over automakers that, like here, purposely avail themselves of the jurisdiction by widely distributing their cars." *Id.* (citing cases).

However, VWCOL argues that "there has never been any contract between VWCOL and WWL, there has never been any corporate or business relationship between VWCOL and WWL, and VWCOL has never engaged any services from WWL." VWCOL Reply at 2. And, even if such a contract did exist, VWCOL maintains "this would still be insufficient to confer personal jurisdiction over VWCOL in New Jersey." *Id.* at 4.

The Court finds that at this juncture, without jurisdictional discovery, it cannot determine that it has specific jurisdiction over VWCOL.

First, Plaintiffs' main argument that this Court can exercise specific jurisdiction relies on an alleged contract with WWL.  *See* Opp'n to VWCOL at 14.  However, Plaintiffs' support for this allegation consists solely of a declaration from their attorney and non-probative internet articles, such as a 2021 annual report from WWL that states it "work[s] with major manufacturers of cars . . . such as . . . Volkswagen."  *Id.* at 3, 5.  VWCOL denies the existence of this contract. *See* VWCOL Reply at 1-11.  Because Plaintiffs' argument relies on the existence of this contract, without more than mere conclusory allegations to establish the contract exists, the Court cannot presently exercise specific jurisdiction over VWCOL.  Opp'n to VWCOL at 14; *see also Finegold*, 2023 WL 2384460, at *2 (personal jurisdiction must be proven by a preponderance of the evidence).

However, even if such a contract existed, at this stage, the Court still could not exercise specific jurisdiction.  Plaintiffs essentially argue that because WWL distributes some vehicles to New Jersey, that VWCOL must have necessarily targeted New Jersey.  Opp'n to VWCOL at 14. However, jurisdiction "must arise out of contacts that the *defendant* creates with the forum."  *Rose v. Ferrari North Am., Inc.*, 2022 WL 14558880, at *5 (D.N.J. Oct. 25, 2022) (cleaned up) (emphasis added).  Though in some cases, a manufacturer's placement of a product into the stream of commerce can support jurisdiction, Plaintiffs must still "adequately tie [VWCOL's] actions to [New Jersey] and the underlying claims" beyond fortuitous contacts and unilateral actions of a forum-based company, WWL.  *Id.*; *see also Keeton*, 464 U.S. at 774 ("[R]andom, isolated, or fortuitous" contacts cannot establish specific jurisdiction.); *Finegold*, 2023 WL 2384460, at *3 ("The focus of the inquiry is [the defendant's] contacts with New Jersey, not [the defendant's] contacts with third parties" who are citizens of the state.); *Gutierrez v. Medtronic plc*, 2023 WL 376014, at *10 (D.N.J. Jan. 5, 2023) (internal quotation marks omitted) (merely "intend[ing] that

[one's] voluminous product line be distributed and sold through [a] subsidiary . . . to multiple end users throughout New Jersey" does not create specific jurisdiction).

Plaintiffs fail to allege any additional facts beyond that some of the products VWCOL manufactures are distributed in New Jersey through WWL.  Plaintiffs argue this is enough, but the cases they cite in support are disanalogous or do not support finding jurisdiction.  First, in *Rickman v. BMW of North Am. LLC*, the plaintiffs alleged additional facts related to the coordinated efforts of marketing and campaigning the product, not just the manufacturing and distribution of a product, which is all Plaintiffs here allege.  538 F. Supp. 3d 429, 436 (D.N.J. 2021).  Likewise, in *Opheim v. Volkswagen Aktiengesellschaft*, the plaintiffs provided a specific "Importer Agreement . . . [that] evince[d] a collaborative relationship" between an Audi affiliate and a New Jersey corporation.  2021 WL 2621689, at *3 (D.N.J. June 25, 2021).  Plaintiffs provide no such evidence. And, in *Levy v. Jaguar Land Rover North Am., LLC*, the Court found the websites provided unpersuasive and that it *lacked* specific jurisdiction because the plaintiffs "provide[d] only conclusory allegations" as to "the possible existence of the requisite contacts between [the party] and the forum state[.]"  2020 WL 563637, at *7 (D.N.J. Feb. 4, 2020) (cleaned up).  Here, Plaintiffs' evidence that WWL works with Volkswagen does not support that VWCOL deliberately targeted New Jersey in doing so.

Without more, Plaintiffs' conclusory allegation that VWCOL "deliberately targeted" New Jersey is insufficient to establish personal jurisdiction.  *Id.*

    2.  *The Court Will Grant Plaintiffs' Request for Jurisdictional Discovery on an Expedited Schedule*

 "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456

(3d Cir. 2003) (quoting *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)).  Jurisdictional discovery is "particularly appropriate where a defendant is a corporation."  *Rocke v. Pebble Beach Co.*, 541 Fed. App'x 208, 212 (3d Cir. 2013).  But, the plaintiff must still "present[] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state . . . ."  *Laverty v. Cox Enterprises, Inc.*, 2019 WL 351905, at \*5 (D.N.J. Jan. 29, 2019) (cleaned up) (quoting *Toys "R" Us*, 318 F.3d at 456.  A plaintiff cannot use jurisdictional discovery to "'undertake a fishing expedition based only upon bare allegations.'"  *Id.* (quoting *Eurofins Pharma Us Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

Plaintiffs argue jurisdictional discovery is warranted "[g]iven the evidence that Plaintiffs have adduced thus far concerning the distribution scheme that VWCOL has arranged with . . . WWL, as well as other evidence indicating that WWL significantly assists Defendants in distributing V[olkswagen] vehicles throughout the United States . . . ."  Opp'n to VWCOL at 32.  However, Plaintiffs do not allege VWCOL exercises any level of control over WWL, only that WWL eventually places VWCOL's products into the stream of commerce, which, sometimes, end up in New Jersey.  Plaintiffs only allege that "Defendants have marketed, advertised, sold, and/or leased the Vehicles within [New Jersey] through numerous dealers doing business in the District."  ACC ⁋ 10.

However, the Court will still grant jurisdictional discovery, though it shall proceed on an expedited schedule.  Though Plaintiffs' allegations are mainly conclusory, this case has undergone little discovery and, as the Court later discusses, involves a complex corporate structure between the three Defendants.[8]  The Court is hesitant to say that at this early stage of litigation, Plaintiffs

---

[8] *See* Section D: Plaintiffs Did Not Engage in Impermissible Group Pleading.

allegations are clearly frivolous. *See Opheim*, 2021 WL 2621689, at *6 (erring on the side of caution when a court cannot "resolve its jurisdiction over a key defendant based on allegations and preliminary facts"). Essentially, "the Court cannot conclude, upon this record, that Plaintiffs have presented *no* factual allegations that suggest with reasonable particularity the *conceivable* existence of the requisite contacts between Defendant[] and the forum state." *Marchionda v. Embassy Suites, Inc.*, 122 F. Supp. 3d 208, 211 (D.N.J. 2015) (emphasis in original) (allowing for limited jurisdictional discovery even though the plaintiffs' allegations were "entirely conclusory" because the action involved "well-known and large corporate entities, with numerous corporate forms, and operations wide in scope"); *see also Renner v. Lanards Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994) (permitting jurisdictional discovery where there was no "opportunity for the normal discovery process"). At the very least, Plaintiffs allege that VWCOL conducts some level of business with WWL, a forum-based company, and that VWCOL is potentially intertwined with the other two Defendants in the marketing and selling of the Vehicles. For now, this is enough.

Accordingly, the Court will **GRANT** the Plaintiffs' request for jurisdictional discovery, which shall proceed on an expedited schedule. As such, the Court will **DENY** VWCOL's motion to dismiss all claims against it without prejudice, allowing renewal of the motion pending the conclusion of jurisdictional discovery.[9]

---

[9] Because it is too early for the Court to determine if it has jurisdiction over VWCOL, the Court will refrain from ruling on VWCOL's other bases for dismissal. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (discussing how the Due Process Clause protects a party from being subject to suits where jurisdiction is not found). In addition to adopting VWGoA's motion, VWCOL argued that the ACC lacks pre-suit notice, privity, and facts regarding fraud, as to VWCOL. *See generally* VWCOL Mot.

### C. The MMWA Claims Fail for Lack of Subject Matter Jurisdiction

VWGoA and VWAG argue that this Court lacks subject matter jurisdiction over the Plaintiffs' MMWA claims. VWGoA Mot. at 19. The MMWA vests jurisdiction "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection[,]" which requires plaintiffs to satisfy three elements: (1) the amount in controversy for each plaintiff exceeds $25, (2) the total amount in controversy exceeds $50,000, and (3) "the number of named plaintiffs is at least 100." 15 U.S.C. § 2310(d)(1)-(3).

Plaintiffs do not dispute that there are less than 100 named Plaintiffs in this case. VWGoA Mot. at 19; Opp'n to VWGoA at 31-32.[10] Instead, Plaintiffs argue that because there is a split among authority on this issue, and because the Third Circuit has yet to address it, the Court should side with the authority finding subject matter jurisdiction exists where a court would otherwise have jurisdiction under the Class Action Fairness Act (CAFA). Opp'n to VWGoA at 31-32. These courts find that the relationship between the MMWA and the exceptions found in CAFA results allows the court to exercise subject matter jurisdiction over MMWA claims when there are less than 100 named plaintiffs. *See id.*

However, this District has routinely relied on the Ninth Circuit's decision in *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020), which held that "jurisdiction does not exist under these circumstances." *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307 at *9 (D.N.J. Mar. 10, 2022) (citing *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *19 (D.N.J. Mar. 31, 2021) and *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 884-85 (D.N.J. 2020)). Indeed, "every court in this District to address *Floyd* has followed its reasoning." *Kavon*

---

[10] There are only 32 named Plaintiffs. VWGoA Mot. at 19; *see generally* ACC.

*v. BMW of North Am., LLC*, 605 F. Supp. 3d 622, 631 (D.N.J. 2022).  As such, this Court lacks jurisdiction over the MMWA claims because there are less than 100 named Plaintiffs.  *See Floyd*, 966 F.3d at 1035; *Cohen*, 2022 WL 721307, at *9.

Accordingly, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** Plaintiffs' MMWA claims.[11]

### D.  The Nationwide Claims Lack Standing

VWGoA and VWAG argue that Plaintiffs cannot bring a claim on behalf of individuals in states in which no named Plaintiff suffered injury.[12]  VWGoA Mot. at 8-9.  Plaintiffs argue that this argument is "'better understood as a motion to strike allegations under Rule 12(f) or as a premature motion to deny class certification under Rule 23,' and should therefore be considered at the class certificate stage, not via a motion to dismiss."  Opp'n to VWGoA at 13-14 (quoting *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021)).

"[T]here is disagreement in this district over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states."  *Cohen*, 2022 WL 721307, at *7.  The Court agrees with the authority finding that "a plaintiff must demonstrate standing for *each claim* he seeks to press."  *Id.* (emphasis added) (cleaned up); *see also Ponzio*, 447 F. Supp. 3d at 223 (same).  If Plaintiffs' position were to prevail, then "a plaintiff would be able to bring a class action complaint under the laws of nearly

---

[11] Count One.

[12] Breach of Implied Warranty, MMWA (Count One) and New Jersey Consumer Fraud Act (Count Two).  Though the MMWA is a federal statute, MMWA "claims based on breaches of . . . implied warranties under state law depend upon th[e] state law claims" and "[t]hus, to evaluate Plaintiffs' MMWA claim, the Court must turn to state warranty law."  *Cohen*, 2022 WL 721307, at *8 (cleaned up).  Accordingly, if there is no standing to assert a breach of warranty claim under a state's law, then that claim would fail under the MMWA.  *See id.*

every state . . . without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *Ponzio*, 447 F Supp. 3d at 223.  As such, the named Plaintiffs can only assert claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim.  *See id.*; *Cohen*, 2022 WL 721307 at *7.

Accordingly, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** claims to the extent they are brought on behalf of a nationwide class.[13]

### E.  The Prudential Mootness Doctrine Does Not Apply

VWGoA and VWAG argue that all claims should be dismissed under the prudential mootness doctrine.  VWGoA Mot. at 52-54.  Under this doctrine, "[e]ven where a federal court has jurisdiction to hear a case under Article III of the Constitution, the court may refuse to exercise jurisdiction over a case that is 'prudentially moot.'"  *Cohen*, 2022 WL 721307 at *36 (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170, 172 (3d Cir. 2008)). A case is prudentially moot when "the controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'"  *Id.* (quoting *Sierra Club*, 277 F. App'x at 172).  In such a case, a "federal court[] may 'decline to exercise [its] discretion to grant declaratory and injunctive relief . . . .'"  *Id.* (quoting *Sierra Club*, 277 F. App'x at 172).

According to VWGoA and VWAG, VWGoA's "voluntary, government-supervised recall moots the Plaintiffs' claims" because "the recall remedies the [Defect] . . . ."  VWGoA Mot. at 52-53.  They argue that "[w]hen, as in this case, an automotive defendant is already instituting a

---

[13] Count Two (New Jersey Consumer Fraud Act).  The Court will already dismiss Count One (MMWA) for lack of subject matter jurisdiction.

statutorily mandated recall program under the auspices of [the National Highway Traffic Safety Administration ("NHTSA")], courts should 'decline to add the promise of a judicial remedy to the heap.'" *Id.* at 53 (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012)).

The Court disagrees. First, "the prudential mootness doctrine does not confer discretion on the Court to dismiss *legal* claims." *Cohen*, 2022 WL 721307, at *36 (emphasis added) (distinguishing *Winzler* on the basis that the plaintiffs there only sought *equitable* remedies); *see also Hickman v. Subaru of Am., Inc.*, 2022 WL 11021043, at *5 (D.N.J. Oct. 19, 2022) ("[A]pplication of the prudential mootness doctrine . . . is not appropriate where legal relief is sought that exceeds the relief provided through a recall."). Here, as Defendants acknowledge, only three of Plaintiffs' fifty-six claims seek equitable relief; the other fifty-three seek legal remedies. *See* VWGoA Mot. at 47.

Further, Plaintiffs adequately allege that the recall remedy may be insufficient, requiring at least some Plaintiffs to take their car to be fixed multiple times. *See, e.g.*, Opp'n to VWGoA at 65 (quoting ACC ¶ 6) ("'Defendants simply replace defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.'"). This is sufficient to withstand dismissal given the Court's caution to not "run the risk of leaving a plaintiff without a remedy" by prematurely dismissing a case as moot. *Sater v. Chrysler Group LLC*, 2014 WL 11412674, at *4 (C.D. Cal. Oct. 7, 2014) (internal quotation marks omitted) ("But just as equity allows a court to dismiss a case as moot, it hardly insists we run the risk of leaving a plaintiff without a remedy.").

Accordingly, the Court will **DENY** VWGoA and VWAG's motions to dismiss the ACC as prudentially moot. *See Hickman*, 2022 WL 11921043, at *5 ("Because [the p]laintiffs have

stated claims on the face of their Amended Complaint that go beyond the Recall, the Court will not dismiss the Amended Complaint on this basis.").

### F. Plaintiffs Did Not Engage in Impermissible Group Pleading

VWGoA and VWAG argue all claims should be dismissed because Plaintiffs engage in "group pleading," "improperly lump[ing]" together the "three separate and distinct defendants . . . ." VWGoA Mot. at 6 (citations omitted). Specifically, VWGoA and VWAG assert that Plaintiffs "plead virtually all of their material allegations and claims against the three Defendants collectively . . . without differentiating among them[,]" and thus fails to "place Defendants on notice of the claims against each of them." *Id.* at 7 (internal quotation marks omitted). This is "particularly fatal to Plaintiffs' fraud-based claims," which are judged under Rule 9(b)'s heightened standard, because "'[w]hen multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.'" *Id.* (quoting *MDNet*, 147 F. App'x at 245).

The Court disagrees. Though there are multiple entities involved, when these "entities are intertwined through a complex corporate structure[,] [p]laintiffs cannot be expected to know the exact corporate structure and degree of each [d]efendant's involvement at th[e motion to dismiss stage] and prior to discovery." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *9 (D.N.J. May 8, 2017) (citations omitted). This exception relaxes the level of specificity required in a complaint under Rule 8 and Rule 9(b). *Id.*; *see also Gray v. BMW of North Am., LLC*, 2014 WL 4723161, at *2 (D.N.J. Sept. 23, 2014) ("Considering that this is a case of an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, the [p]laintiffs need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard."); *Ponzio*, 447 F. Supp. 3d at 226

(cleaned up) (citing *In re Volkswagen Timing Chain* and *Gray* approvingly and noting that "referring to [d]efendants as one is not problematic as these are not two defendants who performed different acts[] and are left in the dark about who did which [act]").

Here, the three Defendants are each a sub-entity of Volkswagen. *See* VWGoA Mot. at 6. No particular Defendant claims to be in the dark about the actions of the other Defendants. *See Ponzio*, 447 F. Supp. 3d at 226. As such, Plaintiffs, by referring to the three Defendants collectively, satisfy Rule 8 and Rule 9(b)'s pleading standards.

Accordingly, the Court will **DENY** VWGoA and VWAG's motions to dismiss the ACC for impermissible group pleading.

### G. It is Too Early to Address Injunctive or Other Equitable Relief

VWGoA and VWAG argue that all claims for equitable relief,[14] including injunctive relief, should be dismissed. VWGoA Mot. at 47-52. First, they argue that Plaintiffs lack Article III standing to seek injunctive relief because Plaintiffs have not shown a risk of future injury. *Id.* at 47. Second, they argue that Plaintiffs fail to plead a lack of an adequate alternative legal remedy, which is "a threshold requirement for seeking equitable relief." *Id.* at 50.

However, "as a general matter, courts only dismiss *claims*[,] not *remedies*[,] at this early stage." *Opheim*, 2021 Wl 2621689, at *15 (emphasis in original) (citing *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 424-25 (D.N.J. 2015)). Were these claims to survive, the Court would "still need to decide, *e.g.*, liability, before the viability of injunctive relief comes into play." *Id.*; *see also Riddell*, 121 F. Supp. 3d 402 ("The court will consider appropriate relief only when liability is established.").

---

[14] Maine's Unfair Trade Practices Act (Count Eighteen), Missouri's Merchandising Practices Act (Count Twenty-Five), and New York's General Business Law (Count Thirty).

Accordingly, the Court will not address the viability of claims for injunctive or other equitable relief and will **DENY** VWGoA and VWAG's motions to dismiss these claims on this basis.

### H. Plaintiffs Fail to Adequately Plead Their Statutory and Common Law Fraud Claims

Plaintiffs allege statutory and common law fraud claims based on two theories: (1) an affirmative misrepresentation and (2) a fraudulent omission/concealment.  *See generally* ACC. VWGoA and VWAG move to dismiss, arguing that Plaintiffs' allegations are insufficient to demonstrate a fraudulent misrepresentation or a fraudulent omission.  The Court agrees.

#### 1. *Plaintiffs' Affirmative Misrepresentation Claims Fail to Meet Rule 9(b)'s Heightened Pleading Standard*

Plaintiffs allege that they each relied on Volkswagen's advertising regarding the safety and reliability of the vehicle, which Plaintiffs claim was false and fraudulent.  ACC ⁋⁋ 14, 25, 34, 45, 52, 60, 69, 77, 85, 95, 101, 112, 119, 129, 137, 144, 154, 161, 171, 176, 185, 192, 202, 213, 222, 231, 242, 249, 257, 265, 360, 363, 364(c), 474, 540, 617, 657, 722, 830, 860, 960, 989.  However, Plaintiffs fail to provide any further facts, such as when the statements were made and at which point, if ever, each Plaintiff was exposed to one or more statements.

Plaintiffs argue that this level of specificity is not required at this stage.  *Id.* at 34-37.  But, their cited cases discuss the pleading standard for *omission*-based claims, which have a "different standard" than *misrepresentation*-based claims.  *In re Chevrolet Bolt EV Battery Litigation*, 2022 WL 4686974, at *20 (E.D. Mich. Sept. 30, 2022).  Rule 9(b)'s heightened pleading standard applies to misrepresentation-based claims, and so to allege an affirmative misrepresentation, Plaintiffs are required to provide more detail regarding the misrepresentations rather than just a vague, abstract allegation that misrepresentations existed.

Without any factual allegations providing any level of specificity, Plaintiffs have not adequately pled affirmative misrepresentations. *See Henderson v. Volvo Cars of North Am., LLC*, 2010 WL 2925913, at *4 (D.N.J. July 21, 2010) (Rule 9(b)'s heightened pleading standard is not satisfied by only "broad assertions that [the d]efendant marketed its vehicles as being of superior quality" without "the context of the alleged statements[] and effect that any of the statements had on [the p]laintiffs"); *Luppino v. Mercedes-Benz USA, LLC*, 2010 WL 3258259, at *6 (D.N.J. Ag. 16, 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)) (Though plaintiffs "need not formulaically 'allege the date, time[,] and place of the alleged fraud[,]' [p]laintiffs must 'inject precision or some measure of substantiation into' their fraud claims."); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 467 F. Supp. 3d 849, 860 (N.D. Cal. 2020) (internal quotation marks omitted) (dismissing the plaintiffs' affirmative misrepresentation claims because they did not "allege the who, what, when, where, and how of the misconduct alleged" as required by Rule 9(b)).

Accordingly, the Court will **GRANT** the VWGoA and VWAG's motions and **DISMISS** Plaintiffs' statutory and common law fraud claims to the extent are based on an affirmative misrepresentation.[15]

### 2. *Plaintiffs' Omission-Based Claims Fail to State a Claim*

VWGoA and VWAG also argue that Plaintiffs fail to adequately plead that Defendants knew of the Defect at the time of sale or lease. Plaintiffs do not dispute that they must plead pre-sale knowledge. *See* Opp'n to VWGoA at 37-43. Rather, Plaintiffs argue that pre-sale knowledge can be inferred from (1) pre-sale design, manufacturing, and testing data; and (2) various sources

---

[15] Because the Court will also dismiss all omission-based fraud claims in the next section, which will consequently dismiss all types of Plaintiffs' fraud claims, the Court omits the counts at this time.

of complaints, such as warranty claim data, consumer complaints made to NHTSA, consumer complaints made directly to Defendants and on Internet forums, and consumer complaints to representatives, dealers, and technicians.  *Id.*

Unlike affirmative misrepresentation claims, which use Rule 9(b)'s heightened standard, omission-based claims are adequately pled "so long as . . . [the] general allegations of knowledge suffice to infer what defendant is alleged to have known and when."  *Ponzio*, 447 F. Supp. 3d at 228 (internal quotation marks omitted).  However, even under this general pleading standard, Plaintiffs fail to adequately allege pre-sale knowledge of the Defect.

As for pre-sale testing data, Plaintiffs argue that "[i]t is standard practice for auto manufacturers to engage in extensive pre-launch testing of its vehicles" and analogizes this case to *Ponzio*.  *See generally* 447 Supp. 3d.  In *Ponzio*, however, the plaintiffs alleged "more than pre-sale testing."  *Id.* at 227.  Importantly, they "detail[ed] a number of test procedures" and why those procedures would likely result in knowledge of the defect.  *Id.*   Because Plaintiffs allege no additional facts or details, pre-sale knowledge cannot be inferred from merely the broad categories of pre-sale design, manufacturing, and testing data.

Next, Plaintiffs argue that "Defendants also knew or should have known about the [d]efect based on the large number of warranty repairs made immediately upon the Vehicles' launch" and approximately 30 complaints that were made.  ACC ¶ 286.  But, Plaintiffs concede that these complaints began circulating "shortly *after* the Vehicles first went on sale."  *Id.* ¶ 289 (emphasis added).  VWGoA and VWAG argue, and Plaintiffs do not dispute, that only a few of the complaints used to support pre-sale knowledge occurred before Plaintiffs purchased or leased their respective vehicles.  *See* VWGoA Mot. at 27-28; Opp'n to VWGoA at 39-42.  Rather, Plaintiffs argue that even the few number of complaints suffice to infer that Defendants had pre-sale knowledge, "the

totality of the remaining [pre-sale] complaints support Plaintiffs' allegation that [Defendants] had pre-sale knowledge" of the defect. *See* Opp'n to VWGoA at 40-41.

However, the Court will give post-sale complaints no weight, as they logically could not provide pre-sale knowledge. *See, e.g.*, *Cho v. Hyundai Motor Co., Ltd.*, 2022 WL 16966537, at *10 (C.D. Cal. Oct. 21, 2022) ("[A] significant percentage [of NHTSA complaints]—226 of 384— post-date [the p]laintiffs' purchases and therefore are irrelevant to demonstrate pre-sale knowledge."). Thus, the Court must consider only the complaints that pre-dated Plaintiffs' purchases. VWGoA and VWAG argue, and Plaintiffs do not challenge, that four out of thirty complaints pre-dated the purchases of Plaintiffs Merrill, Koelzer, Moore, Wabakken, Donahue, Sherrod, Hassan, and Levin; five pre-dated the purchases of Plaintiffs Brown, Grove, Radice, Popkess, McKarry, and Bultman; six pre-dated Plaintiff McMahon's purchase; and seven pre-dated the purchases of Plaintiffs O'Boyle, Ramagli, Arnsten, Hillier, Shelton, Doyle, Kovalik, Clendaniel, Wheeler, Green, Stevens, Wildhagen, Berry, and Scott. VWGoA Mot. at 28.

Unlike the cases Plaintiffs cite in support, Plaintiffs fail to plead any facts that these complaints support a plausible inference of pre-sale knowledge, such as facts indicating that Defendants monitored these complaints. *See, e.g.*, *George v. Jaguar Land Rover North Am. LLC*, 2021 WL 5195788, at *11 (D.N.J. Nov. 8, 2021) (the plaintiffs alleged that the defendant actively monitored complaints through a program, maintained its own online portal for reporting vehicle defects, worked closely with the NHTSA to monitor complaints, and monitored online forums); *Ponzio*, 447 F. Supp. 3d at 230 (the plaintiffs alleged that the defendants "track[ed] the websites/forums where these complaints are found"). Plaintiffs here allege nothing of the sort. And given the undoubtedly large quantity of vehicles sold, even 30 complaints is not an "unusually high number of complaints" that would infer Defendants knew of the Defect. *Cho*, 2022 WL

24

16966537, at *10 (C.D. Cal. Oct. 21, 2022) (internal quotation marks omitted) ("Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints.").

Because Plaintiffs fail to adequately plead that Defendants had pre-sale knowledge of the Defect, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** Plaintiffs' fraud claims that are based on a fraudulent omission or concealment.

Thus, because Plaintiffs' statutory and common law fraud claims are based on either an affirmative misrepresentation or a fraudulent omission/concealment and Plaintiffs fail to adequately plead either, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** all of Plaintiffs' statutory and common law fraud claims.[16]  The Court will not address Defendants' other arguments for dismissing these claims, as they are moot at this juncture.[17]

### I.   The Implied Warranty of Merchantability Claims

*1.   The Alleged Breaches Were Not Remedied by the Existing Recall*

VWGoA and VWAG argue that any alleged breach of an implied warranty of merchantability was cured through the existing recall, "which remedies, free of charge, the very issue alleged in the [ACC]." VWGoA Mot. at 12.  However, Plaintiffs allege that the recall remedy is insufficient because Defendants "merely replace[] defective components with defective

---

[16] Counts Two, Four, Six, Seven, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Nineteen, Twenty-One, Twenty-Three, Twenty-Five, Twenty-Seven, Twenty-Nine, Thirty, Thirty-One, Thirty-Three, Thirty-Five, Thirty-Seven, Thirty-Nine, Forty-One, Forty-Three, Forty-Five, Forty-Seven, Forty-Nine, Fifty-One, Fifty-Four, and Fifty-Five.

[17] *See* VWGoA Mot. at 33-37 (arguing (1) all common law fraudulent concealment claims should be dismissed for lack of a duty to disclose; (2) certain Plaintiffs' statutory fraud claims should be dismissed for failing to establish a duty to disclose; (3) certain Plaintiffs' common law fraudulent concealment claims are barred by the economic loss doctrine; (4) certain Plaintiffs' statutory fraud claims should be dismissed because they cannot be brought on behalf of a putative class; and (5) individual bases for dismissal under New Jersey, Massachusetts, Ohio, North Carolina, and Wisconsin law).

components[.]"  ACC ¶ 311.  VWGoA and VWAG state that Plaintiffs "do not allege that the *recall remedy* fails to cure the . . . [D]efect or that it is insufficient in any way."  VWGoA Reply at 4 (emphasis in original).  Rather, VWGoA and VWAG claim that "[t]he allegations referred to in the [Plaintiffs'] opposition all relate to repairs performed on Plaintiffs' vehicles ***prior to* the recall remedy becoming available** in June 2022."  *Id.* (emphasis in original).

Plaintiffs sufficiently allege that the existing recall is inadequate.  The repairs under the recall are the same repairs as before the recall: fixing the Defect.  Plaintiffs allege that Defendants' repairs do not fix the Defect because the "defective components" are replaced with "defective components[.]"  ACC ¶ 311.  Defendants are incapable of fully repairing the Defect, the Vehicles would be unsafe to drive, and the recall remedy would be insufficient, and thus any alleged breach would not be cured.  *See, e.g.*, *Martin v. Ford Co.*, 765 F. Supp. 2d 673, 681-82 (E.D. Pa. 2011) (plaintiff's claims were not moot when plaintiff "challenge[d] the adequacy of the [r]ecall, arguing . . . [it] would not remedy the defect in its entirety"); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1222 (C.D. Cal. 2011) ("Plaintiffs allege that the recall did not cure the defect in the[ir] vehicles . . . .  These allegations, taken as true, tend to support a finding that the defective [vehicles] are unsafe" and breach the implied warranty of merchantability because they are not "fit for their ordinary purpose.").

Accordingly, the Court will **DENY** VWGoA and VWAG's motions to dismiss Plaintiffs' breach of implied warranty claims on this basis.

### 2.  It is Too Early to Address Privity

Next, VWGoA and VWAG argue that under the laws of Arizona, California, Georgia, Illinois, New York, North Carolina, Oregon, Tennessee, Washington, and Wisconsin, Plaintiffs' implied warranty claims must fail "in the absence of privity of contract between plaintiff and

defendant."   VWGoA Mot. at 13-14 (citing cases for each state).   Privity requires that the "[p]laintiffs must have purchased the product directly from the manufacturer, not a dealership." *Opheim*, 2021 WL 2621689, at *9.   VWGoA and VWAG argue that because Plaintiffs purchased their cars from authorized dealerships and not directly from Defendants, there can be no privity of contract.   VWGoA Mot. at 13-16.   Further, VWAG argues this argument applies more to it as "the remote German designer of the subject vehicles [that] neither marketed those vehicles in the U.S. nor sold them to any dealers in the U.S."  VWAG Mot. at 4. Additionally, VWAG argues the ACC "pleads no facts showing that VWAG even contracted with and sold any of the Plaintiffs' vehicles to a U.S. Dealer."  *Id.*

Plaintiffs do not contest that these states require privity.  Rather, Plaintiffs argue that "[t]he issue of privity is unsuitable for adjudication on a Rule 12(b)(6) motion" due to the fact-intensive nature of determining the ultimate relationship between Defendants and their distributors: the dealerships.  Opp'n to VWGoA at 20 (internal quotation marks omitted).   Many states recognize exceptions to privity of contract based on various relationships between a manufacturer and its retail distributors, such as a third-party beneficiary exception, where the manufacturer is an intended beneficiary of the retail distributors, or where the retail distributor was an agent of the manufacturer.  *Opheim*, 2021 WL 2621689, at *9.

The Court agrees with Plaintiffs.  Privity "is unsuitable for adjudication on a Rule 12(b)(6) motion" due to the inquiry's fact-intensive nature.  *Id.*; *see also In re AZEK Building Products, Inc., Mktg. and Sales Practices Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015) ("The fact-intensive nature of privity frequently renders dismissal at the pleading stage premature."); *Dewey v. Volkswagen, AG*, 558 F. Supp. 2d 505, 524 n.17 (D.N.J. 2008) (Privity "involves issues of fact not appropriate for resolution at the motion to dismiss stage.").  Plaintiffs allege that the "[a]uthorized

dealers are Defendants' agents" due to a variety of actions that, if true, plausibly state a relationship that could act as an exception to the privity requirement.  ACC, ¶ 280; *see also id.* ¶¶ 14, 34, 52, 60, 459 (alleging advertising and marketing efforts between Defendants and their authorized dealers).  For a motion to dismiss, that is all Rule 8(a)(2) requires.  *See Ashcroft*, 556 U.S. at 678 (cleaned up) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Accordingly, the Court will **DENY** the VWGoA and VWAG's motions to dismiss Plaintiffs' implied warranty claims for lack of privity.

    *3.  Pre-Suit Notice*

Next, VWGoA and VWAG argue that certain state-specific implied warranty claims must be dismissed because Plaintiffs failed to provide pre-suit notice to either one or both Defendants. Both VWGoA and VWAG argue for dismissal under Illinois, Missouri, Oregon, West Virginia, and Wisconsin law, and VWAG additionally argues for dismissal under Colorado, Maryland, Massachusetts, New Jersey, New York, South Carolina, Tennessee, Texas, Utah, and Virginia law.[18]  VWGoA Mot. at 16; VWAG Mot. at 2.

    *(a) Colorado, Maryland, Missouri, New Jersey, and South Carolina*

In Colorado, Maryland, Missouri, New Jersey, and South Carolina, a plaintiff is not required to provide pre-suit notice to a remote seller or manufacturer.  *See, e.g.*, *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 742 (Colo. 1991) (applying Colorado law); *Doll v. Ford*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (applying Maryland law; no pre-suit notice required when

---

[18] Because no party challenges the state law applicable to Plaintiffs' claims, and the Court will not engage in a choice of law analysis at this juncture and will apply the laws as alleged by the ACC. *See In re Volkswagen Timing Chain*, 2017 WL 1902160, at *10 ("[T]he choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action law suit . . . .").

purchaser provides notice to the immediate seller)[19]; *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Practices, and Products Liability*, 2022 WL 710192, at *16 (W.D. Mo. Mar. 9, 2022) (applying Missouri law); *In re Volkswagen*, 2017 WL 1902160, at *13 (applying New Jersey); *Seaside Resorts, Inc. v. Club Car, Inc.*, 308 S.C. 47, 49 (Ct. App. 1992) (applying South Carolina law).

Accordingly, the Court will **DENY** VWAG's motion to dismiss the Colorado, Maryland, Missouri, New Jersey, and South Carolina Plaintiffs' implied warranty claims for lack of pre-suit notice. Further, because VWGoA is also not the immediate retail seller of the vehicle, the Court will **DENY** its motion to dismiss the Missouri Plaintiffs' implied warranty claims.

### (b) Illinois

In Illinois, a plaintiff must provide a defendant with notice of a breach of warranty "'within a reasonable time after he discovers or should have discovered any breach.'" *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 766 (N.D. Ill. 2022) (citing 810 ILCS 5/2-607(3)(a). "Pre-suit notice is required unless the plaintiff can show . . . that the defendant had actual knowledge of the alleged defect." *Id.*

Plaintiff Donahue, the Illinois named Plaintiff, alleges that at some point between 2020 and 2022, he brought his car to the dealership because he felt it was no longer safe to drive. ACC ¶¶ 70-72. Plaintiff Donahue argue this provided notice within a reasonable amount of time after discovering the defect. However, he does not allege when he discovered the defect or demonstrate that his subsequent contact with the dealership was within a reasonable amount of time after discovering the defect. Further, for the actual knowledge exception to apply, a plaintiff must allege

---

[19] Neither VWGoA nor VWAG challenges whether the Maryland named Plaintiff gave sufficient notice to the immediate seller.

facts supporting the defendant's knowledge of "the *particular plaintiff's* claim," which Plaintiff does not do. *Karlinski*, 616 F. Supp. 3d at 766 (emphasis in original). Though all Plaintiffs argue that Defendants had actual knowledge of the *alleged defect*, Plaintiff Donahue does not argue or allege any facts indicating that either VWGoA or VWAG had actual knowledge of his *specific* implied warranty claim.

Accordingly, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** Plaintiff Donahue's implied warranty claim.[20]

### (c) Massachusetts

Massachusetts requires that the buyer must notify the seller of breach within a reasonable time after they discover or should have discovered any breach of warranty. *Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 35 (1st Cir. 2005) (citing Mass. Gen. Laws ch. 106, § 2-607(3)(a)). Plaintiff McMahon, the Massachusetts named Plaintiff, argues that "Massachusetts only requires pre-suit notice if a prospective defendant both holds assets in the state and maintains a place of business there." Opp'n to VWAG at 13. But, this standard applies to Massachusetts' consumer fraud statute, not its breach of implied warranty statute. *See* VWAG Reply at 14; *In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 818-19 (N.D. Ill. 2016) (discussing the standard under the consumer fraud statute).

However, a failure to provide pre-suit notice is not automatic grounds for dismissal under Massachusetts law. Even if the buyer does not provide notice within a reasonable time, "'[f]ailure to give notice shall not bar recovery . . . unless the defendant proves that he was prejudiced thereby.'" *Id.* at 36; *see also Maga v. Hennessy Industries, Inc.*, 2014 WL 10051399, at *16 (D. Mass. Dec. 1, 2014) (internal quotation marks omitted) (same). Whether the notice was prompt

---

[20] Count Fifteen.

and the defendant was prejudiced are questions "usually left to the jury" and inappropriate for judgment at the motion to dismiss stage. *Maga*, 2014 WL 10051399, at *16.

Accordingly, the Court will **DENY** VWAG's motion to dismiss Plaintiff McMahon's implied warranty claim on this basis.

### (d) New York

"New York determines timely notice based on a 'standard of reasonableness.'" *Gregoria v. Ford Motor Co.*, 522 F. Supp. 3d 264, 286 (E.D. Mich. 2021) (citing *Cliffstar Corp. v. Elmar Indus., Inc.*, 678 N.Y.S.2d 222, 223 (1998)).  A plaintiff sufficiently pleads pre-suit notice if they allege they complained to the seller or requested service.  *Id.*  The filing of the complaint itself can also constitute notice in some instances.  *Id.* (citing *Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S. 2d 584, 586-87 (1997)).  In those instances, the plaintiff must additionally "allege a similar history of prior complaints that would have put [the] defendant on timely notice of the alleged breach . . . ." *Hoffman v. Kashi Sales, L.L.C.*, 2022 WL 17823171, at *6 (S.D.N.Y. Dec. 20, 2022).

Here, Plaintiff Popkess, the New York named Plaintiff, filed the ACC against Defendant VWAG on August 5, 2022.  D.E. 26.  Plaintiff Popkess alleges that he called a Volkswagen dealership on March 31, 2022, almost five months earlier, "to alert them to the[] issues" he was experiencing with his vehicle and "to seek a repair."  ACC ¶ 146.  "The service technician told Plaintiff . . . that he [wa]s aware of several similar complaints . . . and Volkswagen may be issuing a recall."  *Id.*  Plaintiff Popkess proceeded to call the dealership on April 1 and April 2, 2022, and then took his vehicle to the dealership on April 4, 2022, where "the dealership confirmed the [D]efect."  *Id.* ¶¶ 147-49.

Plaintiff Popkess, in addition to filing the ACC itself, alleges a history of prior complaints regarding the Defect and that the dealership confirmed the Defect and the possible recall, which

could have provided notice to VWAG as part of the complex corporate structure.  Accordingly, the Court will **DENY** VWAG's motion to dismiss the New York implied warranty claim.[21]  *See Hoffman*, 2022 WL 17823171, at *6; *Panda Capital Corp.*, 662 N.Y.S. 2d at 586-87.

### (e) Oregon

Oregon requires "[r]easonable pre-suit notice of a breach of warranty claim . . . ."  *Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *12 (C.D. Cal. Dec. 17, 2019) (citing Ore. Rev. Stat. Ann. § 72.6070).  Plaintiff Arnsten, the Oregon named Plaintiff, argues she provided this notice because "she took her vehicle to an authorized Volkswagen dealership for repair after experiencing difficulties caused by the Defect."  Opp'n to VWGA at 10 (citing ACC ⁋ 172).  However, without more details as to when she took the vehicle to the dealership, she fails to adequately plead pre-sale notice.  *Banh*, 2019 WL 868661, at *12 (applying Oregon law and dismissing the implied warranty claim because even though "[p]laintiffs . . . allege that they contacted Honda, [they] do not allege when such communications occurred"); *In re Chevrolet Bolt*, 2022 WL 4686974, at *34 (same).

Accordingly, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** Plaintiff Arnsten's implied warranty claim.[22]

### (f) Tennessee

Plaintiffs argue that Plaintiffs Sherrod and Hillier, the Tennessee named Plaintiffs, argue they sufficiently pled pre-suit notice under Tennessee law, which "require[s] [the plaintiff] to plead facts giving rise to a plausible inference of notice in compliance with [Tennessee Code] § 47-2-607(3)."  *Bunn v. Navistar, Inc.*, 797 Fed. App'x 247, 253 (6th Cir. 2020).  Both Tennessee

---

[21] Count Thirty-Two.
[22] Count Thirty-Eight.

Plaintiffs claim they "exceeded this requirement." Opp'n to VWAG at 11. First, "Plaintiff Hillier brought his [V]ehicle to [two Volkswagen dealerships] seeking a repair for the Defect and contacted Volkswagen customer care weekly regarding a fix for his vehicle." *Id.* (citing ACC ¶¶ 204-08). Second, "Plaintiff Sherrod brought his [] Vehicle to [a Volkswagen dealership] for repair, and, through counsel, he sent a letter to Volkswagen informing them that his [] Vehicle suffers from the Defect and has not been repaired within a reasonable period of time." *Id.* (citing ACC ¶¶ 215-17).

"Tennessee courts have not recently spoken to th[e] issue" of what constitutes sufficient pre-suit notice. *Bunn*, 797 Fed. App'x at 255 (cleaned up). Both Plaintiffs argue for a relaxed standard of notice: if a plaintiff informs a defendant's representative of an alleged defect, there was sufficient pre-suit notice. *Id.* (citing *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *4-5 (N.D. Ill. Dec. 18, 2015)). VWAG argues for a stricter standard: the defendant must be informed specifically that the failure to remedy an alleged defect is considered a breach of warranty. VWAG Mot. at 11 (citing *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 654 (E.D. Mich. 2021)).

This Court will apply the stricter standard. The Sixth Circuit recently held that Tennessee law requires a "plaintiff to put [the defendant] on notice that the transaction was claimed to involve a breach . . . ." *Bunn*, 797 Fed. App'x at 255 (cleaned up). Here, Plaintiff Hillier only alleges that he brought his vehicle to Volkswagen dealerships for repairs, which, alone, is insufficient to allege pre-suit notice. *Id.* ("[The plaintiff's] allegation that he told [the d]efendant about certain defects with the [vehicle]" did not sufficiently allege pre-suit notice.). Conversely, Plaintiff Sherrod alleges that his letter from counsel to Volkswagen specifically stated that his defect "ha[d] not been repaired within a reasonable period of time." ACC ¶ 217. This letter is more than a letter

from a buyer that is "full of complaints[] and [only] refers to the broken promises of the [seller] . . . ." *Bunn*, 797 Fed. App'x at 255.  For purposes of a motion to dismiss, a letter from counsel coupled with the language referring to a failure to repair the defect "within a reasonable period of time" supports an inference that VWAG, as part of the complex corporate structure of Volkswagen, had notice that Plaintiff Sherrod "intended to make a claim for damages . . . ." *Id.*

Accordingly, the Court will **GRANT** VWAG's motion to dismiss Plaintiff Hillier's implied warranty claim,[23] but will **DENY** VWAG's motion to dismiss Plaintiff Sherrod's implied warranty claim.

### (g) Texas

Plaintiff Shelton, the Texas named Plaintiff, argues that Texas does not require pre-suit notice to a remote seller or manufacturer.  Opp'n to VWAG at 8.  However, Texas courts differ on this issue, with more recent courts holding that a buyer is required to provide notice to a remote seller or manufacturer.  *See, e.g.*, *In re Nexus 6P Products Liability Litigation*, 293 F. Supp. 3d 888, 925 (N.D. Cal. 2018) (citing *McKay v. Novartis Pharm. Corp.*, 934 F. Supp. 2d 898, 912 (W.D. Tex. 2013)).  As such, the Court will apply that holding.

The commencement of a lawsuit does not satisfy the notice requirement.  *Id.* at 925-26 (citing *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 202 (Tex. App. 2003)).  But generally, Texas courts consider notice a question for the trier of fact.  *Hull v. South Coast Catamarans, L.P.*, 365 S.W.3d 35, 44 (Tex. Ct. App. 2011).  Plaintiff Shelton alleges that in February 2022, she called Volkswagen of America customer care and went to a Volkswagen dealership regarding problems associated with the Defect.  ACC ⁋ 224.  For purposes of a motion to dismiss, this supports an inference that VWAG, as part of the complex corporate structure of

---

[23] Count Forty-Four.

Volkswagen, had pre-suit notice. "A general expression of the buyer's dissatisfaction . . . may be sufficient to comply with" Texas' pre-suit notice requirement. *Hull*, 365 S.W.3d at 44

Accordingly, the Court will **DENY** VWAG's motion to dismiss Plaintiff Shelton's implied warranty claim.[24]

### *(h) Utah*

Utah requires a buyer asserting a claim for breach of warranty to notify the seller within a reasonable time after the buyer discovers or should have discovered the breach. *Martinez v. Nissan North Am., Inc.*, 2022 WL 1063735, at *2 (D. Utah Apr. 8, 2022). Timeliness is determined by looking at "the gap between the date when the buyer becomes aware or should have become aware of the claimed defect and the [date of the] provision of notice." *Barclay v. Icon Health & Fitness, Inc.*, 2022 WL 486999, at *8 (D. Minn. Feb. 17, 2022) (cleaned up). Further, what is a "reasonable time" is relaxed when applied to a retail consumer rather than merchant buyer, allowing for an extended period. *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1290 (D. Utah 2020). What constitutes a "reasonable time" is generally a question for the factfinder. *Id.*

Plaintiff Moore, the Utah named Plaintiff, argues that filing the complaint is sufficient notice under Utah law. Opp'n to VWAG at 12. VWAG argues that a complaint can only provide sufficient notice in limited circumstances, such as when the plaintiff was later added into the amended complaint and the defendant was previously served with the original complaint; otherwise, the complaint is insufficient notice. VWGoA Mot. at 12 (distinguishing *Parrish v. Volkswagen Grp. Of Am., Inc.*, 463 F. Supp. 3d 1043, 1063 (C.D. Cal. 2020)).

The overwhelming Utah authority requires more than the filing of a complaint to satisfy the pre-suit notice requirement. *See, e.g.*, *Martinez*, 2022 WL 1063735, at *2 (dismissing an

---

[24] Count Forty-Six.

implied warranty claim because "nowhere in the complaint d[id the plaintiff] allege that [they] provided pre-suit notice to [the defendant]"); *Callegari v. Blendtec, Inc.*, 2018 WL 5808805, at *6 (D. Utah Nov. 6, 2018) (Utah law "places an affirmative burden on a would-be plaintiff prior to filing his suit, rather than merely requiring that a defendant be on notice of a breach."); *Johnson*, 500 F. Supp. 3d at 1289-90 (outlining this requirement).  Plaintiff Moore alleges no additional facts supporting he provided pre-suit notice.

Accordingly, the Court will **GRANT** VWAG's motion and **DISMISS** Plaintiff Moore's implied warranty claim.[25]

### (i) Virginia

Virginia courts differ on the issue of whether Virginia requires pre-suit notice to a remote seller or manufacturer.  *See* Opp'n to VWGA at 9 n.3 (citing cases).  Plaintiff Grove, the Virginia named Plaintiffs, argues that Virginia does not.  *Id.* at 8.  Though courts differ on the issue, it is possible that Virginia considers filing a complaint sufficient notice.  *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 979 (N.D. Cal. 2014).  Regardless, Virginia considers timely notice a question for the trier of fact.  *Id.*  Accordingly, given that filing the ACC could be sufficient notice under Virginia law, the Court will **DENY** VWAG's motion to dismiss Plaintiff Grove's implied warranty claim.[26]

### (j) West Virginia

West Virginia law requires pre-suit notice to pursue a breach of contract claim.  *See Basham v. General Shale Products Corp.*, 1993 WL 65086, at *6 (4th Cir. Mar. 10, 1993).  Plaintiff Stevens, the West Virginia named Plaintiff, argues that filing a complaint is sufficient pre-suit

---

[25] Count Forty-Eight.
[26] Count Fifty.

notice under West Virginia law.  Opp'n to VWAG at 12.  VWAG argues that West Virginia requires more, and that a complaint is insufficient notice.  VWAG Mot. at 2-3.

Plaintiff Stevens incorrectly interprets West Virginia law, which does not require additional pre-suit notice when the buyer is suing under *products liability*, but does require this notice when, like here, the buyer is suing under *contract law*. *See Basham*, 1993 WL 65086, at *6 n.5 (quoting *Hill v. Joseph T. Ryerson & Son, Inc.*, 268 S.E. 2d 296, 302 (W. Va. 1980)) ("Although the [West Virginia Supreme Court of Appeals] indicated that the notice requirement . . . 'should not be extended into the products liability field,'" the plaintiff was required to give notice because the "claim [wa]s for breach of warranty, not product liability.").

Because the filing of a lawsuit is insufficient to plead pre-suit notice for Plaintiff Steven's breach of warranty claim and he pleads no other facts as to notice, the Court will **GRANT** VWGoA and VWAG's motions and **DISMISS** Plaintiff Stevens' implied warranty claim.[27]

### (k) Wisconsin

Under Wisconsin law, a buyer must notify a seller of a breach "within a reasonable time after the buyer discovers or should have discovered any breach . . . ." *Kessler v. Samsung Electronics Am. Inc.*, 2018 WL 7520913, at *5 (E.D. Wis. Feb. 16, 2018) (internal quotation marks omitted).  The notice should "advise the seller that the buyer considers [the seller] . . . responsible to remedy a troublesome situation." *Id.* (internal quotation marks omitted).  Further, the standard for a "reasonable time" is lenient, and the notice is sufficient if it "let[s] the seller know that the transaction *is still troublesome and must be watched*." *Id.* (internal quotations omitted) (emphasis in original).  Because this is "typically a context-specific inquiry[,]" consideration of the

---

[27] Count Fifty-Three.

reasonableness is usually inappropriate at the motion to dismiss stage. *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 1272, 1287 (S.D. Ga. 2010).

Plaintiff Carter, the Wisconsin named Plaintiff, first experienced issues with his Vehicle on December 19, 2021, and, after experiencing more problems, brought his car to an authorized dealership on April 23, 2022—four months later.  ACC ¶¶ 266-67.  For purposes of a motion to dismiss, a four-month delay in notifying the dealership cannot be determined unreasonable, and given the complex corporate structure between Defendants, this sufficiently alleges pre-suit notice. *See Terrill*, 753 F. Supp. at 1287 (finding a six-month delay in notifying the defendant could not be determined unreasonable at early stages of litigation).

Accordingly, the Court will **DENY** VWGoA and VWAG's motions to dismiss Plaintiff Carter's implied warranty claim.[28]

### 4. *Plaintiff McMahon Was Not Required to Allege a Legally Required Standard that Her Vehicle Did Not Fit*

Next, VWGoA and VWAG argue that Plaintiff McMahon's implied warranty claim must be dismissed because Massachusetts law requires that the complaint "'identify a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not.'" VWGoA Mot. at 17 (quoting *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 888 (Mass. 2008)).

However, *Ianacchino* involved a fraud claim, which applies Rule 9(b)'s higher pleading standard. *See Michael Anthony Associates, Inc. v. Next Jump, Inc.*, 2012 WL 604503, at *3 (Mass. App. Div. Feb. 23, 2012) ("*Iannacchino* address[ed] [a] cause[] of action involving a higher degree of specificity than the more garden variety of contract and tort cases.").  Rather, in a breach of

---

[28] Count Fifty-Six.

warranty claim, "a complaint that alleges the material elements of a cause of action will withstand a Rule 12(b)(6) motion." *Id.*

Plaintiff McMahon adequately alleges that Defendants were merchants of his vehicle, that his vehicle was not fit for its ordinary purpose because the Defect caused safety and functional issues, notice, and that he suffered damages as a direct and proximate result of Defendants' breach. ACC ¶¶ 645-651; *see generally Com. v. Johnson Insulation*, 452 Mass. 650 (1997) (outlining the standard for breach of implied warranty of merchantability)

Accordingly, the Court will **DENY** VWGoA and VWAG's motions to dismiss Plaintiff McMahon's implied warranty claim.[29]

### 5. *Plaintiff Brown Adequately Plead a Claim Under Louisiana's Redhibitory Statute*

Louisiana law provides that "a buyer has a warranty 'against redhibitory defects, or vices, in the thing sold"; a defect is redhibitory "when it renders the thing useless, or its use so inconvenient that a buyer would not have brought the thing had [they] known of the defect.'" *Baudin v. AstraZeneca Pharmaceuticals LP*, 413 F. Supp. 3d 498, 512 (M.D. La. 2019) (quoting La. Civ. Code Ann. Art. 2520).

VWGoA and VWAG argue that Plaintiff Brown's, the Louisiana named Plaintiff, implied warranty claim fails because it was not "asserted pursuant to Louisiana's redhibition statute." VWGoA Mot. at 18 (internal quotation marks omitted). Essentially, because Plaintiff Brown did not cite to the redhibition statute, VWGoA and VWAG argue this requires dismissal. *Id.*

However, under "Rule 8's liberal pleading principles[,]" dismissal is not warranted simply for a "failure in a complaint to cite a statute, or to cite the correct one . . . ." *Cohen*, 2022 WL 714795, at *7 (cleaned up). Rather, "[f]actual allegations alone are what matters." *Id.* (cleaned

---

[29] Count Twenty-Four.

up).  VWGoA and VWAG do not argue that Plaintiff Brown fails to allege facts supporting a redhibition claim.  *See* VWGoA Reply Brief at 16 (only noting that Plaintiff Brown, in the opposition, did not identify *which* pleaded facts would support a redhibition claim).  Thus, Plaintiff Brown must only adequately plead facts supporting a redhibition claim.

Here, Plaintiff Brown alleges that the Defect in her vehicle "render[ed] certain crucial safety and other functions inoperative such that [she] . . . would not have purchased the Vehicle[] had [she] known of the [D]efect[]."  ACC ¶ 562.  The Court finds that Plaintiff Brown adequately pled facts supporting a redhibition claim in alleging (1) a defect that (2) rendered the vehicle inoperative to the point where (3) she would not have purchased the vehicle had she known of the Defect.  *See Baudin*, 413 F. Supp. 3d at 512.

Accordingly, the Court will **DENY** VWGoA and VWAG's motions to dismiss Plaintiff Brown's implied warranty/redhibition claim.[30]

6.  *Because it is Too Early to Determine Privity, Plaintiff Wheeler's Claim Does Not Fail Under Ohio Law*

VWGoA and VWAG also argue that Plaintiff Wheeler's, the Ohio named Plaintiff, implied warranty claim, which was brought "in tort," fails because "under Ohio law, plaintiffs cannot maintain tort claims against manufacturers for purely economic losses."  VWGoA Mot. at 18 (citing *Roxy Home Improvement, LLC v. Mercedes-Benz USA, LLC*, 2018 WL 1705800, at *5 (N.D. Ohio Apr. 9, 2018)).  Plaintiff Wheeler argues in response that Ohio law allows tort claims for purely economic losses between a consumer and a manufacturer that are not in privity.[31]  Opp'n to VWGoA at 30 (citing *Roxy*, 2018 WL 1705800, at *4).

---

[30] Count Seventeen.

[31] Plaintiff Wheeler acknowledges that this argument contradicts Plaintiffs' other arguments that they are in privity with the Defendants.  Opp'n to VWGoA at 30.

Because it is too early to determine privity at this stage of litigation, the Court will **DENY** VWGoA and VWAG's motions to dismiss Plaintiff Wheeler's implied warranty claim.[32]

## IV.    CONCLUSION

For the reasons stated herein, the Court will **GRANT in part** and **DENY in part** the Defendants' motions to dismiss.  In summary, the Court will:

- **GRANT** Plaintiffs' request to conduct jurisdictional discovery as to VWCOL, which shall proceed on an expedited schedule, and **DENY without prejudice** VWCOL's motion to dismiss for lack of personal jurisdiction;
- **DISMISS without prejudice** all Plaintiffs' MMWA claims for lack of subject matter jurisdiction: Count One; and
- **DISMISS without prejudice** Count Two to the extent it is brought on behalf of a nationwide class;
- **DISMISS without prejudice** Plaintiffs' fraud-based claims against VWGoA and VWAG: Counts Two, Four, Six, Seven, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen, Nineteen, Twenty-One, Twenty-Three, Twenty-Five, Twenty-Seven, Twenty-Nine, Thirty, Thirty-One, Thirty-Three, Thirty-Five, Thirty-Seven, Thirty-Nine, Forty-One, Forty-Three, Forty-Five, Forty-Seven, Forty-Nine, Fifty-One, Fifty-Four, and Fifty-Five;
- **DISMISS without prejudice** the following implied warranty of merchantability claims: Counts Fifteen, Thirty-Eight, and Fifty-Three as to VWGoA and VWAG; Count Forty-Four, but only Plaintiff Hillier as to VWAG; and Count Forty-Eight as to VWAG; and
- **DENY** to dismiss the remaining counts under various theories: Counts Three, Five, Nine, Eleven, Seventeen, Twenty, Twenty-Two, Twenty-Four, Twenty-Six, Twenty-Eight, Thirty-Two, Thirty-Four, Thirty-Six, Forty, Forty-Two, Forty-Six, Fifty, Fifty-Two, and Fifty-Six.

Plaintiffs have 30 days from the entry of this Opinion to file an amended complaint.  An appropriate Order accompanies this Opinion.

Dated: June 16, 2023

_Evelyn Padin_
Evelyn Padin, U.S.D.J.

---

[32] Count Thirty-Six.